**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RONALD JONES, JR., as Special Administrator for the Estate of Kejuan Dickens, deceased, *et al.*, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 4657 |
| v. | ) ) | Hon. Rebecca R. Pallmeyer |
| CHICAGO DRUM, INC., *et al.*, | ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) ) | |
| _____ | ) | |

**DEFENDANT 3M COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT AT LAW
AND CROSS-CLAIM AGAINST THE ACME DEFENDANTS**

Dated:  October 21, 2008

Respectfully submitted,

/s/ Benjamin W. Hulse
Mark S. Lillie, P.C.
James J. Boland
Benjamin W. Hulse
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Ph: (312) 861-2000
Fx: (312) 861-2200
*Attorneys for Defendant 3M Company*

Defendant 3M Company ("3M") answers the Second Amended Complaint as follows:

## JURISDICTION & VENUE

1.  Plaintiffs were Illinois residents and resided in the City of Chicago, County of Cook.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 1 and, on that basis, denies those allegations.

2.  On and prior to December 31, 2002, the Defendant CHICAGO DRUM, f/k/a Acme Barrel Company, Inc., IFCO ICS-Chicago Inc., and IFCO Systems Chicago Inc., was and is a corporation organized and existing under the laws of the State of Illinois and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 2 and, on that basis, denies those allegations.

3.  On and prior to December 31, 2002, the Defendant, INDUSTRIAL CONTAINER SERVICES, LLC, was and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 3 and, on that basis, denies those allegations.

4.  On and prior to December 31, 2002, the Defendant, INDUSTRIAL CONTAINER SERVICES-IL, LLC, was and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 4 and, on that basis, denies those allegations.

5.  On and prior to December 31, 2002, the Defendant, IFCO SYSTEMS ILLINOIS, INC., f/k/a IFCO ICS-Illinois, Inc. and McCook Drum & Barrel Co., Inc., was and is a corporation organized and existing under the laws of the State of Illinois, and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 5 and, on that basis, denies those allegations.

6.   On and prior to December 31, 2002, the Defendant, IFCO SYSTEMS NORTH AMERICA, INC. *f/k/a PalEx, Inc., f/k/a Silver Oak Acquisition, Inc. and f/k/a IFCO System North-America*, was and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and, on that basis, denies those allegations.

7.   On and prior to December 31, 2002, the Defendant, DRUM HOLDING COMPANY, INC., f/k/a IFCO Systems Holding Company, Inc., f/k/a IFCO Industrial Container Systems Holding Company, Inc., f/k/a Palex Container Systems, Inc., was and is corporation organized and existing under the laws of the State of Delaware, and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

8.   On and prior to December 31, 2002, the Defendant, ESP REALTY CORP., INC., was and is a corporation organized and existing under the laws of the State of Illinois, and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

9.   On and prior to December 31, 2002, the Defendant, ELLIOT S. PEARLMAN, (hereinafter referred to as PEARLMAN) was a resident of the State of Illinois, and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

10. On and prior to December 31, 2002, the Defendant, BASF CORPORATION, was and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

11. On and prior to December 31, 2002, the Defendant, SUN CHEMICAL CORPORATION, *a/k/a SUN CHEMICAL CO., and f/k/a SUN/DIC ACQUISITION CORP.*, was

3

and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

12. On and prior to December 31, 2002, the Defendant, 3M COMPANY, was and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M states that it is a corporation organized and existing under the laws of the State of Delaware. 3M further states that it is authorized to do business in the State of Illinois and was doing business in the City of Chicago, Cook County, Illinois, as of December 31, 2002. 3M denies the remaining allegations in this paragraph.

13. On and prior to December 31, 2002, the Defendant, EXXON MOBIL CORPORATION, a/k/a and d/b/a MOBIL, MOBIL CHEMICAL COMPANY, INC., MOBIL CORPORATION, MOBIL PLASTICS RECYCLING CORP., EXXONMOBIL OIL CORPORATION, EXXON CORPORATION, EXXONMOBIL CHEMICAL COMPANY, EXXON EXPLORATION COMPANY, EXXONMOBIL FUELS MARKETING COMPANY, EXXONMOBIL GAS & POWER MARKETING COMPANY, EXXOMOBIL GAS MARKETING COMPANY, EXXONMOBIL LUBRICANTS & PETROLEUM SPECIALTIES COMPANY, EXXONMOBIL REFINING & SUPPLY COMPANY, SOUTHWEST GREASE, and SOUTHWEST GREASE PRODUCTS, was and is a corporation organized and existing under the laws of the State of New Jersey, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

14. On and prior to December 31, 2002, the Defendant, MOBIL PLASTICS RECYCLING CORP., *d/b/a MOBIL*, was and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

4

15. On and prior to December 31, 2002, the Defendant, EXXONMOBIL OIL CORPORATION, *d/b/a MOBIL*, was and is a corporation organized and existing under the laws of the State of New York, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

16. On and prior to December 31, 2002, the Defendant, MOBIL CORPORATION, *d/b/a MOBIL*, was and is a corporation organized and existing under the laws of the State of Nevada, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

17. On and prior to December 31, 2002, the Defendant, MOBIL CHEMICAL COMPANY, INC., *d/b/a MOBIL*, was and is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

18. On and prior to December 31, 2002, the Defendant, DEWITT BARRELS, INC., was and is a corporation organized and existing under the laws of the State of Michigan, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

19. On and prior to December 31, 2002, the Defendant, THE SHERWIN- WILLIAMS COMPANY, *a/k/a and d/b/a SHERWIN-WILLIAMS PAINT CO.*, was and is a corporation organized and existing under the laws of the State of Ohio, and was authorized to do business and was doing business in the City of Chicago, County of Cook, and State of Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

## ALLEGATIONS COMMON TO EACH COUNT

20. On December 31, 2002, and prior thereto, the Defendants, CHICAGO DRUM, INC.; INDUSTRIAL CONTAINER SERVICES, LLC, INDUSTRIAL CONTAINER SERVICES-IL, LLC; IFCO SYSTEMS ILLINOIS, INC.; IFCO SYSTEMS NORTH AMERICA, INC; DRUM HOLDING COMPANY, INC., ESP REALTY CORP., INC.; (collectively hereinafter referred to as the "ACME Defendants" or "ACME" unless otherwise specified), and each of them, owned managed, maintained, operated and controlled an industrial barrel/drum refurbishing facility on a number of parcels of real property, within the City of Chicago, located at or about 2300 West 13th Street, (hereinafter referred to as the "Drum Reconditioning Plant").

**ANSWER:** 3M admits that Acme Barrel Company operated a drum refurbishing facility on a number of parcels of real property, within the City of Chicago, located at or about 2300 West 13th Street. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies them.

21. On December 31, 2002, and prior thereto, ACME owned, managed, maintained, operated and controlled a warehouse and storage lot located at or about 13151349 S. Oakley, (hereinafter referred to as the "Premier site").

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

22. On and about December 31, 2002, and prior thereto, ACME owned, managed, maintained, operated and controlled a parcel of land, located at 1900 W. Hastings, which was used to store containers that previously contained hazardous chemicals and materials, (hereinafter referred to as the "Hastings property").

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

23. Upon information and belief, the Defendant, ELLIOT PEARLMAN, served as an officer and director of the Defendant, CHICAGO DRUM, INC, from the mid 1960's until on or about 1992.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

24. Upon information and belief, the Defendant, ELLIOT PEARLMAN, served as President, Chief Executive Officer, and a director of the Defendant, CHICAGO DRUM, INC from 1992 until sometime in 2002.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and, on that basis, denies them.

25. Upon information and belief, the Defendant, ELLIOT PEARLMAN, as Beneficiary of Trust Agreement Number 121811-03, dated 1/16/98, and known as Trust Number 121811-03, and as President of the Defendant, ESP REALTY CORPORATION, owned, managed, maintained, operated, and controlled the Drum Reconditioning Plant from approximately 1996-1998, and retained the power of direction to deal with the title, to manage and control the Drum Reconditioning Plant property, to receive proceeds from the sales, mortgages, and rentals of the Drum Reconditioning Plant, and to exercise all rights of ownership, including possession.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and, on that basis, denies them.

26. Upon information and belief, the Defendant, ELLIOT PEARLMAN, was Chief Executive Officer of the Defendant, Palex Container Systems, n/k/a DRUM HOLDING COMPANY, Inc., from 1998 until sometime in 2002.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and, on that basis, denies them.

27. Upon information and belief, the Defendant, ELLIOT PEARLMAN, was on the board of directors of the Defendant, PALEX, INC, now known as IFCO SYSTEMS NORTH AMERICA, INC, from 1998 until sometime in 2002.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and, on that basis, denies them.

28. On and about December 31, 2002, and prior thereto, ACME, accepted, cleaned, reconditioned and/or disposed of approximately 6,000 to 10,000 steel barrels, Intermediate Bulk Containers, pails, and other industrial containers, (hereinafter referred to as "drums"), at the Drum Reconditioning Plant on a daily basis.

**ANSWER:**    3M admits that at certain times prior to December 31, 2002, Acme Barrel

Company cleaned and reconditioned steel drums and Intermediate Bulk Containers (IBCs).  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. On and about December 31, 2002, and prior thereto, drums received at the Drum Reconditioning Plant for cleaning, reconditioning and/or disposal, formerly contained hazardous, toxic, corrosive, and/or flammable materials, including, but not limited to, paint, chemical, oil and petroleum based products, adhesives, inks, resins, industrial coatings, and the raw materials used to manufacture said materials.

**ANSWER:** 3M denies the allegations in Paragraph 29 to the extent they relate to drums Acme purchased and received from 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. On and about December 31, 2002, thousands of the drums received at the Drum Reconditioning Plant contained as much as up to one inch chemical residues of a hazardous, toxic, corrosive, and/or flammable nature, including, but not limited to, paint, chemical, oil and petroleum based products, adhesives, inks, resins, industrial coatings, and the raw materials used to manufacture said materials, (hereinafter referred to as "dirty drums").

**ANSWER:** 3M denies the allegations in Paragraph 29 to the extent they relate to drums Acme purchased and received from 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

31. On and about December 31, 2002, and prior thereto, contents of the dirty drums received at the Drum Reconditioning Plant were classified as non-hazardous in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

**ANSWER:** The allegations in this paragraph are vague and ambiguous, and misrepresent applicable law. 3M admits that the drums it sold to Acme Barrel, that were transported to the Drum Reconditioning Plant complied with applicable laws and regulations. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations..

32. On and about December 31, 2002, and prior thereto, thousands of the aforementioned dirty drums were cleaned and reconditioned at the Drum Reconditioning Plant on a daily basis.

**ANSWER:** 3M denies the allegations in this paragraph to the extent they relate to drums received from 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30 and, on that basis, denies those allegations.

33. On and about December 31, 2002, and prior thereto, ACME was not licensed by the United States Environmental Protection Agency (USEPA), Illinois Environmental Protection Agency (ILEPA), nor the City of Chicago Department of Environment (DOE) to treat, store, or dispose of hazardous waste, as defined by 40 CFR 261.3, 35111. Adm. Code 721.103.

**ANSWER:** The allegations in this paragraph are vague, ambiguous, and misrepresent applicable law. 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies those allegations.

34. On and about May 23, 2001, and prior thereto, ACME represented to the USEPA, ILEPA, DOE, and the public-at-large to be a drum reconditioner that did not treat, store, or dispose of hazardous waste, as defined by 40 CFR 261.3, 35 Ill. Adm. Code 721.103.

**ANSWER:** The allegations in this paragraph are vague, ambiguous, and misrepresent applicable law. 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies those allegations.

35. On and about December 31, 2002, and prior thereto, Acme was not licensed by the USEPA, ILEPA, or DOE, to accept, clean, recondition, or dispose of drums which contained more than one inch of chemical residue, in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

**ANSWER:** The allegations in this paragraph are vague, ambiguous, and misrepresent applicable law. 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies those allegations.

36. On December 31, 2002, and prior thereto, a component of ACME'S operational practices included a written "Drum Acceptance Policy" which stated it would not accept drums for cleaning or reconditioning that contained more than one inch of chemical residue, consistent with 40 CFR 261.7, 435 ILCS 5/3.475(c)2.

**ANSWER:** 3M admits that it received a written "Drum Acceptance Policy" from Acme Barrel Company stating that it would not purchase and accept drums that contained more than one inch of residue of certain substances specified by applicable regulations, and that Acme Barrel Company represented to 3M that its operations complied with its Drum Acceptance Policy and applicable environmental regulations. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

37. On and about December 31, 2002, and prior thereto, ACME represented to the USEPA, ILEPA, DOE, neighborhood residents, workers, and the public-at-large that it cleaned and reconditioned drums consistent with its Drum Acceptance Policy and with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

**ANSWER:** 3M admits that it received a written "Drum Acceptance Policy" from Acme Barrel Company stating that it would not purchase and accept drums that contained more than one inch of residue of certain substances specified by applicable regulations, and that Acme Barrel Company represented to 3M that its operations complied with its Drum Acceptance Policy and applicable environmental regulations. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies them.

38. On and about December 31, 2002, and prior thereto, ACME received hundreds of drums to be cleaned and reconditioned on a daily basis that contained various quantities of hazardous, toxic, corrosive, and/or flammable materials, including, but not limited to inks, resins, petroleum and petroleum based lubricants, organic chemicals, paints, varnishes and industrial coatings, solvents, silicones, adhesives, and inorganic chemicals, (hereinafter referred to as "heavy drums").

**ANSWER:** 3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph to the extent they relate to drums sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

39. On and about December 31, 2002, and prior thereto, ACME cleaned and reconditioned the aforementioned heavy drums at the Barrel Reconditioning Facility.

**ANSWER:** 3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M

and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph to the extent they relate to drums sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

40. On and about December 31, 2002, and prior thereto, the heavy drums contained various quantities of hazardous waste and materials regulated under the Resource Conservation Recovery Act (RCRA), 42 U.S.C. § 6901 et seq., 415 ILCS 5/20 et seq., and applicable Federal and State Code Provisions.

**ANSWER:** 3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M

12

lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph to the extent they relate to drums sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

41. On and about December 31, 2002, and prior thereto, heavy drums were accepted and processed at the Drum Reconditioning Plant on a daily basis.

**ANSWER:** M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that Acme purchased and processed drums that complied with applicable environmental regulations. 3M denies that the Drum Reconditioning Plant "accepted" for processing drums sold by 3M that did not comply with applicable environmental regulations, and denies the remaining allegations in this paragraph to the extent they relate to drums Acme purchased and received from 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

42. On and about December 31, 2002, and prior thereto, the receipt, cleaning, reconditioning and disposal of heavy drums and their hazardous waste contents at the Drum Reconditioning Plant constituted the treatment and/or disposal of hazardous waste, as defined by 40 CFR 261.3, 35 Ill. Adm. Code 721.103.

**ANSWER:** 3M denies the allegations in this paragraph to the extent they relate to drums Acme purchased and received from 3M. 3M lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

43. On and about December 31, 2002, and prior thereto, the Drum Reconditioning Plant operated as an unlicensed hazardous waste treatment and disposal facility, in violation of 42 U.S.C. § 6901 et seq., 415 ILCS 5/20 et seq., and applicable Federal and State Code Provisions.

**ANSWER:** 3M denies the allegations in this paragraph to the extent they relate to drums Acme purchased and received from 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

44. The Defendant, ELLIOT PEARLMAN, was responsible for establishing quality control standards for products manufactured at the Drum Reconditioning Plant and, chaired weekly management meetings, where operational and environmental policies and procedures were discussed and decided upon.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

45. The Defendant, ELLIOT PEARLMAN, was responsible for creating and enforcing departmental budgets, and for authorizing all major expenditures and improvements at the Drum Reconditioning Plant.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

46. The Defendant, ELLIOT PEARLMAN, was responsible for ensuring compliance with all applicable environmental and safety regulations at the Drum Reconditioning Plant, and had overall responsibility for the production, quality control, and operation of the open head and tight head plants at the Drum Reconditioning Plant.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

47. The Defendant, ELLIOT PEARLMAN, actively participated in and/or ratified production, quality control, and operational methods and processes that were carried out and implemented by employees at the Drum Reconditioning Plant.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

48. On and about December 31, 2002, and prior thereto, the neighborhood surrounding the Drum Reconditioning Plant was a densely populated residential and commercial area that contained numerous homes, apartments, schools, businesses, and day care centers.

**ANSWER:** Denied.

49. On and about December 31, 2002, and prior thereto, ACME knew or should have known that the neighborhood surrounding the Drum Reconditioning Plant was a densely populated residential and commercial area containing numerous homes, apartments, schools, businesses, and day care centers.

**ANSWER:** Denied.

50. From the early 1970's until 2002, the Defendant, ELLIOT PEARLMAN knew or should have known that the neighborhood surrounding the Drum Reconditioning Plant was a densely populated residential and commercial area containing numerous homes, apartments, schools, businesses, and day care centers

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

51. On and about December 31, 2002, and prior thereto, the DOE and ILEPA had received hundreds of complaints about the Drum Reconditioning Plant over the years from neighborhood residents and workers who complained of black, bluish-gray, and white smoke from the open head drum incinerator stack, strong paint odors from the spray paint booths and baking ovens, and chemical, solvent, and noxious odors present throughout the neighborhood.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

52. On and about December 31, 2002, and prior thereto, the DOE inspectors had conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, chemical haze just north of the facility, black or white smoke coming from the yard and drum burner incinerator stacks, bluish-gray smoke coming from vents above the tight-head building, white smoke with bluish tints coming from the open head exhaust vents, process water from the yard flowing offsite and into public sewers, liquid waste spillage throughout the facility, adjacent properties and public ways, strong chemical

smells throughout the plant, uncovered drums scattered throughout the plant, unmarked drums, and evidence of long-term storage of unacceptable, heavy drums.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph.

53. On February 25, 1999, the City of Chicago filed a lawsuit against ACME alleging it operated the Drum Reconditioning Plant in such a manner as to constitute a common-law nuisance.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph.

54. On July 14, 2000, a consent agreement was entered into between ACME and the City of Chicago by which ACME agreed to implement a plan to reduce odor emissions from the Drum Reconditioning Plant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph.

55. On May 23, 2001, a major release of hazardous pollutants and substances occurred and blanketed the surrounding neighborhood, causing high concentrations of hazardous pollutants and substances to spread over the area at ground level. This release caused a neighborhood building to be evacuated and triggered responses by the Chicago DOE, Chicago Fire Department and the Chicago Police Department.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and, on that basis, denies those allegations.

56. On May 23, 2001, and prior thereto, ACME knew or should have known that the persons in the surrounding neighborhood were at risk of being exposed to discharged hazardous pollutants and substances from the Drum Reconditioning Plant.

**ANSWER:**    3M states that this paragraph contains no allegations relating to 3M.  To

the extent the allegations in this paragraph may be construed as relating to 3M, 3M denies those

allegations.  3M lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in this paragraph and, on that basis, denies those allegations.

57. The Defendant, ELLIOT PEARLMAN knew or should have known that the Drum Reconditioning Plant neighborhood residents and workers were at risk to being exposed to

hazardous pollutants and substances discharged from the Drum Reconditioning Plant as a result of its operation.

**ANSWER:**  3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

58. At no time prior to or after May 23, 2001, did ACME advise, warn, or educate the neighborhood residents and workers that it was treating, storing, and disposing of hazardous waste at the Drum Reconditioning Plant.

**ANSWER:**  3M states that this paragraph contains no allegations relating to 3M.  To the extent the allegations in this paragraph may be construed as relating to 3M, 3M denies those allegations.  3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

59. At no time prior to or after May 23, 2001, did the Defendant, ELLIOT PEARLMAN, advise, warn, or educate the neighborhood residents and workers that hazardous waste was being treated, stored, and disposed of at the Drum Reconditioning Plant.

**ANSWER:**  3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

60. At no time prior to or after May 23, 2001, did ACME advise, warn or educate the neighborhood residents and workers of the full nature and extent of the presence of hazardous, toxic, corrosive, and/or flammable materials contained in drums received, treated, processed, and disposed of at the Drum Reconditioning Plant, the risks associated with such, or the precautions that could be taken.

**ANSWER:**  3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

61. At no time prior to or after May 23, 2001 did ACME, advise, warn or educate the neighborhood residents and workers of the full nature and extent of the presence of hazardous, toxic, corrosive, and/or flammable materials contained in drums received, treated, processed, and disposed of at the Drum Reconditioning Plant, the risks associated with such, or the precautions that could be taken.

**ANSWER:**  3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

62. Following the May 23, 2001 release, the City of Chicago ordered the tight head operations at the Drum Reconditioning Plant to cease operations in June of 2001.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

63. Following the May 23, 2001 release, extensive media coverage was given to Acme Barrel concerning the discharge of hazardous pollutants and substances from the Drum Reconditioning Plant and possible health consequences for those who lived and worked in the neighborhood.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

64. On December 26, 2001, the City of Chicago filed a Show Cause Order against ACME, forcing it to show cause_ of why the DOE should not immediately abate the continuous nuisance caused by the Drum Reconditioning Plant.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

65. On January 28, 2002, the USEPA filed a Notice of Violation against Acme alleging it applied paint coatings in excess of allowable Volatile Organic Material (VOM) content, failed to determine VOM content of paints, failed to collect and record data on lid glue gasket line, failed to conduct VOM capture and destruction efficiency for drum furnace, failed to keep records of VOM emissions from the Drum Furnace, and allowed VOM emissions into environment so as to cause unreasonable interference with enjoyment of life and property. A consent agreement was reached, and a $25,000.00 penalty was assessed.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

66. In February of 2002, a consent agreement with the City of Chicago was reached requiring permanent closure of the Drum Reconditioning Plant by May 31, 2003. ACME agreed to pay $100,000.00 in stipulated penalties.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

67. On December 31, 2002, the Drum Reconditioning Plant permanently ceased operations.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

68. On May 23, 2003, a class action complaint entitled, *Mary Tuff, et al*., vs. Acme Barrel Company, et al., was filed in Cook County Circuit Court by approximately four-hundred twenty seven named representatives of a putative class of persons who alleged personal injury and property damage claims individually, and on behalf of the class, as a result of exposure to hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M admits that on May 23 a complaint entitled, *Mary Tuff, et al., vs. Acme Barrel Company, et al.,* was filed in Cook County Circuit Court by in excess of 400 named plaintiffs. 3M denies that the complaint stated claims for personal injury or property damage and denies that the complaint adequately alleged the prerequisites of a class action. 3M denies the remaining allegations in this paragraph.

69. The Plaintiffs, in this case and each of them, were members of the putative class identified in the *Tuff* complaint.

**ANSWER:** Denied.

70. The Class Allegations in the *Tuff* complaint were dismissed with prejudice on April 9, 2007.

**ANSWER:** Admitted.

**COUNT I-RONALD JONES, JR., Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
WRONGFUL DEATH
ACME[1]**

1.      From December 21, 1985 until 1997, the Decedent, KEJUAN DICKENS, lived at 1302 S. Heath Avenue, Chicago, Cook County, Illinois, directly across the street from the Drum Reconditioning PIant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

2.      ACME, owed a duty to the Plaintiff to operate its drum cleaning and reconditioning operations in a safe, responsible, and lawful manner so as to prevent the discharge of hazardous pollutants and substances from the Drum Reconditioning Plant into the neighborhood.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

3.      In breach of the aforementioned duty, ACME, through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.      Received, processed, stored, and/or disposed of hazardous waste in violation of 42 U.S.C. 5 6901 et seq., 415 ILCS 5/20, et seq., and applicable Federal and State Code Provisions;

b.      Discharged hazardous pollutants and substances from the Drum Reconditioning Plant so as to constitute a nuisance in violation of Chicago Municipal Code 7-28-080;

c.      Discharged VOM and odors into environment so as to unreasonably interfere with enjoyment of life or property in violation of 35 111. Adm. Code 201.14 1 ;

d.      Discharged contaminants into environment so as to cause atmospheric pollution in violation of Chicago Municipal Code 1 1-4-630;

e.      Discharged fugitive particulate matter offsite in violation of 35 111. Adm. Code 202.301 ;

f.      Discharged hazardous pollutants and substances with an opacity greater than 30% into the environment in violation of 35 Ill. Adm. Code 212.123;

---

[1] For all claims asserted on behalf of Kejuan Dickens, the definition of "Acme" shall only include Defendants Chicago Drum, Inc. IFCO Systems Illinois Inc., ESP Realty Corp, and IFCO Systems North America, Inc.

g.    Discharged VOM and odors into the environment in a manner so as to unreasonably interfere with enjoyment of life and property in violation of 35 111. Adm. Code 201.141;

h.    Failed to utilize drum incinerator stack height designed to prevent air pollution in violation of 35 Ill. Adm. Code 201.1 5 1 ;

i.    Failed to ensure drums received were properly closed and labeled as required by applicable Department of Transportation regulations;

j.    Failed to prevent reactions that threatened human health and the environment in violation of 40 CFR 264.17;

k.    Failed to reject drums not "empty" as defined by 40 CFR 261.7;

l.    Received drums containing hazardous waste at the Drum Reconditioning Plant;

m.    Failed to properly identify and segregate drums containing hazardous waste;

n.    Failed to inspect, investigate, and determine nature, type, and characteristics of the chemical residues and hazardous wastes received at Drum Reconditioning Plant;

o.    Failed to require Material Safety Data Sheets from drum shippers so as to allow identification of drum contents received at Drum Reconditioning Plant;

p.    Failed to adequately label, log, and segregate heavy drums placed in Drum Rejection area;

q.    Failed to adequately notify customers who shipped drums that contained hazardous waste, as defined by 40 CFR 261.3, that said drums were shipped to the Drum Reconditioning Plant;

r.    Failed to adequately notify customers who shipped drums that contained hazardous waste, as defined by 40 CFR 261.3, to retrieve said drums;

s.    Failed to adequately hire, educate, train, and monitor receiving, yard, and feeder personnel to ensure that federal, state, and municipal policies were being followed;

t.    Failed to adequately hire, educate, train, and monitor receiving, yard, and feeder personnel to ensure Drum Acceptance Policy and other written operational policies were followed;

u.    Failed to adequately hire, educate, and train employees to receive, treat, store and/or dispose of hazardous waste in violation of 40 CFR 264.16;

v.   Failed to adequately hire, educate, train and monitor drum and lid cover feeder personnel to ensure operational policies were followed;

w.   Failed to prepare unmanifested waste reports after receipt of hazardous waste at Drum Reconditioning Plant in violation of 40 CFR 264.76;

x.   Transported and accepted hazardous waste at Drum Reconditioning Plant from offsite generators without accompanying manifests, in violation of 40 CFR 263.20;

y.   Failed to adequately monitor, record, investigate, address and/or remediate equipment failures, material spills, and miscellaneous odors at Drum Reconditioning Plant;

z.   Failed to perform stack tests on emissions produced from drum incinerator;

aa.   Failed to maintain operating records to show type, quantity, and nature of hazardous waste received, and methods used to treat, store, and dispose of said waste in violation of 40 CFR 264.73;

bb.   Failed to maintain records to ensure drum furnace compliance with Subpart TT in violation of 35 111. Adm. Code 21 8.991;

cc.   Failed to record and maintain continuous temperature monitoring records for drum furnace in violation of 35 111. Adm. Code 218.105(d)(2)(A)(i);

dd.   Failed to record and maintain continuous temperature monitoring records for drum furnace afterburner in violation of 35 Ill. Adm. Code 21 8.105(d)(2)(A)(i);

ee.   Failed to record and maintain continuous temperature monitoring records for lid cover furnace in violation of 35 Ill. Adm. Code 21 8.105(d)(2)(A)(i);

ff.   Failed to inspect drum incinerator, lid incinerator, spray paint booths, bake ovens, shot blast machines, tight-head flushers and other drum reconditioning equipment for malfunctions, deterioration, operator errors and discharges in violation of 40 CFR 254.15;

gg.   Failed to inspect drum and lid/cover incinerators for slag buildup;

hh.   Failed to inspect drum and lid/cover incinerator for conveyor chain and refractory cracks;

ii.   Failed to inspect and maintain spray paint booths for leaking paint and dirty and/or clogged tips and filters;

jj.   Failed to adequately manage and maintain Drum Rejection Area;

kk.   Failed to maintain Unacceptable Drum Rejection Logs;

ll.     Stored an excess number of heavy drums in Drum Rejection Area;

mm.     Failed to install secondary containment system in Drum Rejection Area;

nn.     Failed to optimize drum incinerator process flow;

oo.     Failed to adequately maintain and control drum processing feed rate for drum and lid cover incinerators;

pp.     Failed to install a lock-out arm to regulate the oxidation of drums at the Drum Reconditioning Plant;

qq.     Treated hazardous waste by feeding heavy drums into drum incinerator;

rr.     Failed to install and maintain drum incinerator to control the discharge of hazardous pollutants and substances into the environment during drum processing;

ss.     Processed heavy drums into drum incinerator after dark so as to avoid detection by federal, state, and municipal Environmental Authorities;

tt.     Collected spray paint slag buildup, yard spillage, and other spilled materials and processed said materials into drum incinerator;

uu.     Dumped hazardous waste and drum residues into drum yard;

vv.     Washed, cleaned, and reconditioned totes in open yard allowing contents to flood yard and flow offsite into the public ways;

ww.     Received, cleaned, and reconditioned totes containing virgin product, chemical residues, and hazardous waste, emptied said contents into drums, and processed said drums through drum incinerator;

xx.     Spread the contents of heavy drums into numerous other drums and processed said drums through drum incinerator;

yy.     Processed overly heavy drums into drum incinerator open side up causing excessive smoking and fugitive emissions;

zz.     Failed to achieve 99.99% destruction efficiency of organic matter in drum incinerator in violation 40 CFR 264.404;

aaa.    Moved heavy drums accumulated in drum yard to Premier site prior to inspections by federal, state, and municipal regulatory authorities;

bbb.    Emp1oyed spotters to alert yard personnel when USEPA, ILEPA, or DOE investigators approached Drum Reconditioning Plant;

ccc.     Treated hazardous waste by adding lime to hazardous waste stored in rolloff
         boxes;

ddd.     Failed to maintain drum incinerator at adequate temperatures to achieve complete
         combustion of wastes contained in drums;

eee.     Failed to maintain drum incinerator at temperatures specified in operating
         permits;

fff.     Failed to maintain lid/cover incinerator at temperatures specified in operating
         permits;

ggg.     Failed to adequately monitor combustion temperature, waste feed rate, and
         combustion gas velocity of drum incinerator;

hhh.     Failed to achieve destruction and removal efficiency benchmarks in connection
         with operation of drum incinerator in violation of 40 CFR 264.343;

iii.     Dumped treated drum incinerator sludge and other chemical residues into public
         sewer adjacent to railroad tracks behind Premier warehouse;

jjj.     Improperly burned and disposed of waste sludge in rotary kiln without proper
         permit;

kkk.     Allowed drums on yard chain to be uncovered allowing noxious odors to escape
         into the environment;

lll.     Burned hazardous waste and chemical residue in open containers in central yard
         area;

mmm.     Failed to properly manage hazardous waste contained in rusting and leaking
         containers in violation of 40 CFR 264.17 1 ;

nnn.     Failed to keep drums containing hazardous waste adequately closed in violation
         of 40 CFR 264.173;

ooo.     Failed to inspect hazardous waste container storage areas in violation of 40 CFR
         264.1 74;

ppp.     Failed to maintain containment system in hazardous waste storage area in
         violation of 40 CFR 264.175;

qqq.     Failed to install an enclosure on the front end of the drum incinerator to increase
         emission capture and control fugitive emissions;

rrr.     Failed to operate drum incinerator so as to reduce VOC emissions in violation of
         35 111. Adm. Code 218.986;

sss.    Permitted open burning of drum residue in drums exiting drum incinerator in violation of 35 111. Adm. Code 237.102;

ttt.    Discharged fugitive particle matter from drum incinerator in violation of 35 111. Adm. Code 212.301;

uuu.    Operated inadequately drum and lidcover incinerator, spray paint booths, and shot blasting equipment for the activities conducted as required by the Clean Air Act;

vvv.    Developed waste storage site at Premier site without a permit in violation of 35 Ill. Adm. Code 807.201;

www.    Allowed hazardous waste to leech from waste water treatment facility into soils and public sewers;

xxx.    Allowed free product to leech from underground storage tanks at Drum Reconditioning Plant into soils;

yyy.    Allowed hazardous pollutants and substances dumped into the yard to reach soils;

zzz.    Allowed drain gates in drum yard to be clogged and filled with debris allowing hazardous waste to enter public way and city sewers;

aaaa.    Failed to maintain adequate containment measures to prevent the release of hazardous pollutants and substances into the soil and groundwater;

bbbb.    Allowed leaks from tight-head drum washer area on northwest side of tighthead plant building to flow outside of secondary containment;

cccc.    Failed to enclose spray paint booths allowing discharge of hazardous pollutants and substances into the surrounding environment;

dddd.    .Failed to install adequate equipment to control discharge of hazardous pollutants and substances into the environment during coatings operations;

eeee.    Failed to determine VOC content of coating operations used in spray paint booths and baking ovens;

ffff.    Applied product coatings which exceeded VOM limits in violation of 35 Ill. Adm. 21 8.204, Condition 7.1 -3.e of Title V Permit;

gggg.    Failed to determine Volatile Organic Material (VOM) content of product coatings in violation of 35 Ill. Adm. Code 21 8.21 1(a); Condition 7.1.7 of Title V Permit;

hhhh.    Failed to identify and maintain coating records for lid gasket glue line in violation of 35 111. Adm. Code 218.991(b); Condition 7.2.9 of Title V Permit;

iiii.  Failed to conduct VOM capture and destruction efficiency testing on drum incinerator when requested by USEPA on August 27, 2001, in violation of 35 Ill. Adm. Code 21 8.988;

jjjj.  Failed to maintain monthly and aggregate annual VOM emissions from drum and lid cover incinerator, in violation of Condition 7.3.9 of Title V Permit;

kkkk.  Circumvented 35 Ill. Adm. Code 21 8.204 by adding Methyl Ethyl Ketone and other solvents to VOM compliant coatings;

llll.  Failed to install pre-collection filters at spray paint booths;

mmmm.  Failed to install pre-collection filters at curing oven operation system;

nnnn.  Improperly operated spray paint booths without proper clean filters;

oooo.  Improperly operated spray paint booths with worn motors and bearings;

pppp.  .Improperly allowed uncontrolled open flame heating units to emit hazardous pollutants and substances into the surrounding environment;

qqqq.  Improperly allowed spray paint booths exhaust stacks to operate without proper rain hats, and to be covered with accumulation of paint over-spray;

rrrr.  Failed to keep doors, windows, and other openings closed to reduce ambient emissions from escaping offsite;

ssss.  Allowed hydraulic oil onto the ground from tote washing areas;

tttt.  Allowed dust collector to have leaks on transition pipes, hopper, dust container, and airlock causing the discharge of hazardous pollutants and substances into the surrounding environment;

uuuu.  Failed to adequately respond to DOE and public nuisance concerns in a timely manner; and,

vvvv.  Failed to promptly and properly notify the neighborhood residents, workers, federal, state, and municipal authorities of discharges of hazardous pollutants and substances in a manner so as to permit them to adequately protect themselves.

**ANSWER:**  3M states that this paragraph contains no allegations relating to 3M.  To the extent that any of the allegations in this paragraph may be construed as relating to 3M, 3M denies those allegations.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis denies those allegations.

4.   .   As a direct and proximate result of the aforementioned negligent conduct, the Drum Reconditioning Plant, discharged hazardous pollutants and substances into the surrounding neighborhood through air and ground, including, but not limited to, Volatile Organic Compounds (VOC's), Semi Volatile Chemicals (SVOC's), Polycyclic Aromatic Hydrocarbons (PAH7s), Pesticides, Polychlorinated biphenyIs (PCB's) Metals, and Dioxins and Furans. Specific chemicals include, but are not limited to, Benzene, Trichloroethene(TCE), Tetrachloroethene (PCE), Vinyl Chloride, Methyl Ethyl Ketone(MEK), Ethylbenzene, Xylene, -Toluene, Aliphatic Petroleum Distillates, 1,2-dichloroethane, Acenapthalene, Acrylic Acid, Acrylonitrile, AIkyd resins, Aluminum fumes and dusts, Anthracene, Ammonia, Antimony and related compounds, Arsenic, Barium, Benzo(a) anthracene, Benzo(a) fluoranthene, benzo(a)pyrene, dibenzo(a,h) Anthracene, Benzo(b)fluoranthene, Benzo(g,h,I) Perylene, Benzo(k) Fluoranthene, Beryllium, Bis-2-Ethylhexyl Adipate, Bis-2-Ethylhexyl Phthalate, Butyl Benzyl Phthalate, ButyI Acrylate, Butyl Methacrylate-methyl Methacrylate polymers, C.I. Pigments black 2, blue 15, green 7, yellow 34, Cadmium, Carbazole, Carbon Black, Carbon Disulfide, Catechol, Propylene Glycol mono methyl ether(dipropy1ene glycol ethyl ether), Chloroethane, Chloromethane, Chromium and chromium compounds, Hexavalent Chromium, Chrysene, cis- 1,2-dichloroethylene, Cobalt, Copper, Cumene, Cyclohexane, Dibromofluoromethane, Methylene Chloride, Diethylene glycol monobutyl ether acetate, Diisocyanates, Di-n-butyl phthalate, Di-octyI phthalate, Ethylene glycol, Ethylmethacrylate monomers, Fluoranthene, Fluorene, Formaldehyde, Heavy Aromatic solvent naphtha, Indeno(l,2,3-cd)pyrene, Lead and lead compounds, Methyl Isobutyl Ketone, Methyl acrylate, Naphthalene, Nickel and nickel compounds, Cresols, Phenanthrene, Phenol and phenolic compounds, Selenium, Silicone and silicone polymers, Solvent naphthas, Styrene, Tetrachloroethane, Tetrachloro-metaxylene, Zinc, Vinyl Chloride-vinyl acetate monomers, Methyl Propyl Ketone, Isopropanol, Isobutyl Acetate, 1,2,4-Trimethylbenzene, Aromatic naphtha, Triethyl mine, ButanoI, N-hexane, Ethylene Glycol Monobutyl Ether, Methyl N-Amyl Ketone, Dimethylethanolamine, Diethylaminoethanol, Butyl Acetate, Ethyl acrylate, 2-butoxyethanol (Butyl cellosolve), Sec-butyl alcohol, Acetone, Synthetic rubber and resins, Diacetone Alcohol, 1-Butanol, Ethanol, Mercury, Strontium, Asbestos, Crystalline silica, Bisphenol A, DDE, DDT, DDD, Heptachlor, Heptane, Methanol, Tetrahydrofuran, Chlorothalonil, and Toluene Diisocyanates.

**ANSWER:**   3M states that this paragraph contains no allegations relating to 3M.  To the extent that any of allegations in this paragraph may be construed as relating to 3M, 3M denies those allegations.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis denies those allegations.

5.  As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, and contaminants, the Decedent, KEJUAN DICKENS, WAS DIAGNOSED WITH ACUTE Myeloid Leukemia in November of 2002, and died on June 14, 2003.

**ANSWER:**   3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.   At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiffs decedent know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiffs decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count, that were discharged from the Drum Reconditioning Plant, could cause or contribute to cause acute myeloid leukemia.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.   At no point prior to November of 2002, did the Plaintiff or Plaintiff's decedent know or could-have known that the Decedent's acute myeloid leukemia was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

10. Plaintiff, RONALD JONES, JR., is the appointed Special Administrator for the Estate of KEJUAN DICKENS, Deceased.

**ANSWER:**   Denied.

11. Plaintiff, RONALD JONES, JR., brings this action as the Special Administrator of the Estate of Kejuan Dickens pursuant to the Illinois Wrongful Death Act, 740 ILCS 18010.01, et seq., on behalf of the decedent's next of kin. Decedent, KEJUAN DICKENS, left surviving his siblings, the Plaintiff, RONALD JONES, JR., Felicia Jones, and DeShon Dickens, and his parents, Ronald Jones, Sr., and Renee Dickens.

**ANSWER:**   3M denies that Plaintiff is legally authorized or has standing to bring this action as the Special Administrator of Decedent's next of kin.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, KEJUAN DICKENS, left behind three siblings, RONALD JONES, JR., and Felicia Dickens, and DeShon Dickens, and his parents, Ronald Jones, Sr. and Renee Dickens, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which KEJUAN DICKENS, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:**   3M denies that Decedent and the other persons identified in this paragraph suffered any injury as a result of 3M's conduct.  3M lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in this paragraph and on that basis denies those

allegations.

WHEREFORE, Plaintiff, RONALD JONES, JR., as Special Administrator for the Estate of KEJUAN DICKENS, Deceased, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

<u>**COUNT II - RONALD JONES, JR., Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
SURVIVAL ACT
ACME**</u>

**1-9 .**Plaintiff adopts and realleges Paragraphs 1 through 9 of Count I of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**10.** Prior to his death, the Decedent, KEJUAN DICKENS DICKENS, underwent a bone marrow transplant to treat his condition and spent most of the last seven months of his life hospitalized, and in the process, incurred enormous physical and mental pain and suffering

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis, denies those allegations.

**11.** This cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5127-6, for the pain and suffering experienced by the Decedent, KEJUAN DICKENS, prior to his death.

**ANSWER:** Denied.

**12**. The Plaintiff, RONALD JONES, has been appointed Special Administrator for the Estate of KEJUAN DICKENS, deceased, by Order of Court.

**ANSWER:** Denied.

**WHEREFORE,** the Plaintiff, RONALD JONES, Special Administrator for the Estate of KEJUAN DICKENS, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

<u>**COUNT III
RONALD JONES, JR., as Special Administrator for**</u>

**the Estate of KEJUAN DICKENS, Deceased**
**WRONGFUL DEATH**
**PEARLMAN**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT IV**
**RONALD JONES, JR., as Special Administrator for**
**the Estate of KEJUAN DICKENS, Deceased**
**SURVIVAL**
**PEARLMAN**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting Count IV contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT V**
**RONALD JONES, JR., as Special Administrator for**
**the Estate of KEJUAN DICKENS, Deceased**
**WRONGFUL DEATH**
**3M COMPANY**

1.     Plaintiff adopts and re-alleges paragraph 1 of Count I of this Complaint as though fully pleaded as paragraph I of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraph.

2.   The Defendant, 3M COMPANY, shipped tens of thousands of drums to the Drum Reconditioning Plant for cleaning and reconditioning on a yearly basis.

**ANSWER:**     3M admits that it sold steel drums to Acme Barrel that were then transported to the Drum Reconditioning Plant reconditioning during certain periods of time between approximately 1972 and 1999. 3M denies the remaining allegations in this paragraph.

31

3.   The aforementioned drums originated from various plants, including, but not limited to, those 3M COMPANY facilities in Cordova, Illinois, Cottage Grove, Minnesota, GuM, Alabama, and Knoxville, Iowa.

**ANSWER:**   3M admits that, at certain times, its plants at Cordova, Illinois, and Cottage Grove, Minnesota, it sold steel drums to Acme Barrel that were then transported to the Drum Reconditioning Plant for reconditioning.   3M denies the remaining allegations in this paragraph.

4.   During the time period described above, the custom and practice was that drums shipped by the Defendant, 3M COMPANY, were loaded onto ACME owned trailers or third party carriers by 3M COMPANY employees.

**ANSWER:**   3M admits that drums sold by 3M to Acme for reconditioning were generally though may not always have been loaded onto trailers by 3M employees. 3M admits that these trailers were not owned by 3M.   3M denies the remaining allegations in this paragraph.

5.   During the time period described above, 3M COMPANY employees visited the Drum Reconditioning Plant on numerous occasions to conduct sales visits, address quality control issues, and conduct environmental audits of the Drum Reconditioning Plant.

**ANSWER:**   3M admits that on more than one occasion 3M employees visited the Drum Reconditioning Plant, and that their purposes, depending on the visit, included evaluating the Drum Reconditioning Plant's capabilities and procedures, including environmental procedures. 3M denies the remaining allegations in this paragraph.

6.   During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that the plants, buildings, and equipment at the Drum Reconditioning Plant were dilapidated and in need of significant improvement.

**ANSWER:**   Denied.

7.   During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that the floors throughout the Drum Reconditioning Plant contained numerous cracks and unpaved areas.

**ANSWER:**   Denied.

8. During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that waste streams at the Drum Reconditioning Plant were not adequately channeled.

**ANSWER:** Denied.

9. During the time period alleged, the Defendant, 3M COMPANY, knew or should known that the Drum Reconditioning Plant had questionable practices to contain possible discharges and releases of hazardous pollutants and substances into the ground, soil, and air.

**ANSWER:** Denied.

10. During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that operational practices at the Drum Reconditioning Plant could result in the release of hazardous pollutants and substances into the air, soil or groundwater.

**ANSWER:** Denied.

11. During the period alleged above, the Defendant, 3M COMPANY, knew or should have known that the neighborhood was a densely populated residential and commercial area containing numerous homes, apartments, schools, businesses, and day care centers.

**ANSWER:** Denied.

12. During the period alleged above, the Defendant, 3M COMPANY, knew or should have known that the USEPA, ILEPA, and Chicago DOE had received hundreds of ACME related complaints from neighborhood residents and workers who complained of black, bluish-gray, and white smoke from the open head drum incinerator stack, strong paint odors from the spray paint booths and baking ovens, and chemical, solvent, and noxious odors present in the neighborhood.

**ANSWER:** Denied.

13. During the applicable time period, the Defendant, 3M COMPANY, knew or should have known that investigators from the USEPA, ILEPA, and from the Chicago DOE conducted hundreds of inspections at the Drum Reconditioning Plant and documented, at various times, chemical haze just north of the facility, black or white smoke coming from the yard and drum burner incinerator stacks, bluish-gray smoke coming from vents above the tight-head building, white smoke with bluish tints coming from the open head exhaust vents, process water from the yard flowing offsite and into public sewers, liquid waste spillage throughout the facility, adjacent properties and public ways, strong chemical smells throughout the plant, uncovered drums scattered throughout the plant, unmarked drums, and evidence of long-term storage of unacceptable/heavy drums.

**ANSWER:** Denied.

14. During the applicable time period, the Drum Reconditioning Plant received thousands of chemical residue containing dirty drums from the Defendant, 3M COMPANY, that contained

up to one inch of chemical residue of a hazardous, toxic, corrosive, and/or flammable nature, including, but not limited to, Inorganic Pigments, Plastics Materials, Synthetic Resins, Non-Vulcanizable Elastomers, Coated and Laminated Paper, Surface Active Agents, Finishing Agents, Sulfonated Oils and Assistants, Unsupported Plastics Film and Sheets, Abrasive Products, Fabricated Rubber Products, Adhesives and adhesive based products and the raw materials used to produce said products. Specific chemicals include, but are not limited to, Formaldehyde, Ethyl Acetate, Acrylate polymers, Heptane, Cyclohexane, Toluene, Isopropanol, Xylene, Polyethylmethacrylate, Methyl Alcohol, Isopropol Alcohol, Methyl Ethyl Ketone, Silicone Polymers, Tetrahydrofuran, Benzene, Methyl Iso-Butyl Ketone, Styrene/Butadine elastomer, Poly(dimethylsiloxane), Ethyl Acrylate, Triethy] amine, Methyl methacrylate, Methyl acrylate, solvents, and numerous Trade-secreted monomers, resins, and compounds.

**ANSWER:** 3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph.

15. During the applicable time period, the Drum Reconditioning Plant was not licensed to accept, clean or recondition drums which contained more than one inch of residue in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

**ANSWER:** The allegations in this paragraph are vague, ambiguous, and misrepresent applicable law. Denied.

16. During the applicable time period, the Defendant, 3M COMPANY, knew or should have known that the Drum Reconditioning Plant was not licensed to accept, clean, recondition, or dispose of drums that contained more than one inch of chemical residue in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

**ANSWER:**     The allegations in this paragraph are vague, ambiguous, and misrepresent

applicable law. Denied.

17. During the applicable time period, the Defendant, 3M COMPANY, knew or should have known that the Drum Reconditioning Plant was not licensed to treat, store, or dispose of hazardous waste.

**ANSWER:**     The allegations in this paragraph are vague, ambiguous, and misrepresent

applicable law. Denied.

18. During the applicable time period, the Defendant, 3M COMPANY, represented to regulatory agencies and public at large that it only shipped drums to the Drum Reconditioning Plant that contained no more than one inch of chemical residue, in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

**ANSWER:**     3M admits that it sent drums to Acme Barrel that complied with applicable

laws and regulations.  3M denies that it made any representation to any regulatory agency or the

"public at large" about the drums it sold to Acme Barrel and denies the remaining allegations in

this paragraph.

19. During the applicable time period, the Defendant, 3M COMPANY, shipped thousands of heavy drums to the Drum Reconditioning Plant which contained various quantities of hazardous, toxic, corrosive, and/or flammable chemicals, including, but not limited to, Inorganic Pigments, Plastics Materials, Synthetic Resins, NonVulcanizable Elastomers, Coated and Laminated Paper, Surface Active Agents, Finishing Agents, Sulfonated Oils and Assistants, Unsupported Plastics Film and Sheets, Abrasive Products, Fabricated Rubber Products, Adhesives and adhesive based products and the raw materials used to produce said products. Specific chemicals include, but are not limited to, Formaldehyde, Ethyl Acetate, Acrylate Polymers, fleptane, Cyclohexane, Toluene, Isopropanol, Xylene, Polyethylmethacrylate, Methyl Alcohol, Isopropol Alcohol, Methyl Ethyl Ketone, Silicone Polymers, Tetrahydrofuran, Benzene, Methyl I so-Buty l Ketone, Sty rene/Butadine el astomer, Poly (dimethy I silox ane), Ethyl Acrylate, Triethyl Amine, Methyl methacrylate, Methyl Acrylate, and numerous Trade-secreted monomers, resins, and compounds.

**ANSWER:**     3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to

steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned

any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph.

20. During the applicable time period, the heavy drums Defendant, 3M COMPANY, shipped to the Drum Reconditioning Plant contained hazardous waste, as defined by 40 CFR 261.3.

**ANSWER:**     3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a

drum to 3M on the purported basis that it contained more than one inch of regulated residues.

3M denies the remaining allegations in this paragraph.

21. During the applicable time period, Defendant, 3M COMPANY, knew or should have known that the Drum Reconditioning Plant was operating as an unlicensed hazardous waste disposal facility, in violation of 42 USC § 6901, et seq., 415 ILCS 5/20, et seq., and applicable Federal and State Code Provisions.

**ANSWER:**   3M admits that it knew from on or about 1972 onward that the Drum

Reconditioning Plant was not licensed as a "hazardous waste disposal facility." 3M denies that it

knew or should have known that the Drum Reconditioning Plant was "operating" as an

unlicensed hazardous waste disposal facility in violation of federal and state law, and denies the

remaining allegations in this paragraph.

22. During the applicable time period, Defendant, 3M COMPANY, through the shipment of chemical residue containing dirty drums and hazardous waste containing heavy drums, contributed to the discharge of hazardous pollutants and substances from the Drum Reconditioning Plant into the neighborhood.

**ANSWER:**   Denied.

23. The Defendant, 3M COMPANY, owed a duty to the Decedent, to properly dispose of its chemical residues and hazardous wastes in accordance in a safe, lawful, and responsible manner so as to prevent the discharge of hazardous pollutants and substances of said barrels into the neighborhood.

**ANSWER:**   Denied.

24. In breach of the aforementioned duty, the Defendant, 3M COMPANY, through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.      Shipped hazardous waste to an unlicensed hazardous waste disposal facility, in violation of 42 U.S.C. § 6901, et seq, 415 ILCS 5/20, et seq., and applicable Federal and State Code Provisions;

b.      Failed to ensure drums shipped to Drum Reconditioning Plant were "empty", per 40 CFR 261.7;

c.      Failed to ensure drums shipped to Drum Reconditioning Plant complied with 49 CFR 173.29;

d.      Failed to properly determine whether contents of drums shipped to Drum Reconditioning Plant contained hazardous wastes, in violation of 40 CFR 262.11;

e.      Failed to sign an "Empty Drum Certification" required with each shipment of drums to Drum Reconditioning Plant;

f.      Failed to properly identify and segregate drums containing hazardous waste;

g.      Failed to properly remove hazardous waste from drums prior to shipment to Drum Reconditioning Plant;

h.      Failed to properly package drums shipped to Drum Reconditioning Plant in violation of applicable Department of Transportation Regulations, including, but not limited to, parts 173 and 178;

i.      Failed to complete waste manifests for shipments of hazardous waste sent to Drum Reconditioning Plant for treatment, storage, and/or disposal, in violation of 40 CFR 262.20(a)1;

j.      Failed to provide Drum Reconditioning Plant with completed waste manifests in violation of 40 CFR 262.22;

k.      Failed to retain copies of completed waste manifests for shipments of hazardous waste sent to Drum Reconditioning Plant for treatment, storage, and/or disposal, in violation of 40 CFR 262.23;

1.      Failed to properly package hazardous waste shipped to Drum Reconditioning Plant in violation of 40 CFR 262.30;

m.      Failed to properly label hazardous waste shipments for offsite transport, in violation of 40 CFR 262.31;

n.      Failed to mark hazardous waste containers in violation of 40 CFR 262.32;

o.      Failed to properly placard hazardous waste shipments in violation of 40 CFR 262.33;

p.      Failed to maintain hazardous waste manifests for proscribed period, in violation of 40 CFR 262.40(a);

q.      Failed to accurately complete biennial report, in violation of 40 CFR 262.41;

r.      Failed to ensure Drum Reconditioning Plant drum incinerator operated in compliance with federal, state, and municipal laws;

s.      Failed to retrieve hazardous waste containing heavy drums sent to Drum Reconditioning Plant after being notified said barrels were shipped;

t.     Shipped heavy drums to Drum Reconditioning Plant after said drums had previously been rejected at Drum Reconditioning Plant;

u.     Failed to properly educate, train, and monitor shipping personnel to ensure drums sent to Drum Reconditioning Plant were "empty" as defined by 40 CFR 261.7;

v.     Failed to properly educate, train, and monitor shipping personnel to segregate and dispose of hazardous waste containing heavy drums;

w.     Failed to report nature and quantity of material shipped to Drum Reconditioning Plant in violation of Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11023; 40 CFR 372, et seq.;

x.     Transported drums containing chemical residues and hazardous wastes to Drum Reconditioning Plant when it knew or should have known the cleaning and reconditioning of said drums was performed in a way so as to cause the discharge of hazardous pollutants and substances into the neighborhood;

y.     Sent drums containing chemical residues and hazardous wastes to Drum Reconditioning Plant without regard to the consequences of a potential leak, spill, and/or release of hazardous pollutants and substances

z.     Failed to properly inspect drum incinerator stack height;

aa.    Failed to adequately investigate, inspect, and/or audit Drum Reconditioning Plant to ensure applicable federal, state, and municipal Environmental laws were being followed during cleaning and reconditioning of chemical residue and hazardous waste containing drums;

bb.    Failed to investigate, inspect, and/or audit Drum Reconditioning Plant to ensure cleaning and reconditioning of chemical residue and hazardous waste containing drums did not cause discharges of hazardous pollutants, and substances offsite and into the neighborhood;

cc.    Failed to ensure drum incinerator was capable of achieving complete combustion of 3M COMPANY chemical residues and hazardous wastes sent to Drum Reconditioning Plant; and,

dd.    Failed to ensure Drum Reconditioning Plant did not discharge hazardous pollutants and substances into the neighborhood as a result of its operations.

**ANSWER:**     Denied.

25. As a direct and proximate result of the aforementioned negligent conduct, the chemical residues and hazardous wastes sent by the Defendant, 3M COMPANY, were processed at the Drum Reconditioning Plant. The processing of said chemical residues and hazardous wastes contributed to the discharge of hazardous pollutants and substances into the environment from the Drum Reconditioning Plant. Specific chemicals include, but are not limited to, Volatile

Organic Compounds (VOC's), Semi Volatile Chemicals (SVOC's), Polycyclic Aromatic Hydrocarbons (PAH's), Pesticides, Polychlorinated biphenyls(PCB's) Metals, and Dioxins and Furans. Specific chemicals include, but are not limited to, Benzene, Trichloroethylene(TCE), Tetrachloroethene(PCE), Vinyl Chloride, Methyl Ethyl Ketone(MEK), Ethylbenzene, Xylene, Toluene, Aliphatic Petroleum Distillates, 1,2-dichloroethane, Acenapthalene, Acrylic Acid, Acrylonitrile, Alkyd resins, Aluminum fumes and dusts, Anthracene, Ammonia, Antimony and related compounds, Arsenic, Barium, Benzo(a) anthracene, Benzo(a) fluoranthene, benzo(a)pyrene, dibenzo(a,h) Anthracene, Benzo(b)fluoranthene, Benzo(g,h,l) Perylene, Benzo(k) Fluoranthene, Beryllium, Bis-2-Ethylhexyl Adipate, Bis-2-Ethylhexyl Phthalate, Butyl Benzyl Phthalate, Butyl Acrylate, Butyl Methacrylatemethyl Methacrylate polymers, C.I. Pigments black 2, blue 15, green 7, yellow 34, Cadmium. Carbazole, Carbon Black, Carbon Disulfide, Catechol, Propylene Glycol mono methyl ether(dipropylene glycol ethyl ether), Chloroethane, Chloromethane, Chromium and chromium compounds, Hexavalent Chromium, Chrysene, cis-1,2- dichloroethylene, Cobalt, Copper, Cumene, Cyclohexane, Dibromofluoromethane, Methylene Chloride, Diethylene glycol monobutyl ether acetate, Diisocyanates, Di-nbutyl phthalate, Di-octyl phthalate, Ethylene glycol, Ethylmethacrylate monomers, Fluoranthene, Fluorene, Formaldehyde, Heavy Aromatic solvent naphtha, Indeno(1,2,3- cd)pyrene, Lead and lead compounds, Methyl Isobutyl Ketone, Methyl acrylate, Naphthalene, Nickel and nickel compounds, Cresols, Phenanthrene, Phenol and phenolic compounds, Selenium, Silicone and silicone polymers, Solvent naphthas, Styrene, Tetrachloroethane, Tetrachloro-metaxylene, Zinc, Vinyl Chloride-vinyl acetate monomers, Methyl Propyl Ketone, Isopropanol, Isobutyl Acetate, 1,2,4- Trimethylbenzene, Aromatic naptha, Triethyl amine, Butanol, N-hexane, Ethylene Glycol Monobutyl Ether, Methyl N-Amyl Ketone, Dimethylethanolamine, Diethylaminoethanol, Butyl Acetate, Ethyl acrylate, 2-butoxyethanol (Butyl cellosolve), Sec-butyl alcohol, Acetone, Synthetic rubber and resins, Diacetone Alcohol, 1-Butanol, Ethanol, Mercury, Strontium, Asbestos, Crystalline silica, Bisphenol A, DDE, DDT, DDD, Heptachlor, Heptane, Methanol, Tetrahydrofuran, Chlorothalonil, and Toluene Diisocyanates.

**ANSWER:**    Denied.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances the Decedent, KEJUAN DICKENS, was diagnosed with Acute Myeloid Leukemia in November of 2002 at the age of sixteen and died on June 14, 2003.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause acute myeloid leukemia.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to November of 2002 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's acute myeloid leukemia was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

31. Plaintiff adopts and realleges Paragraphs 10 through 12 of Count I of this Complaint as though fully pleaded as Paragraphs 31 through 33 of this Count V.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, RONALD JONES, JR., as Special Administrator for the Estate of KEJUAN DICKENS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT VI - RONALD JONES, JR., as Special Administrator for the Estate of KEJUAN DICKENS, Deceased
### SURVIVAL ACT
### 3M COMPANY

**1-30.**    Plaintiff adopts and realleges Paragraphs 1 through 30 of Count V of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count VI.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

**31-33.**    Plaintiff adopts and realleges Paragraphs 10-12 of Count II of this Complaint as though fully pleaded as Paragraphs 31-33 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, RONALD JONES, JR., as Special Administrator for the Estate of the KEJUAN DICKENS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT VII- RONALD JONES, JR., as Special Administrator for
### the Estate of KEJUAN DICKENS, Deceased
### WRONGFUL DEATH
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT VIII - RONALD JONES JR., as Special Administrator for
### the Estate of KEJUAN DICKENS, Deceased
### SURVIVAL ACT
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT IX- RONALD JONES JR., as Special Administrator for
### the Estate of KEJUAN DICKENS, Deceased
### WRONGFUL DEATH
### THE SHERWIN WILLIAMS COMPANY

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT X - RONALD JONES, JR., as Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
SURVIVAL ACT
THE SHERWIN WILLIAMS COMPANY**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XI- RONALD JONES, JR., as Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
WRONGFUL DEATH
SUN CHEMICAL CORPORATION**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XII - RONALD JONES, JR., as Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
SURVIVAL ACT
SUN CHEMICAL CORPORATION**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XIII- RONALD JONES, JR., as Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
WRONGFUL DEATH
EXXON-MOBILCORPORATION**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XIV - RONALD JONES JR., as Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
SURVIVAL ACT
EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XV- RONALD JONES JR., Special Administrator for
The Estate of KEJUAN DICKENS, Deceased
WRONGFUL DEATH
DEWITT BARRELS, INC.**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XVI- RONALD JONES JR, as Special Administrator for
the Estate of KEJUAN DICKENS, Deceased
SURVIVAL
DEWITT BARRELS, INC.**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

**COUNT XVII-NED JAMES, III, as Special Administrator for
the Estate of MAE FRANCIS JAMES, Deceased
WRONGFUL DEATH
ACME[2]**

1.      From 1945 until 1997, the Decedent, MAE FRANCIS JAMES, lived at 2153 W.
Roosevelt and 1325 S. Claremont, Chicago, Illinois, within blocks of the Drum Reconditioning
Plant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.      Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint
as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

5.      As a direct and proximate result of being exposed to the aforementioned
hazardous pollutants and substances, the Decedent, MAE FRANCIS JAMES, developed
Multiple Myeloma, and died on April 21, 1997.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

---

[2]    For all claims asserted on behalf of Mae Frances James, the definition of "Acme" shall only include Defendants
      Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp, and IFCO Systems North America, Inc.

6.      At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.      At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants or substances were discharged from the Drum Reconditional Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.      At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count, that were discharged from the Drum Reconditioning Plant, could cause or contribute to cause multiple myeloma.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.      At no point prior to May 23, 2001, did the Plaintiff or Plaintiff's decedent know or could-have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

10.    Plaintiff, NED JAMES, III, is the appointed Special Administrator for the Estate of MAE FRANCIS JAMES, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**    Denied.

11.    Plaintiff brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, MAE FRANCIS JAMES, left surviving her children, the Plaintiff, NED JAMES, III, and C. Archie James, Carl James, and Robert James.

**ANSWER:**    3M denies that Plaintiff is legally authorized or has standing  to bring this action as the personal representative of Decedent's next of kin.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12.    The Decedent, MAE FRANCIS JAMES, left behind four children, the Plaintiff, NED JAMES, III, and C. Archie James, Carl James, and Robert James, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which MAE FRANCIS JAMES, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:**    3M denies that Decedent and the other persons identified in this paragraph suffered any injury caused by 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

WHEREFORE, Plaintiff, NED JAMES, III, as Special Administrator for the Estate of MAE FRANCIS JAMES, Deceased, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.


### COUNT XVIII - NED JAMES, III, as Special Administrator for
### the Estate of MAE FRANCIS JAMES, Deceased
### SURVIVAL ACT
### ACME

1-9.    Plaintiff adopts and realleges Paragraphs 1 through 9 of Count XVII of this Complaint as though fully pleaded as Paragraphs 1-9 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

10.    Prior to her death, the Decedent, MAE FRANCIS JAMES, received treatment for her condition and spent time in the hospital and in the process incurred enormous physical and mental pain and suffering.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis denies those allegations.

11.    This case is brought pursuant to the Illinois Survival Act, 735 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, MAE FRANCIS JAMES, prior to her death.

**ANSWER:**    Denied.

12.    The Plaintiff, NED JAMES, III, has been appointed Special Administrator for the Estate of MAE FRANCIS JAMES, deceased, by Order of Court.

**ANSWER:**    Denied.

WHEREFORE, Plaintiff, NED JAMES, III, as Special Administrator for the Estate of MAE FRANCIS JAMES, Deceased, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT XIX- NED JAMES, III, as Special Administrator for
## the Estate of MAE FRANCIS JAMES, Deceased
## WRONGFUL DEATH
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XX
## NED JAMES, III, as Special Administrator for
## the Estate of MAE FRANCIS JAMES, Deceased
## SURVIVAL
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XXI - NED JAMES, III, as Special Administrator for
## the Estate of MAE FRANCIS JAMES, Deceased
## WRONGFUL DEATH
## 3M COMPANY

1. Plaintiff adopts and re-alleges paragraph 1 of Count XVII of this Complaint as though fully pleaded as paragraph 1 of this Count XXI.

**ANSWER:** 3M incorporates it response to Paragraph 1 of Count XVII.

**2-25.** Plaintiff adopts and re-alleges Paragraphs 2-25 of Count V of this Complaint as though fully pleaded as paragraphs 2-25 of this Count XXI.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26.     As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, MAE FRANCIS JAMES, developed Multiple Myeloma, and died on April 21, 1997.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause multiple myeloma.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.   To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**31-33.**  Plaintiff adopts and re-alleges paragraphs 10-12 of Count XVII of this Complaint as though fully pleaded as paragraphs 31-33 of this Count XXI.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, NED JAMES, III as Special Administrator of the Estate of MAE FRANCIS JAMES, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.


## COUNT XXII - NED JAMES, III, as Special Administrator of
## the Estate of MAE FRANCIS JAMES, Deceased

**SURVIVAL**
**3M COMPANY**

**1-30.**   Plaintiff adopts and realleges Paragraphs 1 through 30 of Count XXI of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:**   3M incorporates its responses to the above-mentioned paragraphs.

**31-33.**   Plaintiff adopts and realleges paragraphs 10-12 of Count XVIII of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**   3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, NED JAMES, III, as Special Administrator of the Estate of the MAE FRANCIS JAMES, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**   3M denies that Plaintiff is entitled to any of the above requested relief.


**COUNT XXIII - NED JAMES, III, as Special Administrator of**
**the Estate of MAE FRANCIS JAMES, Deceased**
**WRONGFUL DEATH**
**BASF CORPORATION**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT XXIV - NED JAMES, III, as Special Administrator for**
**the Estate of MAE FRANCIS JAMES, Deceased**
**SURVIVAL ACT**
**BASF**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XXV- NED JAMES, III, as Special Administrator for
the Estate of MAE FRANCIS JAMES, Deceased
WRONGFUL DEATH
SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XXVI - NED JAMES, III, as Special Administrator of
the Estate of MAE FRANCIS JAMES, Deceased
SURVIVAL ACT
SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XXVII- NED JAMES, III, as Special Administrator of
the Estate of MAE FRANCIS JAMES, Deceased
WRONGFUL DEATH
SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XXVIII - NED JAMES, III, as Special Administrator of**
**the Estate of MAE FRANCIS JAMES, Deceased**
**SURVIVAL ACT**
**SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XXIX- NED JAMES, III, as Special Administrator of**
**the Estate of MAE FRANCIS JAMES, Deceased**
**WRONGFUL DEATH**
**EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XXX - NED JAMES, III, as Special Administrator of**
**the Estate of MAE FRANCIS JAMES, Deceased**
**SURVIVAL ACT**
**EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XXXI - NED JAMES, III, as Special Administrator of
### the Estate of MAE FRANCIS JAMES, Deceased
### WRONGFUL DEATH
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XXXII - NED JAMES, III, as Special Administrator of
### the Estate of MAE FRANCIS JAMES, Deceased
### SURVIVAL
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XXXIII----EARTHA GLOVER, as Special Administratrix of
### the Estate of VICTORIA CAMPBELL, Deceased
### WRONGFUL DEATH
### ACME[3]

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XXXIV - EARTHA GLOVER, as Special Administratrix of
### the Estate of VICTORIA CAMPBELL, Deceased

---

[3]  For all claims asserted on behalf of Victoria Campbell, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp.

## SURVIVAL ACT
### ACME

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XXXV - EARTHA GLOVER, as Special Administratrix of the Estate of VICTORIA CAMPBELL, Deceased
### WRONGFUL DEATH
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XXXVI
### EARTHA GLOVER, as Special Administratrix of the Estate of VICTORIA CAMPBELL, Deceased
### SURVIVAL
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>**COUNT XXXVII----ANNIE JACKSON, as Special Administratrix of**</u>
<u>**the Estate of WILLA MCCARGO, Deceased**</u>
<u>**WRONGFUL DEATH**</u>
<u>**ACME**[4]</u>

1.      From 1945 until 1986, the Decedent, WILLA MCCARGO, lived at 1723 W. 14th Street, Chicago, Cook County, Illinois, mere blocks from the Drum Reconditioning Plant.

**ANSWER:**     3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.      Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

5.      As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, WILLA MCCARGO, developed Multiple Myeloma, and died on November 7, 1991.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.      At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

---

[4]     For all claims asserted on behalf of Willa McCargo, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

7.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause multiple myeloma.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.     At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

31. Plaintiff, ANNIE JACKSON is the appointed Special Administratrix for the Estate of WILLA MCCARGO, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**   Denied.

32. Plaintiff, ANNIE JACKSON, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, WILLA MCCARGO, left surviving her sister, the Plaintiff, ANNIE JACKSON.

**ANSWER:**   3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

33. The Decedent, WILLA MCCARGO, left behind sister, Plaintiff, ANNIE JACKSON, who by reason of the death of the decedent, has been deprived of large sums of money and valuable services, for which WILLA MCCARGO, decedent, contributed to and performed, and has suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:**   3M denies that Decedent and Plaintiff suffered any injury as a result of 3M's conduct.  3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

WHEREFORE, Plaintiff, ANNIE JACKSON, as Special Administratrix for the Estate of WILLA MCCARGO, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**   3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT XXXVIII - ANNIE JACKSON, as Special Administratrix of the Estate of WILLA MCCARGO, Deceased
## SURVIVAL ACT
## ACME

1-9.    Plaintiff adopts and realleges Paragraphs 1 through 9 of Count XXXVII of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

10.    Prior to her death, the Decedent, WILLA MCCARGO, received treatment for her condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

11.    This cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, WILLA MCCARGO, prior to her death.

**ANSWER:**    Denied.

12.    Plaintiff, ANNIE JACKSON, has been appointed Special Administratrix of the Estate of WILLA MCCARGO, deceased, by Order of Court.

**ANSWER:**    Denied.

WHEREFORE, the Plaintiff, ANNIE JACKSON, as Special Administratrix for the Estate of the WILLA MCCARGO, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT XXXIX — ANNIE JACKSON, as Special Administratrix of the Estate of WILLA MCCARGO, Deceased
## WRONGFUL DEATH
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XL
## ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## SURVIVAL
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


## COUNT XLI- ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## WRONGFUL DEATH
## 3M COMPANY

1. Plaintiff adopts and re-alleges paragraph 1 of Count XXXVII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-25.** Plaintiff adopts and re-alleges paragraphs 2-25 of Count V of this Complaint as though fully pleaded as paragraphs 2-25 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, WILLA MCCARGO, developed Multiple Myeloma, and died on November 7, 1991.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause multiple myeloma.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001, did the Plaintiff, or Plaintiff's decedent, know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count XXXVII as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, ANNIE JACKSON, as Special Administratrix of the Estate of WILLA MCCARGO, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT XLII - ANNIE JACKSON, as Special Administratrix of the Estate of WILLA MCCARGO, Deceased
## SURVIVAL ACT
## 3M COMPANY

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count XLI of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count XXXVIII of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, ANNIE JACKSON, as Special Administratrix of the Estate of the WILLA MCCARGO, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT XLIII- ANNIE JACKSON, as Special Administratrix of the Estate of WILLA MCCARGO, Deceased WRONGFUL DEATH BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XLIV - ANNIE JACKSON, as Special Administratrix of the Estate of WILLA MCCARGO, Deceased SURVIVAL ACT BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XLV- ANNIE JACKSON, as Special Administratrix of the Estate of WILLA MCCARGO, Deceased WRONGFUL DEATH SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XLVI - ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## SURVIVAL ACT
## SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XLVII- ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## WRONGFUL DEATH
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XLVIII - ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## SURVIVAL ACT
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT XLIX- ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## WRONGFUL DEATH
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT L - ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## SURVIVAL ACT
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT LI - ANNIE JACKSON, as Special Administratrix of
## the Estate of WILLA MCCARGO, Deceased
## WRONGFUL DEATH
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LII — ANNIE JACKSON, as Special Administrator for
### the Estate of WILLA MCCARGO, Deceased
### SURVIVAL
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LIII—LONNIE FOSTER, as Special Administrator for
### the Estate of ELNORA SIMS, Deceased
### WRONGFUL DEATH
### ACME[5]

1. From 1976-1981, the Decedent ELNORA SIMS, lived at or near 1300 S. Oakley, Chicago, Cook County, Illinois, directly across the street from the Drum Reconditioning Plant.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4 Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

5. As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, ELNORA SIMS, developed kidney cancer, and died on February 20, 2004.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

---

[5] For all claims asserted on behalf of Elnora Sims, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause multiple myeloma.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

10. Plaintiff, LONNIE FOSTER is the appointed Special Administrator of the Estate of ELNORA SIMS, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:** Denied.

11. Plaintiff, LONNIE FOSTER, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, ELNORA SIMS, left surviving the Plaintiff, LONNIE FOSTER, and Walter Foster, Evelyn Foster, Mary Foster, Frank Foster, Latoya Foster, and John Foster.

**ANSWER:** 3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, ELNORA SIMS, left behind Plaintiff, LONNIE FOSTER, and Walter Foster, Evelyn Foster, Mary Foster, Frank Foster, Latoya Foster, and John Foster, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which ELNORA SIMS, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:** 3M denies that Decedent and the other persons identified in this paragraph suffered any injury caused by 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

WHEREFORE, Plaintiff, LONNIE FOSTER, as Special Administrator for the Estate of ELNORA SIMS, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

<u>**COUNT LIV-- LONNIE FOSTER, as Special Administrator of
the Estate of ELNORA SIMS, Deceased
SURVIVAL ACT
ACME**</u>

1-9     Plaintiff adopts and realleges Paragraphs 1 through 9 of Count LIII of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count .

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

10.     Prior to her death, the Decedent, ELNORA SIMS, received treatment for her condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:**     3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis denies those allegations.

11.     This cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, ELNORA SIMS, prior to her death.

**ANSWER:**     Denied.

12.     Plaintiff, LONNIE FOSTER, has been appointed Special Administrator for the Estate of ELNORA SIMS, deceased, by Order of Court.

**ANSWER:**     Denied.

WHEREFORE, the Plaintiff, LONNIE FOSTER, as Special Administrator for the Estate of the ELNORA SIMS, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT LV — LONNIE FOSTER, as Special Administrator of
### the Estate of ELNORA SIMS, Deceased
### WRONGFUL DEATH
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LVI
### LONNIE FOSTER as Special Administrator of
### the Estate of ELNORA SIMS, Deceased
### SURVIVAL
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LVII -- LONNIE FOSTER, as Administrator of
### the Estate of ELNORA SIMS, Deceased
### WRONGFUL DEATH
### 3M COMPANY

1. Plaintiff adopts and realleges Paragraph 1 of Count LIII of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-25.** Plaintiff adopts and re-alleges paragraphs 2-25 of Count V of this Complaint as though fully pleaded as paragraphs 2-25 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26.     As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, ELNORA SIMS, developed kidney cancer, and died on February 20, 2004.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause kidney cancer.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count LIII of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, LONNIE FOSTER, as Special Administrator of the Estate of ELNORA SIMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT LVIII--LONNIE FOSTER, as Special Administrator of the Estate of ELNORA SIMS, Deceased

### SURVIVAL ACT
### 3M COMPANY

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count LVII of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count LIV this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, LONNIE FOSTER, as Special Administrator of the Estate of the ELNORA SIMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.


### COUNT LIX- LONNIE FOSTER, as Special Administrator of
### the Estate of ELNORA SIMS, Deceased
### WRONGFUL DEATH
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT LX -- LONNIE FOSTER, as Special Administrator of
### the Estate of ELNORA SIMS, Deceased
### SURVIVAL ACT
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXI-- LONNIE FOSTER, as Special Administrator of
### the Estate of ELNORA SIMS, Deceased
### WRONGFUL DEATH
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXII -- LONNIE FOSTER, as Special Administrator of
### the Estate of ELNORA SIMS, Deceased
### SURVIVAL ACT
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXIII -- LONNIE FOSTER, as Special Administrator of
### the Estate of ELNORA SIMS, Deceased
### WRONGFUL DEATH
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT LXIV-- LONNIE FOSTER, as Special Administrator of
## the Estate of ELNORA SIMS, Deceased
## SURVIVAL
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT LXV--CALVIN RATTLER, as Special Administrator of
## the Estate of BRENDA RATTLER, Deceased
## WRONGFUL DEATH
## ACME

1.     From 1970 until 1990, the Decedent BRENDA RATTLER, lived at 2151 W. Washburne, Chicago, Cook County, Illinois, near the Drum Reconditioning Plant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4     Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count LXI.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

5.     As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, BRENDA RATTLER, was diagnosed with Colon Cancer on or about July 20, 2004, and died on December 29, 2004.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.     At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause colon cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 4 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

10.     Plaintiff, CALVIN RATTLER, is the appointed Special Administrator for the Estate
of BRENDA RATTLER, Deceased, under an order entered in this cause before the filing of this
Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**     Denied.

11.     Plaintiff, CALVIN RATTLER, brings this action as personal representative
pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the
decedent's next of kin. Decedent, BRENDA RATTLER, left surviving her spouse the Plaintiff,
CALVIN RATTLER, and her siblings, Ruth Reid, Christine Brooks, and Anthony Brooks.

**ANSWER:**     3M denies that Plaintiff is legally authorized or has standing to bring this

action as the personal representative of Decedent's next of kin.   3M lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this

paragraph and on that basis denies those allegations.

12.     The Decedent, BRENDA RATTLER, left behind her spouse, Plaintiff, CALVIN
RATTLER, and her siblings, Ruth Reid, Christine Brooks, and Anthony Brooks, who by reason
of the death of the decedent, have been deprived of large sums of money and valuable services,
for which BRENDA RATTLER, decedent, contributed to and performed, and have suffered
other substantial pecuniary injuries, including, but not limited to, loss of society, counseling,
love, affection, care, attention, companionship, comfort, guidance, and protection, and any and
all elements of loss of society, and Plaintiff, CALVIN RATTLER, has sustained and will
continue to sustain loss of consortium, and all elements thereto.

**ANSWER:**     3M denies that Decedent and the other persons identified in this paragraph

suffered any injury caused by 3M.   3M lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in this paragraph and on that basis denies those

allegations.

WHEREFORE, Plaintiff, CALVIN RATTLER, as Special Administrator for the Estate of
BRENDA RATTLER, Deceased, prays for judgment against the Defendants, ACME, in an
amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT LXVI -- CALVIN RATTLER, as Special Administrator of the Estate of BRENDA RATTLER, Deceased
### SURVIVAL ACT
### ACME

1-9. Plaintiff adopts and realleges Paragraphs 1 through 9 of Count LXV of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count LXII.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

10. Prior to her death, the Decedent, BRENDA RATTLER, received treatment for her condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

11. This cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, BRENDA RATTLER, prior to her death.

**ANSWER:** Denied.

12. The Plaintiff, CALVIN RATTLER, has been appointed Special Administrator for the Estate of BRENDA RATTLER, deceased, by Order of Court.

**ANSWER:** Denied.

WHEREFORE, the Plaintiff, CALVIN RATTLER, as Special Administrator for the Estate of the BRENDA RATTLER, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT LXVII -- CALVIN RATTLER, as Administrator of the Estate of BRENDA RATTLER, Deceased
### WRONGFUL DEATH
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT LXVIII**
**CALVIN RATTLER, as Administrator for**
**the Estate of BRENDA RATTLER, Deceased**
**SURVIVAL**
**PEARLMAN**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT LXIX --CALVIN RATTLER, as Administrator for**
**the Estate of BRENDA RATTLER, Deceased**
**WRONGFUL DEATH**
**3M COMPANY**

1.  Plaintiff adopts and realleges Paragraph 1 of Count LXV of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**    3M incorporates its response to Paragraph 1 of Count LXV.

**2-25.**  Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**    3M incorporates its response to Paragraphs 2 through 25 of Count V.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, BRENDA RATTLER, was diagnosed with Colon Cancer on or about July 20, 2004, and died on December 29, 2004.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause the alleged injury.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to July 20, 2004 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count LXV of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, CALVIN RATTLER, as Administrator for the Estate of BRENDA RATTLER, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT LXX -- CALVIN RATTLER, as Administrator of
### the Estate of BRENDA RATTLER, Deceased
### SURVIVAL ACT
### 3M COMPANY

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count LXIX of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count LXVI this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, CALVIN RATTLER, as Special Administrator of the Estate of the BRENDA RATTLER, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

**COUNT LXXI- CALVIN RATTLER, as Special Administrator for
the Estate of BRENDA RATTLER, Deceased
WRONGFUL DEATH
BASF CORPORATION**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT LXXII -- CALVIN RATTLER, as Special Administrator of
the Estate of BRENDA RATTLER, Deceased
SURVIVAL ACT
BASF**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT LXXIII -- CALVIN RATTLER, as Special Administrator of
the Estate of BRENDA RATTLER, Deceased
WRONGFUL DEATH
SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXIV - CALVIN RATTLER, as Special Administrator of
### the Estate of BRENDA RATTLER, Deceased
### SURVIVAL ACT
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXV-- CALVIN RATTLER, as Special Administrator of
### the Estate of BRENDA RATTLER, Deceased
### WRONGFUL DEATH
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXVI --CALVIN RATTLER, as Special Administrator of
### the Estate of BRENDA RATTLER, Deceased
### SURVIVAL ACT
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXVII-- CALVIN RATTLER, as Special Administrator of
### the Estate of BRENDA RATTLER, Deceased
### WRONGFUL DEATH
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXVIII-- CALVIN RATTLER, as Special Administrator of
### the Estate of BRENDA RATTLER, Deceased
### SURVIVAL ACT
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXIX --CALVIN RATTLER, as Special Administrator of
### the Estate of BRENDA RATTLER, Deceased
### WRONGFUL DEATH
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT LXXX -- CALVIN RATTLER, as Special Administrator of
### the Estate of BRENDA RATTLER, Deceased
### SURVIVAL
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT LXXXI--CYNTHIA GREEN, as Administratrix of
### the Estate of EDDIE GREEN, Deceased
### WRONGFUL DEATH
### ACME[6]

1.       From 1965 until 1994, the Decedent, EDDIE GREEN, lived at 1918 W. Washburne, mere blocks from the Drum Reconditioning Plant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.      Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

5.       As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, EDDIE GREEN, was diagnosed with leukemia in April of 2004, and died on January 13, 2005.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

---

[6]    For all claims asserted on behalf of Eddie Green, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., ]FCO Systems Illinois Inc., and ESP Realty Corp.

6.    At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.    At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.    At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause leukemia.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.    At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

10. Plaintiff, CYNTHIA GREEN is the appointed Special Administratrix for the Estate of EDDIE GREEN, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:** Denied.

11. Plaintiff, CYNTHIA GREEN, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, EDDIE GREEN, left surviving his wife, Mary Green and his children, the Plaintiff, CYNTHIA GREEN, and Eloise Green, Willie Green, Eddie Green Jr. Doris Green, and Mary Kornegay.

**ANSWER:** 3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, EDDIE GREEN, left behind his wife, Mary Green and his children, the Plaintiff, CYNTHIA GREEN, and Eloise Green, Willie Green, Eddie Green Jr. Doris Green, and Mary Kornegay, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which EDDIE GREEN, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society, and MARY GREEN has sustained and will continue to sustain loss of consortium, and all elements thereto.

**ANSWER:** 3M denies that Decedent and the other persons identified in this paragraph suffered any injury caused by 3M. 3M lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in this paragraph and on that basis denies those

allegations.

WHEREFORE, Plaintiff, CYNTHIA GREEN, as Special Administratrix for the Estate of EDDIE GREEN, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT LXXXII--CYNTHIA GREEN, as Special Administratrix for the Estate of EDDIE GREEN, Deceased SURVIVAL ACT ACME

1-9.     Plaintiff adopts and realleges Paragraphs 1 through 9 of Count LXXXI of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

10.     Prior to his death, the Decedent, EDDIE GREEN, was hospitalized for a great period of time and in the process, incurred enormous physical and mental pain and suffering.

**ANSWER:**     3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis, denies those allegations.

11.     This cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, EDDIE GREEN, prior to his death.

**ANSWER:**     Denied.

12.     The Plaintiff, CYNTHIA GREEN, has been appointed Special Administratrix for the Estate of EDDIE GREEN, deceased, by Order of Court.

**ANSWER:**     Denied.

WHEREFORE, the Plaintiff, CYNTHIA GREEN, as Special Administratrix for the Estate of the EDDIE GREEN, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT LXXXIII —CYNTHIA GREEN, as Special Administratrix of the Estate of EDDIE GREEN, Deceased

## WRONGFUL DEATH
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT LXXXIV--CYNTHIA GREEN, as Special Administratrix of
## the Estate of EDDIE GREEN, Deceased
## SURVIVAL ACT
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT LXXXV-- CYNTHIA GREEN, as Special Administratrix of
## the Estate of EDDIE GREEN, Deceased
## WRONGFUL DEATH
## 3M COMPANY

1. Plaintiff adopts and re-alleges paragraph 1 of Count LXXXI of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its response to Paragraph 1 of Count LXXXI.

**2-25.** Plaintiff adopts and re-alleges paragraphs 2-25 of Count V of this Complaint as though fully pleaded as paragraphs 2-25 of this Count.

**ANSWER:** 3M incorporates its response to paragraphs 2-25 of Count V.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, EDDIE GREEN, was diagnosed with leukemia in April of 2004, and died on January 13, 2005.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause leukemia.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to April of 2004 did the Plaintiff or Plaintiffs decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count LXXXI of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, CYNTHIA GREEN, Special Administratrix of the Estate of the EDDIE GREEN, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT LXXXVI -- CYNTHIA GREEN, as Special Administratrix of the Estate of EDDIE GREEN, Deceased
### SURVIVAL
### 3M COMPANY

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count LXXXV of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count LXXXII this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, CYNTHIA GREEN, Special Administratrix of the Estate of the EDDIE GREEN, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT LXXXVII-- CYNTHIA GREEN, as Special Administratrix of
### the Estate of EDDIE GREEN, Deceased
### WRONGFUL DEATH
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXXVIII-- CYNTHIA GREEN, as Administratrix of
### the Estate of EDDIE GREEN, Deceased
### SURVIVAL ACT
### BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT LXXXIX-- CYNTHIA GREEN, as Special Administratrix of
### the Estate of EDDIE GREEN, Deceased
### WRONGFUL DEATH
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XCI-- CYNTHIA GREEN, as Special Administratrix of
the Estate of EDDIE GREEN, Deceased
WRONGFUL DEATH
SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XCII--CYNTHIA GREEN, as Special Administratrix of
the Estate of EDDIE GREEN, Deceased
SURVIVAL ACT  SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XCIII-- CYNTHIA GREEN, as Special Administratrix of
the Estate of EDDIE GREEN, Deceased
WRONGFUL DEATH
EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XCIV-- CYNTHIA GREEN, as Special Administratrix of
the Estate of EDDIE GREEN, Deceased
SURVIVAL ACT
EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XCV-- CYNTHIA GREEN, as Special Administratrix of the Estate of EDDIE GREEN, Deceased WRONGFUL DEATH DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XCVI-- CYNTHIA GREEN, as Special Administratrix of the Estate of EDDIE GREEN, Deceased SURVIVAL DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT XCVII--EULA MILLER, as Special Administratrix of the Estate of JAMES THOMAS, Deceased WRONGFUL DEATH ACME[7]

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

---

[7]    For all claims asserted on behalf of James Thomas, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

**COUNT XCVIII-- EULA MILLER, as Special Administratrix of
the Estate of JAMES THOMAS, Deceased
SURVIVAL ACT
ACME**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT XCIX--- BARBARA GORDON, as Special Administratrix of
the Estate of CANARY GORDON, Deceased
WRONGFUL DEATH
ACME[8]**

1.      From 1949 until 1996, the Decedent, CANARY GORDON, lived at 2235 W. Washburne, Chicago, Cook County, Illinois, north east of the Drum Reconditioning Plant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.     Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

5.      As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, CANARY GORDON, was diagnosed with Lung Cancer, and died on April 1, 1996.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

---

[8]    For all claims asserted on behalf of Canary Gordon, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp, and IFCO Systems North America, Inc

6.  At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**  3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.  At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**  3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.  At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lung cancer.

**ANSWER:**  3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.  At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

10. Plaintiff, BARBARA GORDON, is the appointed Special Administratrix for the Estate of CANARY GORDON, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**   Denied.

11. Plaintiff, BARBARA GORDON, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, CANARY GORDON, left surviving, the Plaintiff, BARBARA GORDON, and her siblings, Denise Gordon, Vivian Gordon, and Shirley Gordon.

**ANSWER:**   3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, CANARY GORDON, left behind, the Plaintiff, BARBARA GORDON, and her siblings, Denise Gordon, Vivian Gordon, and Shirley Gordon, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which CANARY GORDON, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:**   3M denies that Decedent and the other persons identified in this paragraph suffered any injury caused by 3M.  3M lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in this paragraph and on that basis denies those

allegations.

WHEREFORE, Plaintiff, BARBARA GORDON, as Special Administratrix for the Estate of CANARY GORDON, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT C-- BARBARA GORDON, as Special Administratrix of the Estate of CANARY GORDON, Deceased SURVIVAL ACT ACME

1-9.    Plaintiff adopts and realleges Paragraphs 1 through 9 of Count XCIX of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

10. Prior to her death, the Decedent, CANARY GORDON, received treatment for her condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis denies those allegations.

11. This cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, CANARY GORDON, prior to her death.

**ANSWER:**    Denied.

12. The Plaintiff, BARBARA GORDON, has been appointed Special Administratrix for the Estate of CANARY GORDON, deceased, by Order of Court.

**ANSWER:**    Denied.

WHEREFORE, the Plaintiff, BARBARA GORDON, as Special Administratrix for the Estate of the CANARY GORDON, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

<u>**COUNT CI-- BARBARA GORDON, as Special Administratrix of**</u>
<u>**the Estate of CANARY GORDON, Deceased**</u>
<u>**WRONGFUL DEATH**</u>
<u>**PEARLMAN**</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>**COUNT CII-- BARBARA GORDON, as Special Administratrix of**</u>
<u>**the Estate of CANARY GORDON, Deceased**</u>
<u>**SURVIVAL**</u>
<u>**PEARLMAN**</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>**COUNT CIII- BARBARA GORDON, as Special Administratrix of**</u>
<u>**the Estate of CANARY GORDON, Deceased**</u>
<u>**WRONGFUL DEATH**</u>
<u>**3M COMPANY**</u>

1. Plaintiff adopts and realleges Paragraph 1 of Count XCIX of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:** 3M incorporates its response to Paragraph 1 of Count XCIX.

**2-25.** Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26.     As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, CANARY GORDON, was diagnosed with Lung Cancer in March of 1996, and died on April 1, 1996.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27.     At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause the lung cancer.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff or Plaintiffs decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.  To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**31-33.**  Plaintiff adopts and re-alleges paragraphs 10-12 of Count XCIX of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, BARBARA GORDON, as Special Administratrix of the Estate of CANARY GORDON, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that plaintiff is entitled to any of the above requested relief.

## COUNT CIV -- BARBARA GORDON, as Special Administratrix of the Estate of CANARY GORDON, Deceased

## SURVIVAL ACT
## 3M COMPANY

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count CIII of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count C this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, BARBARA GORDON, as Special Administratrix for the Estate of the CANARY GORDON, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that plaintiff is entitled to any of the above requested relief.

## COUNT CV-- BARBARA GORDON, as Special Administratrix of
## the Estate of CANARY GORDON, Deceased
## WRONGFUL DEATH
## BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CVI -- BARBARA GORDON, as Special Administratrix of
## the Estate of CANARY GORDON, Deceased
## SURVIVAL ACT
## BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CVII-- BARBARA GORDON, as Special Administratrix of
the Estate of CANARY GORDON, Deceased
WRONGFUL DEATH
SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CVIII -- BARBARA GORDON, as Special Administratrix of
the Estate of CANARY GORDON, Deceased
SURVIVAL ACT
SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CIX--BARBARA GORDON, as Special Administratrix of
the Estate of CANARY GORDON, Deceased
WRONGFUL DEATH
SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CX - BARBARA GORDON, as Special Administratrix of
### the Estate of CANARY GORDON, Deceased
### SURVIVAL ACT
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXI- BARBARA GORDON, as Special Administratrix of
### the Estate of CANARY GORDON, Deceased
### WRONGFUL DEATH
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXII-- BARBARA GORDON, as Special Administratrix of
### the Estate of CANARY GORDON, Deceased
### SURVIVAL ACT
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXIII -- BARBARA GORDON, as Special Administratrix of
the Estate of CANARY GORDON, Deceased
WRONGFUL DEATH
DEWITT**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXIV-- BARBARA GORDON, as Special Administratrix of
the Estate of CANARY GORDON, Deceased
SURVIVAL
DEWITT**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXV--JOYCE WILLIAMS, as Special Administratrix of
the Estate of ANTHONY WILLIAMS, Deceased
WRONGFUL DEATH
ACME[9]**

1. From 1952-1965 and 1994-1997, the Decedent, ANTHONY WILLIAMS, lived at 1759 W. Hastings, 1755 W. Hastings, and 1727 W. 14th St., Chicago, Cook County, Illinois.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4. Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

---

[9] For all claims asserted on behalf of Anthony Williams, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp, and IFCO Systems North America, Inc.

5. As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, ANTHONY WILLIAMS, developed pancreatic cancer and died on April 20, 1997.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause pancreatic cancer.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.   At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.   To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

10. Plaintiff, JOYCE WILLIAMS, is the appointed Special Administratrix for the Estate of ANTHONY WILLIAMS, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**   Denied.

11. Plaintiff, JOYCE WILLIAMS, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, ANTHONY WILLIAMS, left surviving, the Plaintiff, JOYCE WILLIAMS, and Theresa Williams, Charles Williams, James Williams, Deilela Williams, Essia Williams, Yvonne Williams, and Johnny Williams.

**ANSWER:**   3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin.   3M lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this

paragraph and on that basis denies those allegations.

12. The Decedent, ANTHONY WILLIAMS, left behind the Plaintiff, JOYCE WILLIAMS, and Theresa Williams, Charles Williams, James Williams, Deilela Williams, Essia Williams, Yvonne Williams, and Johnny Williams, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which ANTHONY WILLIAMS, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:** 3M denies that Decedent and the other persons identified in this paragraph

suffered any injury caused by 3M. 3M lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in this paragraph and on that basis denies those

allegations.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratrix for the Estate of ANTHONY WILLIAMS, Deceased, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.


**COUNT CXVI-- JOYCE WILLIAMS, as Special Administratrix of
the Estate of ANTHONY WILLIAMS, Deceased
SURVIVAL ACT
ACME**

1-9. Plaintiff adopts and realleges Paragraphs 1 through 9 of Count CXV of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

10. Prior to his death, the Decedent, ANTHONY WILLIAMS, received treatment for his condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis, denies those allegations.

11.     This cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, ANTHONY WILLIAMS, prior to his death.

**ANSWER:**     Denied.

12.     The Plaintiff, JOYCE WILLIAMS, has been appointed Special Administratrix for the Estate of ANTHONY WILLIAMS, deceased, by Order of Court.

**ANSWER:**     Denied.

WHEREFORE, the Plaintiff, JOYCE WILLIAMS, as Special Administratrix for the Estate of the ANTHONY WILLIAMS, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CXVII-- JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased
### WRONGFUL DEATH
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXVIII-- JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased
### SURVIVAL
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXIX—JOYCE WILLIAMS, as Special Administratrix of
## the Estate of ANTHONY WILLIAMS, Deceased
## WRONGFUL DEATH
## 3M COMPANY

1.  Plaintiff adopts and realleges Paragraph I of Count CXV of this Complaint as though fully pleaded as Paragraph I of this Count.

**ANSWER:**  3M incorporates its responses to Paragraph I of Count CXV.

**2-25.**  Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**  3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, ANTHONY WILLIAMS, developed pancreatic cancer and died on April 20, 1997.

**ANSWER:**  3M denies that Decedent's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**  3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**  3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the_ Drum Reconditioning Plant could cause or contribute to cause pancreatic cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count CXV of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CXX-- JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased SURVIVAL ACT 3M COMPANY

**1-30.**   Plaintiff adopts and realleges Paragraphs 1 through 30 of Count CXIX of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

**31-33.**   Plaintiff adopts and realleges paragraphs 10-12 of Count CXVI this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, JOYCE WILLIAMS, as Special Administratrix for the Estate of the ANTHONY WILLIAMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CXXI- JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased WRONGFUL DEATH BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXXII - JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased SURVIVAL ACT BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXXIII-- JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased
### WRONGFUL DEATH
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXXIV-- JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased
### SURVIVAL ACT
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXXV--JOYCE WILLIAMS, as Special Administratrix of the Estate of ANTHONY WILLIAMS, Deceased
### WRONGFUL DEATH
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXXVI-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ANTHONY WILLIAMS, Deceased

## SURVIVAL ACT
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXXVII-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ANTHONY WILLIAMS, Deceased
## WRONGFUL DEATH
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXXVIII-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ANTHONY WILLIAMS, Deceased
## SURVIVAL ACT
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXXIX-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ANTHONY WILLIAMS, Deceased
## WRONGFUL DEATH
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CXXX-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ANTHONY WILLIAMS, Deceased
### SURVIVAL
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CXXXI----JOYCE WILLIAMS, as Special Adminstratrix for the Estate of ESSIE WILLIAMS, Deceased
### WRONGFUL DEATH
### ACME[10]

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CXXXII-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ESSIE WILLIAMS, Deceased
### SURVIVAL ACT
### ACME

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

---

[10]  For all claims asserted on behalf of Essie Williams, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

### COUNT CXXXIII-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ESSIE WILLIAMS, Deceased
### WRONGFUL DEATH
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXXXIV-- JOYCE WILLIAMS, as Special Adminstratrix of the Estate of ESSIE WILLIAMS, Deceased
### SURVIVAL
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXXXV---JOYCE WILLIAMS, as Special Administratrix of the Estate of SHIRLEY WILLIAMS, Deceased
### WRONGFUL DEATH
### ACME[11]

1.      From 1957-1965 and 1975-2000, the Decedent, SHIRLEY WILLIAMS, lived at 1759 W. Hastings, 1755 W. Hastings, and 2063 W. Roosevelt, Chicago, Cook County, Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4      Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

---

[11]   For all claims asserted on behalf of Shirley Williams, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp, IFCO Systems North America, Inc, and Drum Holding Company, Inc.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

5. As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, SHIRLEY WILLIAMS, developed pancreatic cancer and died on September 18, 2001.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause pancreatic cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

9. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

10. Plaintiff, JOYCE WILLIAMS, is the appointed Special Administratix of the Estate of SHIRLEY WILLIAMS, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:** Denied.

11. Plaintiff, JOYCE WILLIAMS, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, SHIRLEY WILLIAMS, left surviving the Plaintiff, JOYCE WILLIAMS, and, Theresa Williams, Charles Williams, James Williams, Deilela Williams, Essia Williams, Yvonne Williams, and Johnny Williams.

**ANSWER:** 3M denies that Plaintiff is legally authorized or has standing to bring this

action as the personal representative of Decedent's next of kin. 3M lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, SHIRLEY WILLIAMS, left behind Plaintiff, JOYCE WILLIAMS, and, Theresa Williams, Charles Williams, James Williams, Deilela Williams, Essia Williams, Yvonne Williams, and Johnny Williams, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which SHIRLEY WILLIAMS, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:** 3M denies that Decedent and the other persons identified in this paragraph suffered any injury caused by 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratix of the Estate of SHIRLEY WILLIAMS, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CXXXVI-- JOYCE WILLIAMS, as Special Administratrix of the Estate of SHIRLEY WILLIAMS, Deceased
## SURVIVAL ACT
## ACME

1-9. Plaintiff adopts and realleges Paragraphs 1 through 9 of Count CXXXV of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:** 3M incorporates its responses to these Paragraphs 1.

10. Prior to her death, the Decedent, SHIRLEY WILLIAMS, received treatment for her condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

11.     This Cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, SHIRLEY WILLIAMS, prior to her death.

**ANSWER:**     Denied.

12.     Plaintiff, JOYCE WILLIAMS, has been appointed Special Administratix of the Estate of SHIRLEY WILLIAMS, deceased, by Order of Court.

**ANSWER:**     Denied.

WHEREFORE, the Plaintiff, JOYCE WILLIAMS, as Special Administratix of the Estate of the SHIRLEY WILLIAMS, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.


## COUNT CXXXVII-- JOYCE WILLIAMS, as Special Administratrix of the Estate of SHIRLEY WILLIAMS, Deceased
## WRONGFUL DEATH
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


## COUNT CXXXVIII-- JOYCE WILLIAMS, as Special Administratrix of the Estate of SHIRLEY WILLIAMS, Deceased
## SURVIVAL
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


## COUNT CXXXIX-- JOYCE WILLIAMS, as Special Administratrix of the Estate of SHIRLEY WILLIAMS, Deceased

## <u>WRONGFUL DEATH</u>
## <u>3M COMPANY</u>

1.  Plaintiff adopts and realleges Paragraph 1 of Count CXXXV of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**    3M incorporates its response to Paragraph 1 of Count CXXXV.

**2-25.**  Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, SHIRLEY WILLIAMS, developed pancreatic cancer and died on September 18, 2001.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause pancreatic cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count CXXXV of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratrix of the Estate of SHIRLEY WILLIAMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff s entitled to any of the above requested relief.

### COUNT CXL-- JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### SURVIVAL ACT
### 3M COMPANY

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count CXXXIX of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count CXXXVI of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, JOYCE WILLIAMS, as Special Administratrix of the Estate of the SHIRLEY WILLIAMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff s entitled to any of the above requested relief.


### COUNT CXLI-- JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### WRONGFUL DEATH
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CXLII-- JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### SURVIVAL ACT
### BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXLIII-- JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### WRONGFUL DEATH
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXLIV-- JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### SURVIVAL ACT
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXLV--JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### WRONGFUL DEATH
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXLVI-- JOYCE WILLIAMS, as Special Administratrix of
the Estate of SHIRLEY WILLIAMS, Deceased
SURVIVAL ACT
SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXLVII-- JOYCE WILLIAMS, as Special Administratrix of
the Estate of SHIRLEY WILLIAMS, Deceased
WRONGFUL DEATH
EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXLVIII-- JOYCE WILLIAMS, as Special Administratrix of
the Estate of SHIRLEY WILLIAMS, Deceased
SURVIVAL ACT
EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXLIX -- JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### WRONGFUL DEATH
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CL-- JOYCE WILLIAMS, as Special Administratrix of
### the Estate of SHIRLEY WILLIAMS, Deceased
### SURVIVAL
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLI---HELEN LITTLE, as Special Administratrix of
### the Estate of WILLA LEAKS, Deceased
### WRONGFUL DEATH
### ACME[12]

1.     From 1955 until 1999, the Decedent WILLIE MAE LEAKS, lived at 1307 S. Claremont, in Chicago, Cook County, Illinois, near the Drum Reconditioning Plant.

**ANSWER:**     3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.     Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

---

[12]   For all claims asserted on behalf of Willa Leaks, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp., IFCO Systems North America, Inc., and Drum Holding Company, Inc.

5. As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, WILLA LEAKS, was diagnosed with ovarian cancer, and died on February 20, 1999.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause ovarian cancer.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

9.   At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.   To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

10. Plaintiff, HELEN LITTLE, is the appointed Administratix of the Estate of WILLA LEAKS, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**   3M admits than an order dated April 9, 2007 purported to appoint Plaintiff

as "special administratrix," but denies that such order was proper or had any legal effect.

11. Plaintiff, HELEN LITTLE, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, WILLIE MAE LEAKS, left surviving the Plaintiff, HELEN LITTLE, and her siblings, Willie Leaks, Ralph Leaks, Beverly Leaks, Tim Leaks, Ernest Leaks, and Kermit Leaks.

**ANSWER:** 3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, WILLA LEAKS, left behind Plaintiff, HELEN LITTLE, and her siblings, Willie Leaks, Ralph Leaks, Beverly Leaks, Tim Leaks, Ernest Leaks, and Kermit Leaks, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which WILLA LEAKS, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:** 3M denies that Decedent and the other persons identified in this paragraph suffered any injury caused by 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

WHEREFORE, Plaintiff, HELEN LITTLE, as Special Administratix of the Estate of WILLA LEAKS, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.


### COUNT CLII--HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased SURVIVAL ACT ACME

1-9. Plaintiff adopts and realleges Paragraphs 1 through 9 of Count CLI of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

10.     Prior to her death, the Decedent, WILLIE MAE LEAKS, received treatment for her condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:**     3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

11.     This Cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, WILLA LEAKS, prior to her death.

**ANSWER:**     Denied.

12.     The Plaintiff, HELEN LITTLE, has been appointed Special Administratix of the Estate of WILLA LEAKS by Order of Court.

**ANSWER:**     Denied.

WHEREFORE, the Plaintiff, HELEN LITTLE, as Special Administratix of the Estate of the WILLA LEAKS, Deceased, prays for judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CLIII-- HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased
### WRONGFUL DEATH
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLIV -- HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased
### SURVIVAL
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLV-- HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased
## WRONGFUL DEATH
## 3M COMPANY

1.      Plaintiff adopts and realleges Paragraph 1 of Count CLI of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**    3M incorporates its response to Paragraph 1 of Count CLI.

**2-25.**  Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, WILLA LEAKS, was diagnosed with ovarian cancer, and died on February 20, 1999.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause ovarian cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count CLI of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.


**COUNT CLVI -- HELEN LITTLE, as Special Administratrix of
the Estate of WILLA LEAKS, Deceased
SURVIVAL ACT
3M COMPANY**

**1-30.**   Plaintiff adopts and realleges Paragraphs 1 through 30 of Count CLV of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count CLII of this complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, HELEN LITTLE, as Special Administratrix of the Estate of the WILLA LEAKS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.


**COUNT CLVII--- HELEN LITTLE, as Special Administratrix of
the Estate of WILLA LEAKS, Deceased
WRONGFUL DEATH
BASF CORPORATION**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CLVIII-- HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased
### SURVIVAL ACT
### BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLIX--- HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased
### WRONGFUL DEATH
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLX -- HELEN LITTLE, as Special Administratrix of the Estate of WILLA LEAKS, Deceased
### SURVIVAL ACT
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLX1-- HELEN LITTLE, as Special Administratrix of
### the Estate of WILLA LEAKS, Deceased
### WRONGFUL DEATH
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLXII -- HELEN LITTLE, as Administratrix of
### the Estate of WILLA LEAKS, Deceased
### SURVIVAL ACT
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLXIII-- HELEN LITTLE, as Special Administratrix of
### the Estate of WILLA LEAKS, Deceased
### WRONGFUL DEATH
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLXIV--- HELEN LITTLE, as Special Administratrix of
### the Estate of WILLA LEAKS, Deceased
### SURVIVAL ACT
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLXV-- HELEN LITTLE, as Special Administratrix of
### the Estate of WILLA LEAKS, Deceased
### WRONGFUL DEATH
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CLXVI--HELEN LITTLE, as Special Administratrix of
### the Estate of WILLA LEAKS, Deceased
### SURVIVAL
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>**COUNT CLXVII--FAYE BLAKELY, as Special Administratrix of**</u>
<u>**the Estate of THOMAS BLAKELY, Deceased**</u>
<u>**WRONGFUL DEATH**</u>
<u>**ACME**[13]</u>

1.  From approximately 1980 until 1988, the Decedent, THOMAS BLAKELY, worked at the Drum Reconditioning Plant, and upon information and belief, worked unloading and cleaning drums received for cleaning and reconditioning.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

2-4.   Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**   3M incorporates its responses to the above-mentioned paragraphs.

5.  As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, THOMAS BLAKELY, was diagnosed with lung cancer, and died on July 26, 1996.

**ANSWER:**   3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.   At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

---

[13]   For all claims asserted on behalf of Thomas Blakely, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

7.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

8.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lung cancer.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

9.     At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.  To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

10.     Plaintiff, FAYE BLAKELY, is the appointed Special Administratix of the Estate of THOMAS BLAKELY, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**     3M admits than an order dated April 9, 2007 purported to appoint Plaintiff

as "special administratrix," but denies that such order was proper or had any legal effect.

11.     Plaintiff, FAYE BLAKELY, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, THOMAS BLAKELY, left surviving the Plaintiff, FAYE BLAKELY.

**ANSWER:**     3M denies that Plaintiff is legally authorized or has standing to bring this

action as the personal representative of Decedent's next of kin.   3M lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this

paragraph and on that basis denies those allegations.

12.     The Decedent, THOMAS BLAKELY, left behind Plaintiff, FAYE BLAKELY, who by reason of the death of the decedent, has been deprived of large sums of money and valuable services, for which THOMAS BLAKELY, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:**     3M denies that Decedent and Plaintiff suffered any injury caused by 3M.

3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

this paragraph and on that basis denies those allegations.

WHEREFORE, Plaintiff, FAYE BLAKELY, as Special Administratix of the Estate of THOMAS BLAKELY, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.


### COUNT CLXVIII-- FAYE BLAKELY, as Administratrix of
### the Estate of THOMAS BLAKELY, Deceased
### SURVIVAL ACT
### ACME

1-9.     Plaintiff adopts and realleges Paragraphs 1 through 9 of Count CLXVII of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

10.    Prior to his death, the Decedent, THOMAS BLAKELY, was hospitalized for a great period of time and in the process, incurred enormous physical and mental pain and suffering.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

11.    This Cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, THOMAS BLAKELY, prior to his death.

**ANSWER:**    Denied.

12.    The Plaintiff, FAYE BLAKELY, has been appointed Special Administratix of the Estates of THOMAS BLAKELY, deceased, by Order of Court.

**ANSWER:**    Denied.

WHEREFORE, the Plaintiff, FAYE BLAKELY, as Special Administratix of the Estate of the THOMAS BLAKELY, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CLXIX - FAYE BLAKELY, as Administratrix of the Estate of THOMAS BLAKELY, Deceased
## WRONGFUL DEATH
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXX-- FAYE BLAKELY, as Administratrix of
## the Estate of THOMAS BLAKELY, Deceased
## SURVIVAL
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.


## COUNT CLXXI-- FAYE BLAKELY, as Special Administratrix of
## the Estate of THOMAS BLAKELY, Deceased
## WRONGFUL DEATH
## 3M COMPANY

1. Plaintiff adopts and realleges Paragraph 1 of Count CLXVII of this Complaint as
though fully pleaded as Paragraph 1 of this Count.

**ANSWER:** 3M incorporates its response to Paragraph 1 of Count CLXVII.

**2-25.** Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this
Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous
pollutants and substances, the Decedent, THOMAS BLAKELY, was diagnosed with lung
cancer, and died on July 26, 1996.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent worked at the Drum Reconditioning
Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances
were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent worked at the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent worked at the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lung cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count CLXVII of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CLXXII-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
### SURVIVAL ACT
### 3M COMPANY

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count CLXXI of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:** 3M incorporates its responses Paragraphs 1 through 30 of Count CLXXI.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count CLXVIII this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses Paragraphs 10-12 of Count CLXVIII.

WHEREFORE, the Plaintiff, FAYE BLAKELY, as Special Administratrix of the Estate of the THOMAS BLAKELY, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CLXXIII-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
### WRONGFUL DEATH
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXIV-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## SURVIVAL ACT
## BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXV-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## WRONGFUL DEATH
## SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXVI-- - FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## SURVIVAL ACT
## SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXVII-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased

## WRONGFUL DEATH
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXVIII-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## SURVIVAL ACT
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXIX-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## WRONGFUL DEATH
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXX-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## SURVIVAL ACT
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXXI- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## WRONGFUL DEATH
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXXII-- FAYE BLAKELY, as Special Administratrix of the Estate of THOMAS BLAKELY, Deceased
## SURVIVAL
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXXIII---DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased
## WRONGFUL DEATH
## ACME

1.      From 1956 until 2003, the Decedent LOUISE COOPER, lived at various addresses near the Drum Reconditioning Plant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4. Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

5.      As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, LOUISE COOPER, was diagnosed with ovarian cancer, and died on December 29, 2003.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.  At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.      At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause ovarian cancer.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

9.   At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.   To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

10. Plaintiff, DORETHENE NEWSON is the appointed Special Administratix of the Estate of LOUISE COOPER, Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:**   3M admits than an order dated April 9, 2007 purported to appoint Plaintiff

as "special administratrix," but denies that such order was proper or had any legal effect.

11. Plaintiff, DORETHENE NEWSON, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, LOUISE COOPER, left surviving the Plaintiff, DORETHENE NEWSON.

**ANSWER:** 3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, LOUISE COOPER, left behind Plaintiff, DORETHENE NEWSON, who by reason of the death of the decedent, has been deprived of large sums of money and valuable services, for which LOUISE COOPER, decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:** 3M denies that Decedent and Plaintiff suffered any injury caused by 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

WHEREFORE, Plaintiff, DORETHENE NEWSON, as Special Administratix of the Estate of LOUISE COOPER, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CLXXXIV--- DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased
### SURVIVAL ACT
### ACME

1-9. Plaintiff adopts and realleges Paragraphs 1 through 9 of Count CLXXXIII of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

10. Prior to her death, the Decedent, LOUISE COOPER, received treatment for her condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

11. This Cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, LOUISE COOPER, prior to her death.

**ANSWER:** Denied.

12. The Plaintiff, DORETHENE NEWSON, has been appointed Special Administratix of the Estate of LOUISE COOPER, deceased, by Order of Court.

**ANSWER:** Denied.

WHEREFORE, the Plaintiff, DORETHENE NEWSON, as Special Administratix of the Estate of the LOUISE COOPER, Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.


**COUNT CLXXXV-- DOROTHENE NEWSON, as Special Administratrix of
the Estate of LOUISE COOPER, Deceased
WRONGFUL DEATH
PEARLMAN**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CLXXXVI-- DOROTHENE NEWSON, as Special Administratrix of
the Estate of LOUISE COOPER, Deceased
SURVIVAL
PEARLMAN**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CLXXXVII-- DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased
## WRONGFUL DEATH
## 3M COMPANY

1.  Plaintiff adopts and realleges Paragraph 1 of Count CLXXXIII of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**     3M incorporates its response to paragraph 1 of Count CLXXXIII.

**2-25.**  Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants-and substances, the Decedent, LOUISE COOPER, was diagnosed with ovarian cancer in September of 2003 and died on December 29, 2003.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause ovarian cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

30. At no point prior to September of 2003 did the Plaintiff or Plaintiff s decedent know or could have known that the Decedent's cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count CLXXXIII of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CLXXXVIII-- DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased
### SURVIVAL ACT
### 3M COMPANY

**1-30.**     Plaintiff adopts and realleges Paragraphs 1 through 30 of Count CLXXXVII of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count CLXXXIV of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, DOROTHENE NEWSON, as Special Administratrix of the Estate of the LOUISE COOPER, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CLXXXIX--- DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased
### WRONGFUL DEATH
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CXC--- DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased
### SURVIVAL ACT
### BASF

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXCI-- DOROTHENE NEWSON, as Special Administratrix of
### the Estate of LOUISE COOPER, Deceased
### WRONGFUL DEATH
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXCII-- DOROTHENE NEWSON, as Special Administratrix of
### the Estate of LOUISE COOPER, Deceased
### SURVIVAL ACT
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXCIII--- DOROTHENE NEWSON, as Special Administratrix of
### the Estate of LOLTISE COOPER, Deceased
### WRONGFUL DEATH
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXCIV DOROTHENE NEWSON, as Special Administratrix of
### the Estate of LOUISE COOPER, Deceased

**SURVIVAL ACT**
**SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXCV-- DOROTHENE NEWSON, as Special Administratrix of**
**the Estate of LOUISE COOPER, Deceased**
**WRONGFUL DEATH**
**EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXCVI-- DOROTHENE NEWSON, as Special Administratrix of**
**the Estate of LOUISE COOPER, Deceased**
**SURVIVAL ACT**
**EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CXCVII--- DOROTHENE NEWSON, as Special Administratrix of**
**the Estate of LOUISE COOPER, Deceased**
**WRONGFUL DEATH**
**DEWITT**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXCVIII-- DOROTHENE NEWSON, as Special Administratrix of the Estate of LOUISE COOPER, Deceased
### SURVIVAL
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CXCIX—WANDA GRAHAM, as Special Administratrix of the Estate of HORACE GRAHAM, SR., Deceased
### WRONGFUL DEATH
### ACME

1.	From 1941-1963 and 1983-2002, the Decedent, HORACE GRAHAM, SR., lived at 1714 W. 14th St., 1919 W. 13th St., and 1547 W. Washburne, Chicago, Cook County, Illinois.

**ANSWER:**	3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.	Plaintiff adopts and realleges Paragraphs 2 through 4 of Count I of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**	3M incorporates its responses to the above-mentioned paragraphs.

5.	As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants, the Decedent, HORACE GRAHAM, SR., developed thyroid, head, and neck cancer, and died on July 23, 2002.

**ANSWER:**	3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

10. Plaintiff, WANDA GRAHAM is the appointed Special Administratix of the Estate of HORACE GRAHAM, SR., Deceased, under an order entered in this cause before the filing of this Complaint pursuant to the provisions of 740 ILCS 180/2.1.

**ANSWER:** 3M admits than an order dated April 9, 2007 purported to appoint Plaintiff as "special administratrix," but denies that such order was proper or had any legal effect.

11. Plaintiff, WANDA GREEN, brings this action as personal representative pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01, et seq., on behalf of the decedent's next of kin. Decedent, HORACE GRAHAM, SR., left surviving the Plaintiff, WANDA GRAHAM, and, Horace Graham, Jr., Benita Graham-Sanders, Michael Graham, Ronald Graham, and Kevin Graham.

**ANSWER:** 3M denies that Plaintiff is legally authorized or has standing to bring this action as the personal representative of Decedent's next of kin. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies those allegations.

12. The Decedent, HORACE GRAHAM, SR., left behind Plaintiff, WANDA GRAHAM, and, Horace Graham, Jr., Benita Graham-Sanders, Michael Graham, Ronald Graham, and Kevin Graham, who by reason of the death of the decedent, have been deprived of large sums of money and valuable services, for which HORACE GRAHAM, SR., decedent, contributed to and performed, and have suffered other substantial pecuniary injuries, including, but not limited to, loss of society, counseling, love, affection, care, attention, companionship, comfort, guidance, and protection, and any and all elements of loss of society.

**ANSWER:** 3M denies that Decedent and the other persons identified in this paragraph suffered any injury caused by 3M. 3M lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in this paragraph and on that basis denies those

allegations.

WHEREFORE, Plaintiff, WANDA GRAHAM, as Special Administratix of the Estate of HORACE GRAHAM, SR., Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CC--- WANDA GRAHAM, as Special Administratrix of the Estate of HORACE GRAHAM, SR., Deceased SURVIVAL ACT ACME

1-9. Plaintiff adopts and realleges Paragraphs 1 through 9 of Count CXCIX of this Complaint as though fully pleaded as Paragraphs 1 through 9 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

10. Prior to his death, the Decedent, HORACE GRAHAM, SR., received treatment for his condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis, denies those allegations.

11. This Cause is brought pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, for the pain and suffering experienced by the Decedent, HORACE GRAHAM, SR., prior to his death.

**ANSWER:** Denied.

12. The Plaintiff, WANDA GRAHAM, has been appointed Special Administratix of the Estate of HORACE GRAHAM, SR., deceased, by Order of Court.

**ANSWER:** Denied.

WHEREFORE, the Plaintiff, WANDA GRAHAM, as Special Administratix of the Estate of the HORACE GRAHAM, SR., Deceased, prays for judgment against the Defendants, ACME, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CCI--WANDA GRAHAM, as Special Administratrix of
### the Estate of HORACE GRAHAM, SR., Deceased
### WRONGFUL DEATH
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCU-- WANDA GRAHAM, as Special Administratrix of
### the Estate of HORACE GRAHAM, SR., Deceased
### SURVIVAL COUNT
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCIII-- WANDA GRAHAM, as Special Administratrix of
### the Estate of HORACE GRAHAM, SR., Deceased
### WRONGFUL DEATH
### 3M COMPANY

1. Plaintiff adopts and realleges Paragraph 1 of Count CXCIX of this Complaint as though fully pleaded as Paragraph I of this Count.

**ANSWER:** 3M incorporates its response to Paragraph 1 of Count CXCIX.

**2-25.** Plaintiff adopts and realleges Paragraphs 2 through 25 of Count V of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, HORACE GRAHAM, SR., developed thyroid, head, and neck cancer in July of 2001 and died on July 23, 2002.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to July of 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**31-33.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count CXCIX of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, WANDA GRAHAM, as Special Administratrix of the Estate of HORACE GRAHAM, SR., Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

**COUNT CCIV--WANDA GRAHAM, as Special Administratrix of**
**the Estate of HORACE GRAHAM, SR., Deceased**
**SURVIVAL ACT**
**3M COMPANY**

**1-30.** Plaintiff adopts and realleges Paragraphs 1 through 30 of Count CCIII of this Complaint as though fully pleaded as Paragraphs 1 through 30 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**31-33.** Plaintiff adopts and realleges paragraphs 10-12 of Count CC of this Complaint as though fully pleaded as paragraphs 31-33 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, the Plaintiff, WANDA GRAHAM, as Special Administratrix of the Estate of the HORACE GRAHAM, SR., Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS 00/100 ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

**COUNT CCV-- WANDA GRAHAM, as Special Administratrix of**
**the Estate of HORACE GRAHAM, SR., Deceased**
**WRONGFUL DEATH**
**BASF CORPORATION**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCVI-- WANDA GRAHAM, as Special Administratrix of**
**the Estate of HORACE GRAHAM, SR., Deceased**
**SURVIVAL ACT**
**BASF**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCVII--WANDA GRAHAM, as Special Administratrix of
the Estate of HORACE GRAHAM, SR., Deceased
WRONGFUL DEATH
SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCVIII-- WANDA GRAHAM, as Special Administratrix of
the Estate of HORACE GRAHAM, SR., Deceased
SURVIVAL ACT
SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCIX WANDA GRAHAM, as Special Administratrix of
the Estate of HORACE GRAHAM, SR., Deceased
WRONGFUL DEATH
SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCX-- WANDA GRAHAM, as Special Administratrix of
### the Estate of HORACE GRAHAM, SR., Deceased
### SURVIVAL ACT
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXI-- WANDA GRAHAM, as Special Administratrix of
### the Estate of HORACE GRAHAM, SR., Deceased
### WRONGFUL DEATH
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXII-- WANDA GRAHAM, as Special Administratrix of
### the Estate of HORACE GRAHAM, SR., Deceased
### SURVIVAL ACT
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCXIII-- WANDA GRAHAM, as Special Administratrix of
the Estate of HORACE GRAHAM, SR., Deceased
WRONGFUL DEATH
DEWITT**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCXIV-- WANDA GRAHAM, as Special Administratrix of
the Estate of HORACE GRAHAM, SR., Deceased
SURVIVAL
DEWITT**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCXV - WILLIE MAE GAGE
NEGLIGENCE
ACME[14]**

1.      From 1967-1995, the Plaintiff, WILLIE MAE GAGE, lived at 2144 W. Washburne, Chicago, Cook County, Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2.      Defendants, ACME, owed a duty to the Plaintiff to operate its drum cleaning and reconditioning operations in a safe, responsible, and lawful manner so as to prevent the discharge of hazardous pollutants and substances from the Drum Reconditioning Plant into the neighborhood.

---

[14]   For all claims asserted by Willie Mae Gage, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp, Industrial Container Services, LLC, and Industrial Container Services-IL, LLC.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

3.    In breach of the aforementioned duty, ACME, through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.    Received, processed, stored, and/or disposed of hazardous waste in violation of 42 U.S.C. § 6901 et seq., 415 ILCS 5/20, et seq., and applicable Federal and State Code Provisions;

b.    Discharged of pollutants, hazardous substances, irritants, and contaminants from the Drum Reconditioning Plant so as to constitute a nuisance in violation of Chicago Municipal Code 7-28-080;

c.    Discharged VOM and odors into environment so as to unreasonably interfere with enjoyment of life or property in violation of 35 IL. Adm. Code 201.141;

d.    Discharged contaminants into environment so as to cause atmospheric pollution in violation of Chicago Municipal Code 11-4-630;

e.    Discharged fugitive particulate matter offsite in violation of 35 Il. Adm Code 202.301;

f.    Discharged pollutants, hazardous substances, irritants, and contaminants with an opacity greater than 30% into the environment in violation of 35 Il. Adm. Code 212.123;

g.    Discharged VOM and odors into the environment in a manner so as to unreasonably interfere with enjoyment of life and property in violation of 35 Il. Adm. Code 201.141;

h.    Failed to utilize drum incinerator stack height designed to prevent air pollution in violation of 35 Il. Adm. Code 201.151;

i.    Failed to ensure drums received were properly closed and labeled as required by applicable Department of Transportation regulations;

j.    Failed to prevent reactions that threatened human health and the environment in violation of 40 CFR 264.17;

k.    Failed to reject drums not "empty" as defined by 40 CFR 261.7;

l.    Received drums containing hazardous waste at the Drum Reconditioning Plant;

m.    Failed to properly identify and segregate drums containing hazardous waste;

n.  Failed to inspect, investigate, and determine nature, type, and characteristics of the chemical residues and hazardous wastes received at Drum Reconditioning Plant;

o.  Failed to require Material Safety Data Sheets from drum shippers to allow identification of drum contents received at Drum Reconditioning Plant;

p.  Failed to adequately label, log, and segregate heavy drums placed in Drum Rejection area;

q.  Failed to adequately notify customers who shipped drums that contained hazardous waste, as defined by 40 CFR 261.3, that said drums were shipped to the Drum Reconditioning Plant;

r.  Failed to adequately notify customers who shipped drums that contained hazardous waste as defined by 40 CFR 261.3, to retrieve said drums;

s.  Failed to adequately hire, educate, train, and monitor receiving, yard, and feeder personnel to ensure federal, state, and municipal policies were being followed;

t.  Failed to adequately hire, educate, train and monitor receiving, yard, and feed personnel to ensure Drum Acceptance Policy and other written operational policies were followed;

u.  Failed to adequately hire, educate, train employees to receive, treat, store and/or dispose of hazardous waste in violation of 40 CFR 264.16;

v.  Failed to adequately hire, educate, train and monitor drum and lid/cover feeder personnel to ensure operational policies were followed;

w.  Failed to prepare unmanifested waste reports after receipt of hazardous waste at Drum Reconditioning Plant in violation of 40 CFR 264.76;

x.  Transported and accepted hazardous waste at Drum Reconditioning Plant from offsite generators without accompanying manifests, in violation of 40 CFR 263.20;

y.  Failed to adequately monitor, record, investigate, address and/or remediate equipment failures, material spills, and miscellaneous odors at Drum Reconditioning Plant;

z.  Failed to perform stack tests on emissions produced from drum incinerator;

aa.  Failed to maintain operating records to show type, quantity, and nature of hazardous waste received and methods used to treat, store, and dispose of said waste in violation of 40 CFR 264.73;

bb.     Failed to maintain records to ensure drum furnace compliance with Subpart TT in violation of 35 Il. Adm. Code 218.991;

cc.     Failed to record and maintain continuous temperature monitoring records for drum furnace in violation of 35 Il. Adm. Code 218.105(d)(2)(A)(i);

dd.     Failed to record and maintain continuous temperature monitoring records for drum furnace afterburner in violation of 35 Il. Adm. Code 218.105(d)(2)(A)(i);

ee.     Failed to record and maintain continuous temperature monitoring records for lid/cover furnace in violation of 35 Il. Adm. Code 218.105(d)(2)(A)(i);

ff.     Failed to inspect drum incinerator, lid incinerator, spray paint booths, bake ovens, shot blast machines, tight-head flushers and other drum reconditioning equipment for malfunctions, deterioration, operator errors and discharges in violation of 40 CFR 254.15;

gg.     Failed to inspect drum and lid/cover incinerators for slag buildup;

hh.     Failed to inspect drum and lid/cover incinerator for conveyor chain and refactory cracks;

ii.     Failed to inspect and maintain spray paint booths for leaking paint and dirty and/or clogged tips and filters;

jj.     Failed to adequately manage and maintain Drum Rejection Area;

kk.     Failed to maintain Unacceptable Drum Rejection Logs;

ll.     Stored an excess number of heavy drums in Drum Rejection Area;

mm.     Failed to install secondary containment system in Drum Rejection Area;

nn.     Failed to optimize drum incinerator process flow;

oo.     Failed to adequately maintain and control drum processing feed rate for drum and lid/cover incinerators;

pp.     Failed to install a lock-out arm to regulate the oxidation of drums at the Drum Reconditioning Plant;

qq.     Treated hazardous waste by feeding heavy drums into drum incinerator;

rr.     Failed to install and maintain drum incinerator to control the discharge of pollutants, hazardous substances, irritants, and contaminants into the environment during drum processing;

ss.     Processed heavy drums into incinerator after dark so as to avoid detection by federal, state, and municipal authorities;

tt.     Collected spray paint slag buildup, yard spillage, and other spilled materials and processed said materials into Drum incinerator;

uu.     Dumped hazardous waste and drum residues into yard;

vv.     Washed, cleaned, and reconditioned totes in open yard allowing contents to flood yard and flow offsite into the public ways;

ww.     Received, cleaned, and reconditioned totes containing virgin product, chemical residues, and hazardous waste, emptied said contents into drums, and processed said drums through drum incinerator;

xx.     Spread the contents of heavy drums into numerous other drums and processed said drums through drum incinerator;

yy.     Processed overly heavy drums into drum incinerator open side up causing excessive smoking and fugitive emissions;

zz.     Failed to achieve 99.99% destruction efficiency of organic matter in drum incinerator in violation 40 CFR 264.404;

aaa.    Moved heavy drums accumulated in yard to Premier site prior to inspections by federal, state, and municipal regulatory authorities;

bbb.    Employed spotters to alert yard personnel when USEPA, ILEPA, or DOE investigators approached Drum Reconditioning Plant;

ccc.    Treated hazardous waste by adding lime to hazardous waste stored in rolloff boxes;

ddd.    Failed to maintain drum incinerator at adequate temperatures to achieve complete combustion of wastes contained in drums;

eee.    Failed to maintain drum incinerator at temperatures specified in operating permits;

fff.    Failed to maintain lid/cover incinerator at temperatures specified in operating permits;

ggg.    Failed to adequately monitor combustion temperature, waste feed rate, and combustion gas velocity of drum incinerator;

hhh.    Failed to achieve destruction and removal efficiency benchmarks in connection with operation of drum incinerator in violation of 40 CFR 264.343;

iii.    Dumped treated drum incinerator sludge and other chemical residues into public sewer adjacent to railroad tracks behind Premier warehouse;

jjj.     Improperly burnt and disposed of waste sludge in rotary kiln without proper permitting;

kkk.     Allowed drums on yard chain to be uncovered allowing noxious odors to escape into the environment;

lll.     Burnt hazardous waste and chemical residue in open containers in central yard area;

mmm.     Failed to properly manage hazardous waste contained in rusting and leaking containers in violation of 40 CFR 264.171;

nnn.     Failed to keep drums containing hazardous waste adequately closed in violation of 40 CFR 264.173;

ooo.     Failed to inspect hazardous waste container storage areas in violation of 40 CFR 264.174;

ppp.     Failed to maintain containment system in hazardous waste storage area in violation of 40 CFR 264.175;

qqq.     Failed to install an enclosure on the front end of the drum incinerator to increase emission capture and control fugitive emissions;

rrr.     Failed to operate drum incinerator so as to reduce VOC emissions in violation of 35 IL. Adm. Code 218.986;

sss.     Permitted open burning of drum residue in drums exiting drum incinerator in violation of 35 Il. Adm. Code 237.102;

ttt.     Discharged fugitive particle matter from drum incinerator in violation of 35 Il. Adm. Code 212.301;

uuu.     Operated inadequate drum and lid/cover incinerator, spray paint booths, shot blasting equipment for the activities conducted as required by Clean Air Act;

vvv.     Developed waste storage site at Premier site without a permit in violation of 35 Il. Adm. Code 807.201;

www.     Allowed hazardous waste to leech from waste water treatment facility into soils and public sewers;

xxx.     Allowed free product to leech from underground storage tanks at Drum Reconditioning Plant into soils;

yyy.     Allowed pollutants, hazardous substances, irritants, and contaminants dumped into the yard to reach soils;

zzz. Allowed drain gates in yard to be clogged and filled with debris allowing hazardous waste to enter public way and city sewers;

aaaa. Failed to maintain adequate containment measures to prevent the release of pollutants, hazardous substances, irritants, and contaminants into the soil and groundwater;

bbbb. Allowed leaks from tight-head drum washer area on northwest side of tight-head plant building to flow outside of secondary containment;

cccc. Failed to enclose spray paint booths allowing discharge of pollutants, hazardous substances, irritants, and contaminants into the surrounding environment;

dddd. Failed to install adequate equipment to control discharge of pollutants, hazardous substances, irritants and contaminants into the environment during coatings operations;

eeee. Failed to determine VOC content of coating operations used in spray paint booths and baking ovens;

ffff. Applied product coatings which exceeded VOM limits in violation of 35 Il. Adm. 218.204, Condition 7.1.3.e of Title V Permit;

gggg. Failed to determine Volatile Organic Material (VOM) content of product coatings in violation of 35 Il. Adm. Code 218.211(a); Condition 7.1.7 of Title V Permit;

hhhh. Failed to identify and maintain coating records for lid gasket glue line in violation of 35 Il. Adm. Code 218.991(b); Condition 7.2.9 of Title V Permit;

iiii. Failed to conduct VOM capture and destruction efficiency testing on drum incinerator when requested by USEPA on August 27,2001, in violation of 35 IL. Adm. Code 218.988;

jjjj. Failed to maintain monthly and aggregate annual VOM emissions from drum and lid/cover incinerator, in violation of Condition 7.3.9 of Title V Permit;\

kkkk. Circumvented 35 Il. Adm. Code 218.204 by adding Methyl Ethyl Ketone and other solvents to VOM compliant coatings.

llll. Failed to install pre-collection filters at spray paint booths;

mmmm. Failed to install pre-collection filters at curing oven operation system;

nnnn. Improperly operated spray paint booths without proper clean filters;

oooo. Improperly operated spray paint booths with worn motors and bearings;

pppp.   Improperly allowed uncontrolled open flame heating units to emit pollutants, hazardous substances, irritants, and contaminants into the surrounding environment;

qqqq.   Improperly allowed spray paint booths exhaust stacks to operate without proper rain hats and to be covered with accumulation of paint over-spray;

rrrr.   Failed to keep doors, windows, and other openings closed to reduce ambient emissions from escaping offsite;

ssss.   Allowed hydraulic oil onto the ground from tote washing areas;

tttt.   Allowed dust collector to have leaks on transition pipes, hopper, dust container, and airlock causing the discharge of pollutants, hazardous substances, irritants and contaminants into the surrounding environment;

uuuu.   Failed to adequately respond to City of Chicago's environmental and public nuisance concerns in a timely manner; and,

vvvv.   Failed to promptly and properly notify the neighborhood residents, workers, federal, state, and municipal authorities of discharges of pollutants, hazardous substances, irritants, and contaminants in a manner so as to permit them to adequately protect themselves.

**ANSWER:**   3M states that this paragraph contains no allegations relating to 3M. To the extent the allegations in this paragraph may be construed as relating to 3M, 3M denies those allegations. 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies those allegations.

4.    As a direct and proximate result of the aforementioned negligent conduct, hazardous pollutants, hazardous substances, irritants, and contaminants were discharged into the surrounding neighborhood through the air and ground, including, but not limited to, Volatile Organic Compounds (VOC's), Semi Volatile Chemicals (SVOC's), Polycyclic Aromatic Hydrocarbons(PAH's), Pesticides, Polychlorinated biphenyls(PCB's) Metals, and Dioxins and Furans. Specific chemicals include, but are not limited to, Benzene, Trichloroethene(TCE), Tetrachloroethene(PCE), Vinyl Chloride, Methyl Ethyl Ketone(MEK), Ethylbenzene, Xylene, Toluene, Aliphatic Petroleum Distillates, 1,2-dichloroethane, Acenapthalene, Acrylic Acid, Acrylonitrile, Alkyd resins, Aluminum fumes and dusts, Anthracene, Ammonia, Antimony and related compounds, Arsenic, Barium, Benzo(a) anthracene, Benzo(a) fluoranthene, benzo(a)pyrene, dibenzo(a,h) Anthracene, Benzo(b)fluoranthene, Benzo(g,h,I) Perylene, Benzo(k) Fluoranthene, Beryllium, Bis-2-Ethylhexyl Adipate, Bis-2-Ethylhexyl Phthalate, Butyl Benzyl Phthalate, Butyl Acrylate, Butyl Methacrylate-methyl Methacrylate polymers, C.I. Pigments black 2, blue 15, green 7, yellow 34, Cadmium, Carbazole, Carbon Black, Carbon Disulfide, Catechol, Propylene Glycol mono methyl ether(dipropylene glycol ethyl ether),

Chloroethane, Chloromethane, Chromium and chromium compounds, Hexavalent Chromium, Chrysene, cis-1,2-dichloroethylene, Cobalt, Copper, Cumene, Cyclohexane, Dibromofluoromethane, Methylene Chloride, Diethylene glycol monobutyl ether acetate, Diisocyanates, Di-n-butyl phthalate, Di-octyl phthalate, Ethylene glycol, Ethylmethacrylate monomers, Fluoranthene, Fluorene, Formaldehyde, Heavy Aromatic solvent naphtha, Indeno(1,2,3-cd)pyrene, Lead and lead compounds, Methyl Isobutyl Ketone, Methyl acrylate, Naphthalene, Nickel and nickel compounds, Cresols, Phenanthrene, Phenol and phenolic compounds, Selenium, Silicone and silicone polymers, Solvent naphthas, Styrene, Tetrachloroethane, Tetrachloro-metaxylene, Zinc, Vinyl Chloride-vinyl acetate monomers, Methyl Propyl Ketone, Isopropanol, Isobutyl Acetate, 1,2,4-Trimethylbenzene, Aromatic naptha, Triethyl amine, Butanol, N-hexane, Ethylene Glycol Monobutyl Ether, Methyl N-Amyl Ketone, Dimethylethanolamine, Diethylaminoethanol, Butyl Acetate, Ethyl acrylate, 2-butoxyethanol (Butyl cellosolve), Sec-butyl alcohol, Acetone, Synthetic rubber and resins, Diacetone Alcohol, 1-Butanol, Ethanol, Mercury, Strontium, Asbestos, Crystalline silica, Bisphenol A, DDE, DDT, DDD, Heptachlor, Heptane, Methanol, Tetrahydrofuran, Chlorothalonil, and Toluene Diisocyanates.

**ANSWER:** 3M denies the allegations in this paragraph to the extent they relate to 3M.

3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and on that basis denies those allegations.

5.     As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, WILLIE MAE GAGE, developed colon cancer, and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

6.     At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause colon cancer.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.     At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has any injury in any way caused by the conduct of 3M, but 3M further states that

Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, WILLIE MAE GAGE, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXVI--- WILLIE MAE GAGE
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXVII-- WILLIE MAE GAGE
## NEGLIGENCE
## 3M COMPANY

1. Plaintiff adopts and realleges Paragraph I of Count CCXXV [sic] of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:** 3M incorporates its response to Paragraph 1 of Count CCXV.

2. From the early 1970's until 2002, the Defendant, 3M COMPANY, shipped tens of thousands of drums to the Drum Reconditioning Plant for cleaning and reconditioning on a yearly basis.

**ANSWER:** 3M admits that it sold steel drums to Acme Barrel that were then transported to the Drum Reconditioning Plant for reconditioning from time to time between approximately 1972 and 1999. 3M denies the remaining allegations in this paragraph.

3.   The aforementioned drums originated from various plants, including, but not limited to, those 3M facilities in Cordova, Illinois, Cottage Grove, Minnesota, Guin, Alabama, and Knoxville, Iowa.

**ANSWER:**   3M admits that, at certain times, its plants at Cordova, Illinois, and Cottage Grove, Minnesota, it sold steel drums to Acme Barrel that were then transported to the Drum Reconditioning Plant for reconditioning.   3M denies the remaining allegations in this paragraph.

4.   During the time period described above, the custom and practice was that drums shipped by the Defendant, 3M COMPANY, were loaded onto Acme owned trailers or third party carriers by Defendant, 3M employees.

**ANSWER:**   3M admits that drums sold by 3M to Acme for reconditioning were generally though may not always have been loaded onto trailers by 3M employees. 3M admits that these trailers were not owned by 3M.   3M denies the remaining allegations in this paragraph.

5.   During the time period described above, Defendant, 3M employees visited the Drum Reconditioning Plant on numerous occasions to conduct sales visits, address quality control issues, or conduct environmental audits of the Drum Reconditioning Plant.

**ANSWER:**   3M admits that on more than one occasion 3M employees visited the Drum Reconditioning Plant, and that their purposes, depending on the visit, included evaluating the Drum Reconditioning Plant's capabilities and procedures, including environmental procedures. 3M denies the remaining allegations in this paragraph.

6.   During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that the plants, buildings, and equipment at the Drum Reconditioning Plant were dilapidated and in need of significant improvement.

**ANSWER:**   Denied.

7.   During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that the floors throughout the Drum Reconditioning Plant contained numerous cracks and unpaved areas.

**ANSWER:**   Denied.

8.   During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that waste streams at the Drum Reconditioning Plant were not adequately channeled.

**ANSWER:**     Denied.

9.   During the time period alleged, the Defendant, 3M COMPANY, knew or should have known that the Drum Reconditioning Plant had questionable practices to contain possible discharges and releases of hazardous pollutants and substances into the ground, soil, and air.

**ANSWER:**     Denied.

10. During the time period alleged, the Defendant 3M COMPANY, knew or should have known that operational practices at the Drum Reconditioning Plant could result in the release of hazardous pollutants and substances into the air, soil or groundwater.

**ANSWER:**     Denied.

11. During the period alleged above, the Defendant, 3M COMPANY, knew or should have known that the neighborhood was a densely populated residential and commercial area containing numerous homes, apartments, schools, businesses, and day care centers.

**ANSWER:**     Denied.

12. During the period alleged, the Defendant, 3M COMPANY, knew or should have known that the USEPA, ILEPA, and Chicago DOE had received hundreds Acme related complaints from neighborhood residents and workers who complained of black, bluish-gray, and white smoke from the open head drum incinerator stack, strong paint odors from the spray paint booths and baking ovens, and chemical, solvent, and noxious odors present in the neighborhood.

**ANSWER:**     Denied.

13. During the applicable time period, the Defendant, 3M COMPANY, knew or should have known that investigators from the USEPA, ILEPA, and from the Chicago DOE conducted hundreds of inspections at the Drum Reconditioning Plant and documented, at various times, chemical haze just north of the facility, black or white smoke coming from the yard and drum burner incinerator stacks, bluish-gray smoke coming from vents above the tight-head building, white smoke with bluish tints coming from the open head exhaust vents, process water from the yard flowing offsite and into public sewers, liquid waste spillage throughout the facility, adjacent properties and public ways, strong chemical smells throughout the plant, uncovered drums scattered throughout the plant, unmarked drums, and evidence of long-term storage of unacceptable/heavy drums.

**ANSWER:**     Denied.

14. During the applicable time period, the Drum Reconditioning Plant received thousands of chemical residue containing "dirty drums" from the Defendant, 3M COMPANY, that contained up to one inch of chemical residue of a hazardous, toxic, corrosive, and/or flammable

nature, including, but not limited to, Inorganic Pigments, Plastics Materials, Synthetic Resins, Non-Vulcanizable Elastomers, Coated and Laminated Paper, Surface Active Agents, Finishing Agents, Sulfonated Oils and Assistants, Unsupported Plastics Film and Sheets, Abrasive Products, Fabricated Rubber Products, Adhesives and adhesive based products and the raw materials used to produce said products. Specific chemicals include, but are not limited to, Formaldehyde, Ethyl Acetate, Acrylate polymers, Ileptane, Cyclohexane, Toluene, Isopropanol, Xylene, Polyethylmethacrylate, Methyl Alcohol, Isopropol Alcohol, Methyl Ethyl Ketone, Silicone Polymers, Tetrahydrofuran, Benzene, Methyl Iso-Butyl Ketone, Styrene/Butadine elastomer, Poly(dimethylsiloxane), Ethyl Acrylate, Triethyl amine, Methyl methacrylate, Methyl acrylate, solvents, and numerous Trade-secreted monomers, resins, and compounds.

**ANSWER:** 3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph.

15. During the applicable time period, the Drum Reconditioning Plant was not licensed to accept, clean or recondition drums which contained more than one inch of residue, in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

**ANSWER:** The allegations in this paragraph are vague, ambiguous, and misrepresent applicable law. Denied.

16. During the applicable time period, the Defendant, 3M, knew or should have known that the Drum Reconditioning Plant was not licensed to accept, clean, recondition, or dispose of

drums that contained more than one inch of chemical residue in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

     **ANSWER:**    The allegations in this paragraph are vague, ambiguous, and misrepresent

applicable law. Denied.

    17. During the applicable time period, the Defendant, 3M COMPANY, knew or should have known that the Drum Reconditioning Plant was not licensed to treat, store, or dispose of hazardous waste.

     **ANSWER:**    The allegations in this paragraph are vague, ambiguous, and misrepresent

applicable law. Denied.

    18. During the applicable time period, the Defendant, 3M COMPANY, represented to regulatory agencies and public at large that it only shipped drums to the Drum Reconditioning Plant that contained no more than one inch of chemical residue, in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2.

     **ANSWER:**    3M admits that it sent drums to Acme Barrel that complied with applicable

laws and regulations. 3M denies that it made any representation to any regulatory agency or the

"public at large" about the drums it sold to Acme Barrel and denies the remaining allegations in

this paragraph.

    19. During the applicable time period, the Defendant, 3M COMPANY, shipped thousands of "heavy drums" to the Drum Reconditioning Plant which contained various quantities of hazardous, toxic, corrosive, and/or flammable materials, including, but not limited to, Inorganic Pigments, Plastics Materials, Synthetic Resins, NonVulcanizable Elastomers, Coated and Laminated Paper, Surface Active Agents, Finishing Agents, Sulfonated Oils and Assistants, Unsupported Plastics Film and Sheets, Abrasive Products, Fabricated Rubber Products, Adhesives and adhesive based products and the raw materials used to produce said products. Specific chemicals include, but are not limited to, Formaldehyde, Ethyl Acetate, Acrylate Polymers, Heptane, Cyclohexane, Toluene, Isopropanol, Xylene, Polyethylmethacrylate, Methyl Alcohol, Isopropol Alcohol, Methyl Ethyl Ketone, Silicone Polymers, Tetrahydrofuran, Benzene, Methyl Iso-Butyl Ketone, Styrene/Butadine elastomer, Poly(dimethylsiloxane), Ethyl Acrylate, Triethyl Amine, Methyl methacrylate, Methyl Acrylate, and numerous Trade-secreted monomers, resins, and compounds.

     **ANSWER:**    3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to

steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned

any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M

and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph.

20. During the applicable time period, the heavy drums Defendant, 3M COMPANY, shipped to the Drum Reconditioning Plant contained hazardous waste, as defined by 40 CFR 261.3.

**ANSWER:**     3M denies Plaintiffs' misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies the allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a

drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph.

21. During the applicable time period, Defendant, 3M COMPANY, knew or should have known that the Drum Reconditioning Plant was operating as an unlicensed hazardous waste disposal facility, in violation of 42 USC § 6901, et seq, 415 ILCS 5/20, et seq., and applicable Federal and State Code Provisions.

**ANSWER:**  3M admits that it knew from on or about 1972 onward that the Drum Reconditioning Plant was not licensed as a "hazardous waste disposal facility."  3M denies that it knew or should have known that the Drum Reconditioning Plant was "operating" as an unlicensed hazardous waste disposal facility in violation of federal and state law, and denies the remaining allegations in this paragraph.

22. During the applicable time period, the shipment of chemical residue containing "empty drums" and hazardous waste containing "heavy drums" from the Defendant, 3M COMPANY, contributed to the discharge of hazardous pollutants and substances from the Drum Reconditioning Plant into the neighborhood.

**ANSWER:**   Denied.

23. The Defendant, 3M COMPANY, owed a duty to the Plaintiff to properly dispose of its chemical residues and hazardous wastes in accordance in a safe, lawful, and responsible manner so as to prevent the discharge of hazardous pollutants and substances of said barrels into the neighborhood.

**ANSWER:**   Denied.

24. In breach of the aforementioned duty, the Defendant, 3M COMPANY, through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.      Shipped hazardous waste to an unlicensed hazardous waste disposal facility, in violation of 42 U.S.C. § 6901, et seq, 415 ILCS 5/20, et seq., and applicable Federal and State Code Provisions;

b.      Failed to ensure drums shipped to Drum Reconditioning Plant were "empty", per 40 CFR 261.7;

c.      Failed to ensure drums shipped to Drum Reconditioning Plant complied with 49 CFR 173.29;

d.     Failed to properly determine whether contents of drums shipped to Drum Reconditioning Plant contained hazardous wastes, in violation of 40 CFR 262.11;

e.     Failed to sign "Empty Drum Certification" required with each shipment of drums to Drum Reconditioning Plant;

f.     Failed to properly identify and segregate drums containing hazardous waste;

g.     Failed to properly remove hazardous waste from drums prior to shipment to Drum Reconditioning Plant;

h.     Failed to properly package drums shipped to Drum Reconditioning Plant in violation of applicable Department of Transportation Regulations, including, but not limited to, parts 173 and 178;

i.     Failed to complete waste manifests for shipments of hazardous waste sent to Drum Reconditioning Plant for treatment, storage, and/or disposal, in violation of 40 CFR 262.20(a)1;

j.     Failed to provide Drum Reconditioning Plant with completed waste manifests in violation of 40 CFR 262.22;

k.     Failed to retain copies of completed waste manifests for shipments of hazardous waste sent to Drum Reconditioning Plant for treatment, storage, and/or disposal, in violation of 40 CFR § 262.23;

1.     Failed to properly package hazardous waste shipped to Drum Reconditioning Plant in violation of 40 CFR 262.30;

m.     Failed to properly label hazardous waste shipments for offsite transport, in violation of 40 CFR 262.31;

n.     Failed to mark hazardous waste containers in violation of 40 CFR 262.32;

o.     Failed to properly placard hazardous waste shipments in violation of 40 CFR 262.33;

p.     Failed to maintain hazardous waste manifests for proscribed period, in violation of 40 CFR 262.40(a);

q.     Failed to accurately complete biennial report, in violation of 40 CFR 262.41;

r.     Failed to ensure Drum Reconditioning Plant drum incinerator operated in compliance with federal, state, and municipal laws;

s.     Failed to retrieve hazardous waste containing heavy drums sent to Drum Reconditioning Plant after being notified said barrels were shipped;

185

t.     Shipped heavy drums to Drum Reconditioning Plant after said drums had previously been rejected at Drum Reconditioning Plant;

u.     Failed to properly educate, train, and monitor shipping personnel to ensure drums sent to Drum Reconditioning Plant were "empty" as defined by 40 CFR 261.7;

v.     Failed to properly educate, train, and monitor shipping personnel to segregate and dispose of hazardous waste containing heavy drums;

w.     Failed to report nature and quantity of material shipped to Drum Reconditioning Plant in violation of Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11023; 40 CFR § 372, et seq;

x.     Transported drums containing chemical residues and hazardous wastes to Drum Reconditioning Plant when knew or should have known the cleaning and reconditioning of said drums was performed in a way so as to cause the discharge of hazardous pollutants and substances into the neighborhood;

y.     Sent drums containing chemical residues and hazardous wastes to Drum Reconditioning Plant without regard to the consequences of a potential leak, spill, and/or release of hazardous pollutants and substances;

z.     Failed to properly inspect drum incinerator stack height;

aa.     Failed to adequately investigate, inspect, and/or audit Drum Reconditioning Plant to ensure applicable federal, state, and municipal laws were being followed during cleaning and reconditioning of chemical residue and hazardous waste containing drums;

bb.     Failed to investigate, inspect, and/or audit Drum Reconditioning Plant to ensure cleaning and reconditioning of chemical residue and hazardous waste containing drums did not cause discharges of hazardous pollutants and substances offsite and into the neighborhood;

cc.     Failed to ensure drum incinerator capable of achieving complete combustion of 3M chemical residues and hazardous wastes sent to Drum Reconditioning Plant; and,

dd.     Failed to ensure Drum Reconditioning Plant did not discharge hazardous pollutants and substances into the neighborhood as a result of its operations.

**ANSWER:**    Denied.

25. As a direct and proximate result of the aforementioned negligent conduct, Plaintiff was exposed to the chemical residues and hazardous wastes sent by the Defendant, 3M COMPANY, and processed at the Drum Reconditioning Plant. The processing of said chemical residues and hazardous wastes contributed to the discharge of hazardous pollutants and substances from the Drum Reconditioning Plant into the environment, and include Volatile

Organic Compounds (VOC's), Semi Volatile Chemicals (SVOC' s), Polycyclic Aromatic Hydrocarbons (PAH' s), Pesticides, Polychlorinated biphenyls (PCB's) Metals, and Dioxins and Furans. Specific chemicals include, but are not limited to, Benzene, Trichloroethene (TCE), Tetrachloroethene (PCE), Vinyl Chloride, Methyl Ethyl Ketone (WEEK), Ethylbenzene, Xylene, Toluene, Aliphatic Petroleum Distillates, 1,2-dichloroethane, Acenapthalene, Acrylic Acid, Acrylonitrile, Alkyd resins, Aluminum fumes and dusts, Anthracene, Ammonia, Antimony and related compounds, Arsenic, Barium, Benzo(a) anthracene, Benzo(a) fluoranthene, benzo(a)pyrene, dibenzo(a,h) Anthracene, Benzo(b)fluoranthene, Benzo(g,h,I) Perylene, Benzo(k) Fluoranthene, Beryllium, Bis-2-Ethylhexyl Adipate, Bis-2-Ethylhexyl Phthalate, Butyl Benzyl Phthalate, Butyl Acrylate, Butyl Methacrylatemethyl Methacrylate polymers, C.I. Pigments black 2, blue 15, green 7, yellow 34, Cadmium, Carbazole, Carbon Black, Carbon Disulfide, Catechol, Propylene Glycol mono methyl ether(dipropylene glycol ethyl ether), Chloroethane, Chloromethane, Chromium and chromium compounds, Hexavalent Chromium, Chrysene, cis-1,2- dichloroethylene, Cobalt, Copper, Cumene, Cyclohexane, Dibromofluoromethane, Methylene Chloride, Diethylene glycol monobutyl ether acetate, Diisocyanates, Di-nbutyl phthalate, Di-octyl phthalate, Ethylene glycol, Ethylmethacrylate monomers, Fluoranthene, Fluorene, Formaldehyde, Heavy Aromatic solvent naphtha, Indeno(1,2,3- cd)pyrene, Lead and lead compounds, Methyl Isobutyl Ketone, Methyl acrylate, Naphthalene, Nickel and nickel compounds, Cresols, Phenanthrene, Phenol and phenolic compounds, Selenium, Silicone and silicone polymers, Solvent naphthas, Styrene, Tetrachloroethane, Tetrachloro-metaxylene, Zinc, Vinyl Chloride-vinyl acetate monomers, Methyl Propyl Ketone, Isopropanol, Isobutyl Acetate, 1,2,4- Trimethylbenzene, Aromatic naptha, Triethyl amine, Butanol, N-hexane, Ethylene Glycol Monobutyl Ether, Methyl N-Amyl Ketone, Dimethylethanolamine, Diethylaminoethanol, Butyl Acetate, Ethyl acrylate, 2-butoxyethanol (Butyl cellosolve), Sec-butyl alcohol, Acetone, Synthetic rubber and resins, Diacetone Alcohol, 1-Butanol, Ethanol, Mercury, Strontium, Asbestos, Crystalline silica, Bisphenol A, DDE, DDT, DDD, Heptachlor, Heptane, Methanol, Tetrahydrofuran, Chlorothalonil, and, Toluene Diisocyanates.

**ANSWER:** Denied.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Plaintiff, WILLIE MAE GAGE, developed colon cancer in August of 2005, and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for her condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause the colon cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to August of 2005 did the Plaintiff know or could have known that her cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, WILLIE MAE GAGE, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXVIII-- WILLIE MAE GAGE
## NEGLIGENCE
## BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXIX --WILLIE MAE GAGE
## NEGLIGENCE
## SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXX - WILLIE MAE GAGE
## NEGLIGENCE
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXI-- WILLIE MAE GAGE
## NEGLIGENCE
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXII-- WILLIE MAE GAGE
## NEGLIGENCE
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXIII-- LAZE THOMAS
## NEGLIGENCE
## ACME

1.      From 1957-2005, the Plaintiff, LAZE THOMAS, lived at 1311 S. Claremont, Chicago, Cook County, Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.     Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

5.     As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, LAZE THOMAS, developed renal cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**     3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.     At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.      At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause renal cancer.

**ANSWER:**      3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.      At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**      3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, LAZE THOMAS, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**      3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXXIV-- LAZE THOMAS
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXV-- LAZE THOMAS
### NEGLIGENCE
### 3M COMPANY

1.  Plaintiff adopts and realleges Paragraph 1 of Count CCXXIII of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**    3M incorporates its response to Paragraph 1 of Count CCXXIII.

**2-25.**   Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**    3M incorporates its response to Paragraphs 2-25 of Count CCXVII.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Plaintiff, LAZE THOMAS, developed renal cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**    3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 24 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause the renal cancer.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the negligent acts identified in paragraph 23 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.   To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, LAZE THOMAS, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CCX.XVI-- LAZE THOMAS
### NEGLIGENCE
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXXVII-- LAZE THOMAS
### NEGLIGENCE
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXXVIII-- LAZE THOMAS
### NEGLIGENCE
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXXIX-- LAZE THOMAS
### NEGLIGENCE
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXX-- LAZE THOMAS
## NEGLIGENCE
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXXI-- DARRYL THOMAS
## NEGLIGENCE
## ACME

1.      From 1975-2005, the Plaintiff, DARRYL THOMAS, lived at 1311 S. Claremont, Chicago, Cook County, Illinois.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.    Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**   3M incorporates its responses to the above-mentioned paragraphs.

5.      As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, DARRYL THOMAS, developed testicular cancer and has received treatment for his condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:**   3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause testicular cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, DARRYL THOMAS, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXXXII-- DARRYL THOMAS
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXXIII-- DARRYL THOMAS
## NEGLIGENCE
## 3M COMPANY

1.  Plaintiff adopts and realleges Paragraph 1 of Count CCXXXI of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**    3M incorporates its response to Paragraph 1 of Count CCXXXI.

**2-25.** Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances the Plaintiff, DARRYL THOMAS, developed testicular cancer and has received treatment for his condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause testicular cancer.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff know or could have known that his cancer was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, DARRYL THOMAS, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXXXIV - DARRYL THOMAS
## NEGLIGENCE
## BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXXV - DARRYL THOMAS
## NEGLIGENCE
## SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXXVI - DARRYL THOMAS
## NEGLIGENCE
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXXXVH - DARRYL THOMAS
## NEGLIGENCE
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCVOCVIII - DARRYL THOMAS
## NEGLIGENCE
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CCXXXIX - ARELYS GUZMAN
### NEGLIGENCE
### ACME

1. From 1995 until the present, the Plaintiff, ARELYS GUZMAN, spent considerable time at her brother's house at 1319 S. Claremont, Chicago, Cook County, Illinois, which is less than one block south of the Drum Reconditioning Plant.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the

truth or the allegations in this paragraph and on that basis, denies those allegations

2-4. Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

5. As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, ARELYS GUZMAN, was diagnosed in September of 2001 with Hodgkin's lymphoma and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for her condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.     At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lymphoma.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.     At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ARELYS GUZMAN, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXL - ARELYS GUZMAN
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXLI - ARELYS GUZMAN
## NEGLIGENCE
## 3M COMPANY

1.  Plaintiff adopts and realleges Paragraph 1 of Count CCXXXIX of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**    3M incorporates its response to Paragraph 1 of Count CCXXXIX.

**2-25.**   Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Plaintiff, ARELYS GUZMAN, was diagnosed in September of 2001 with Hodgkin's lymphoma when she was twelve years old and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for her condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:**    3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 24 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lymphoma.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to September of 2001 did the Plaintiff know or could have known that her cancer was wrongfully caused by any of the negligent acts identified in paragraph 23 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.  To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any

way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information

to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ARELYS GUZMAN, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CCXLII - ARELYS GUZMAN
### NEGLIGENCE
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CCXLIII - ARELYS GUZMAN
### NEGLIGENCE
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CCXLIV - ARELYS GUZMAN
### NEGLIGENCE
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXLV - ARELYS GUZMAN
### NEGLIGENCE
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXLVI - ARELYS GUZMAN
### NEGLIGENCE
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXLVII - RICHARD SMITH
### NEGLIGENCE
### ACME[15]

1.      From the early 1960's until 1984, the Plaintiff, RICHARD SMITH, lived at 1328 S. Oakley, Chicago, Cook County, Illinois, just blocks from the Drum Reconditioning Plant.

---

[15] For all claims asserted by Richard Smith, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp, Industrial Container Services, LLC, and Industrial Container Services-IL, LLC.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4. Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

5. As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, RICHARD SMITH, developed squamous cell carcinoma of the mouth and neck in December 2002 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

8. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause carcinoma.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

9. At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any

way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information

to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, RICHARD SMITH, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXLVIII- RICHARD SMITH
### NEGLIGENCE
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCXLIX- RICHARD SMITH
### NEGLIGENCE
### 3M COMPANY

**1.**     Plaintiff adopts and realleges Paragraph 1 of Count CCXLVII of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**     3M incorporates its response to Paragraph 1 of Count CCXLVII.

**2-25.**   Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Plaintiff, RICHARD SMITH, was diagnosed with squamous cell carcinoma of the mouth and neck in December of 2002 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**     3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause carcinoma.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to December of 2002 did the Plaintiff know or could have known that his carcinoma was wrongfully caused by the any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, RICHARD SMITH, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CCL - RICHARD SMITH
### NEGLIGENCE
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCLI - RICHARD SMITH
### NEGLIGENCE
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCLII - RICHARD SMITH
### NEGLIGENCE
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCLIII - RICHARD SMITH
### NEGLIGENCE
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLIV - RICHARD SMITH
### NEGLIGENCE
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLV - ELIJAH MCGEHEE
### NEGLIGENCE
### ACME[16]

1.      From April 2, 1982 until 1997, the Plaintiff, ELIJAH MCGHEE, lived at 2133 W. Washburne, Chicago, Cook County, Illinois, which is approximately one block from the Drum Reconditioning Plant.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.    Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

5.      As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, ELIJAH MCGEHEE, was diagnosed with Hodgkin's lymphoma in October of 2002, and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

---

[16]   For all claims asserted by Elijah McGehee, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., ESP Realty Corp, and IFCO Systems North America, Inc.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

9.      At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.  To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any

way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information

to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ELIJAH MCGEHEE, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCLVI - ELIJAH MCGEHEE
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

## COUNT CCLVII - ELIJAH MCGEHEE
## NEGLIGENCE
## 3M COMPANY

**1.**      Plaintiff adopts and realleges Paragraph I of Count CCLV of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**    3M incorporates its response to paragraph 1 of Count CCLV.

**2-25.** Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances the Plaintiff, ELIJAH MCGEHEE, was diagnosed with Hodgkin's lymphoma in October of 2002, and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**     3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous

pollutants and substances identified in paragraph 24 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause the cancer.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to October of 2002 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ELIJAH MCGEHEE, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCLVIII - ELIJAH MCGEHEE
## NEGLIGENCE
## BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCLIX - ELIJAH MCGEHEE**
**NEGLIGENCE**
**SHERWIN WILLIAMS**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCLX - ELIJAH MCGEHEE**
**NEGLIGENCE**
**SUN CHEMICAL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCLXI - ELIJAH MCGEHEE**
**NEGLIGENCE**
**EXXON-MOBIL**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCLXII - ELIJAH MCGEHEE**
**NEGLIGENCE**
**DEWITT**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

## COUNT CCLXIII - ELLA SMITH-THOMAS
## NEGLIGENCE
## ACME[17]

1.  From 1955-1989, the Plaintiff, ELLA SMITH-THOMAS, lived at 1310 S. Heath, Chicago, Cook County, Illinois.

**ANSWER:**  3M lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.  Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**  3M incorporates its responses to the above-mentioned paragraphs.

5.  As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, ELLA SMITH-THOMAS, developed ovarian cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for her condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:**  3M denies that Plaintiff's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

6.  At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**  3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M,

---

[17]  For all claims asserted by Ella Smith Thomas, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

7.     At no point during the time that the Decedent lived near the Drum Reconditioning
Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and
substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

8.     At no point during the time that the Decedent lived near the Drum Reconditioning
Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to
any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were
discharged from the Drum Reconditioning Plant could cause or contribute to cause ovarian
cancer.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

9.     At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know
or could have known that the Decedent's cancer was wrongfully caused by the any of the
negligent acts identified in paragraph 3 of this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any

way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ELLA SMITH-THOMAS, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.


## COUNT CCLXIV - ELLA SMITH-THOMAS
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


## COUNT CCLXV - ELLA SMITH-THOMAS
## NEGLIGENCE
## 3M COMPANY

**1.**     Plaintiff adopts and realleges Paragraph 1 of Count CCLXIII of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraph.

**2-25.**   Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances the Plaintiff, ELLA SMITH-THOMAS, developed ovarian cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for her condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:**     3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 24 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause ovarian cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff know or could have known that her cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ELLA SMITH-THOMAS, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.


## COUNT CCLXVI - ELLA SMITH-THOMAS
## NEGLIGENCE
## BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


## COUNT CCLXVII - ELLA SMITH-THOMAS
## NEGLIGENCE
## SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXVIII - ELLA SMITH-THOMAS
## NEGLIGENCE
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXIX - ELLA SMITH-THOMAS
## NEGLIGENCE
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXX - ELLA SMITH-THOMAS
## NEGLIGENCE
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXI - ALBERT DAVIS
## NEGLIGENCE
## ACME[18]

1.      From 1955-1992, the Plaintiff, ALBERT DAVIS, lived at 2148 W. Washburne, Chicago, Cook County, Illinois.

---

[18]   For all claims asserted by Albert Davis, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

**ANSWER:** 3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4. Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

5. As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, ALBERT DAVIS, developed prostate cancer and has had suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.      At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause prostate cancer.

**ANSWER:**      3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.      At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**      3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ALBERT DAVIS, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**      3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCLXXII- ALBERT DAVIS
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

## COUNT CCLXXIII- ALBERT DAVIS
## NEGLIGENCE
## 3M COMPANY

**1.**     Plaintiff adopts and realleges Paragraph 1 of Count CCLXXI of this Complaint as
though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**     3M incorporates its response to paragraph 1 of Count CCLXXI.

**2-25.**   Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this
Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous
pollutants and substances, the Plaintiff, ALBERT DAVIS, developed prostate cancer in February
of 2004 and has suffered from serious pain, suffering and damages, including and not limited to
those related to the expression of and care of treatment for his condition, fear, mental anguish,
and emotional stress, and failure to attend to his usual and customary affairs, duties, and
occupation.

**ANSWER:**     3M denies that Plaintiff's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning
Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from
the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 25 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause cancer.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to February of 2004 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.   To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ALBERT DAVIS, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CCLXXIV - ALBERT DAVIS
### NEGLIGENCE
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCLXXV - ALBERT DAVIS
### NEGLIGENCE
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCLXXVI - ALBERT DAVIS
### NEGLIGENCE
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCLXXVII - ALBERT DAVIS
### NEGLIGENCE
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXVIII- ALBERT DAVIS
### NEGLIGENCE
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXIX - ALBERTA CRASE
### NEGLIGENCE
### ACME[19]

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXX - ALBERTA CRASE
### NEGLIGENCE
### PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

---

[19] For all claims asserted by Alberta Crase, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

### COUNT CCLXXXI - IRA DANTZLER
### NEGLIGENCE
### ACME[20]

1.      From 1955-1992, the Plaintiff, IRA DANTZLER, lived at 2213 W. 13th St., Chicago, Cook County, Illinois.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.    Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

5.      As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, IRA DANTZLER, developed prostate cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**    3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.   At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

---

[20]   For all claims asserted by Ira Dantzler, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

7.  At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.  At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause prostate cancer.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.  At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, IRA DANTZLER, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCLXXXII - IRA DANTZLER
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXXIII- IRA DANTZLER
## NEGLIGENCE
## 3M COMPANY

1. Plaintiff adopts and realleges Paragraph I of Count CCLXXXI of this Complaint as though fully pleaded as Paragraph I of this Count.

**ANSWER:** 3M incorporates its response to paragraph 1 of Count CCLXXXI.

2-25. Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances the Plaintiff, IRA DANTZLER, developed prostate cancer in April of 2003 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 24 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause prostate cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to April of 2003 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, IRA DANTZLER, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.


## COUNT CCLXXXIV - IRA DANTZLER
## NEGLIGENCE
## BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


## COUNT CCLXXXV - IRA DANTZLER
## NEGLIGENCE
## SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLVONI - IRA DANTZLER
## NEGLIGENCE
## SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXXVII - IRA DANTZLER
## NEGLIGENCE
## EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXXVIII- IRA DANTZLER
## NEGLIGENCE
## DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCLXXXIX - JIMMIE CANNADY
## NEGLIGENCE
## ACME[21]

1.      From 1952-1985, the Plaintiff, JIMMIE CANNADY, lived at 1831 W. 13th St. and 1759 W. 14th St., Chicago, Cook County, Illinois.

---

[21]   For all claims asserted by Jimmie Cannady, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

**ANSWER:**    3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis, denies those allegations.

2-4.    Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

5.    As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, JIMMIE CANNADY, developed prostate cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**    3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.  At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.    At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause prostate cancer.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.   At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.   To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, JIMMIE CANNADY, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**   3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXC - JIMMIE CANNADY
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXCI- JIMMIE CANNADY
## NEGLIGENCE
## 3M COMPANY

**1.** Plaintiff adopts and realleges Paragraph 1 of Count CCLXXXIX of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:** 3M incorporates its response to Paragraph 1 of Count CCLXXXIX.

**2-25.** Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances the Plaintiff, JIMMIE CANNADY, developed prostate cancer in December of 2000 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 24 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause prostate cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 23, 2001 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, JIMMIE CANNADY, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested relief.


### COUNT CCXCII - JIMMIE CANNADY
### NEGLIGENCE
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CCXCIII - JIMMIE CANNADY
### NEGLIGENCE
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CCXCIV - JIMMIE CANNADY
### NEGLIGENCE
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CCXCV - JIMMIE CANNADY
### NEGLIGENCE
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXCVI - JIMMIE CANNADY
### NEGLIGENCE
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXCVII - KEVIN GRAHAM
### NEGLIGENCE
### ACME[22]

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCXCVIII - ROBERT BACKIS
### NEGLIGENCE
### ACME

1.     From 1995 until the present, the Plaintiff, ROBERT BACKIS, has worked at the Cook County Juvenile Court Building, 2245 W. Ogden Ave., Chicago, Cook County, Illinois, directly across the street from the Drum Reconditioning Plant.

**ANSWER:**     3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis denies those allegations.

---

[22]   For all claims asserted by Kevin Graham, the definition of "Acme" shall only include Defendants Chicago Drum, Inc., IFCO Systems Illinois Inc., and ESP Realty Corp.

2-4.     Plaintiff adopts and re-alleges Paragraphs 2 through 4 of Count CCXV of this Complaint as though fully pleaded as Paragraphs 2 through 4 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

5.     As a direct and proximate result of being exposed to the aforementioned pollutants, hazardous substances, irritants, and contaminants and chemicals, the Plaintiff, ROBERT BACKIS, was diagnosed with Acute Myeloid Leukemia on May 2, 2006, and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**     3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

6.   At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

7.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

8.   At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 4 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause AML.

**ANSWER:**   3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

9.   At no point prior to May 23, 2001 did the Plaintiff, or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 3 of this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ROBERT BACKIS, prays for judgment against the Defendants, Acme, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**   3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCXCIX - ROBERT BACKIS
## NEGLIGENCE
## PEARLMAN

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCC - ROBERT BACKIS
### NEGLIGENCE
### 3M COMPANY

1.       Plaintiff adopts and realleges Paragraph 1 of Count CCXCVIII of this Complaint as though fully pleaded as Paragraph 1 of this Count.

**ANSWER:**     3M incorporates its response to paragraph 1 of Count CCXCVIII.

2-25.   Plaintiff adopts and realleges Paragraphs 2 through 25 of Count CCXVII of this Complaint as though fully pleaded as Paragraphs 2 through 25 of this Count.

**ANSWER:**     3M incorporates its response to paragraphs 2-25 of Count CCXVII.

26. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances the Plaintiff, ROBERT BACKIS, was diagnosed with Acute Myeloid Leukemia on May 2, 2006, and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**     3M denies that Plaintiff's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time period the Plaintiff worked near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point during the time that the Plaintiff worked near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

29. At no point during the time that the Plaintiff worked near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in paragraph 24 of this Count that were discharged from the Drum Reconditioning Plant could cause or contribute to cause AML.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Plaintiff's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

30. At no point prior to May 2, 2006 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the negligent acts identified in paragraph 24 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ROBERT BACKIS, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

### COUNT CCCI - ROBERT BACKIS
### NEGLIGENCE
### BASF CORPORATION

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCII - ROBERT BACKIS
### NEGLIGENCE
### SHERWIN WILLIAMS

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCIII - ROBERT BACKIS
### NEGLIGENCE
### SUN CHEMICAL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCIV - ROBERT BACKIS
### NEGLIGENCE
### EXXON-MOBIL

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCV - ROBERT BACKIS
### NEGLIGENCE
### DEWITT

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCVI
### RONALD JONES as Special Administrator
### For the Estate of KEJUAN DICKENS, Deceased
### CIVIL CONSPIRACY
### (ACME and 3M Company)

1. Plaintiff adopts and re-alleges paragraph 1 of Count I of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its response to paragraph 1 of Count I.

2. From the early 1970's until 2002, the Defendant, 3M COMPANY, shipped tens of thousands of drums to the Drum Reconditioning Plant for cleaning and reconditioning on a yearly basis.

**ANSWER:** 3M admits that it sold steel drums to Acme Barrel that were then transported to the Drum Reconditioning Plant for reconditioning during certain periods of time between approximately 1972 and 1999. 3M denies the remaining allegations in this paragraph.

3. The aforementioned drums originated from various plants, including, but not limited to, those 3M COMPANY facilities in Cordova, Illinois, Cottage Grove, Minnesota, Guin, Alabama, and Knoxville, Iowa.

**ANSWER:** 3M admits that, at certain times, its plants at Cordova, Illinois, and Cottage Grove, Minnesota, it sold steel drums to Acme Barrel that were then transported to the

Drum Reconditioning Plant for reconditioning. 3M denies the remaining allegations in this paragraph.

4. The custom and practice was that drums shipped by the Defendant, 3M COMPANY were loaded onto ACME owned trailers or third party carriers by 3M COMPANY employees.

**ANSWER:** 3M admits that drums sold by 3M to Acme for reconditioning were generally though may not always have been loaded onto trailers by 3M employees. 3M admits that these trailers were not owned by 3M. 3M denies the remaining allegations in this paragraph.

5. The Defendant 3M COMPANY knew or should have known the type, quantity, and former contents of drums shipped to the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sold barrels, drums, containers, or other receptacles containing hazardous and toxic substances to Acme Barrel or that such barrels, drums, containers or other receptacles were transported to Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies any allegations in this paragraph relating to specific residues. 3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph.

6. The Defendant, ACME, employees unloaded drums on the aforementioned trailers that were shipped to the Drum Reconditioning Plant from the Defendant, 3M COMPANY.

**ANSWER:** To the extent the allegations in this paragraph may be construed as relating to 3M, 3M denies those allegations. 3M lacks knowledge of information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, denies those allegations.

7. The Defendant, ACME, counted and graded drums in order to determine how much to compensate the Defendant, 3M COMPANY for receipt of the aforementioned drums.

**ANSWER:** To the extent the allegations in this paragraph may be construed as relating to 3M, 3M denies those allegations. 3M lacks knowledge of information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, denies those allegations.

8. The Defendant, 3M COMPANY shipped thousands of heavy drums to the Drum Reconditioning Plant that contained various quantities of hazardous, toxic, corrosive, and/or flammable chemicals identified in Count V, paragraph 20.

**ANSWER:** 3M denies Plaintiff's misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility. 3M denies that it sold barrels, drums, containers, or other receptacles containing hazardous and toxic substances to Acme Barrel or that such barrels, drums, containers or other receptacles were transported to Drum Reconditioning Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies any allegations in this paragraph relating to specific residues. 3M admits that on a

small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues.  3M denies the remaining allegations in this paragraph.

9.  The heavy drums Defendant, 3M COMPANY shipped to the Drum Reconditioning Plant contained hazardous waste, as defined by 40 CFR 261.3, 35 111. Adm. Code 721.103.

**ANSWER:**    3M denies Plaintiff's misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility.  3M denies that it sold barrels, drums, containers, or other receptacles containing hazardous and toxic substances to Acme Barrel or that such barrels, drums, containers or other receptacles were transported to Drum Reconditioning Facility.    3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that some number of those drums may have contained up to one inch of substances (excluding cancer hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as expressly permitted by 40 C.F.R., Pt. 261.  3M lacks knowledge sufficient to identify the specific substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that basis denies any allegations in this paragraph relating to specific residues.  3M admits that on a small number of occasions, Acme returned a drum to 3M on the purported basis that it contained more than one inch of regulated residues.  3M denies the remaining allegations in this paragraph.

10. The Defendant, ACME, recorded that heavy drums were received from the Defendant, 3M COMPANY.

**ANSWER:**    3M denies Plaintiff's misleading use of the term "heavy drums" to refer to steel drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility..  3M denies that it sold barrels, drums,

containers, or other receptacles containing hazardous and toxic substances to Acme Barrel or that

such barrels, drums, containers or other receptacles were transported to Drum Reconditioning

Facility. 3M admits that at certain times between 1972 and 1999 it sold steel drums to Acme

Barrel that were transported to the Drum Reconditioning Facility for reconditioning, and that

some number of those drums may have contained up to one inch of substances (excluding cancer

hazards, suspected cancer hazards, and toxic waste) at the bottom or on the inner liner, as

expressly permitted by 40 C.F.R., Pt. 261. 3M lacks knowledge sufficient to identify the specific

substance, if any, contained in any drum sold by 3M to Acme for reconditioning, and on that

basis denies any allegations in this paragraph relating to specific residues. 3M admits that on a

small number of occasions, Acme returned a drum to 3M on the purported basis that it contained

more than one inch of regulated residues. 3M denies the remaining allegations in this paragraph.

11. The Defendant, ACME, was not licensed by the USEPA, ILEPA, or DOE, to accept, clean, recondition, or dispose of heavy drums in accordance with 40 CFR 261.7, 415 ILCS 5/3.475(c)2, and their own Drum Acceptance Policy.

**ANSWER:** The allegations in this paragraph are vague, ambiguous, and misrepresent

applicable law. 3M denies Plaintiff's misleading use of the term "heavy drums" to refer to steel

drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any

"heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and

transported to the Drum Reconditioning Facility. 3M lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies those

allegations.

12. Acme management discussed in management meetings charging customers $ 2.00 for each heavy drums shipped to the Drum Reconditioning Plant.

**ANSWER:** The allegations in this paragraph are vague, ambiguous, and misrepresent

applicable law. 3M denies Plaintiff's misleading use of the term "heavy drums" to refer to steel

drums in compliance with 40 C.F.R., Pt. 261, and denies that Acme Barrel reconditioned any "heavy drums" (as that term is used in this paragraph) that were sold to Acme Barrel by 3M and transported to the Drum Reconditioning Facility..  3M lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies those allegations.

13. The Defendant, ACME, charged the Defendant, 3M COMPANY, from time to time, $2.00 for drum disposal charges.

**ANSWER:**   3M admits that on a small number of occasions, ACME charged 3M drum disposal charges for drums that could not be recycled.  3M denies any implication that ACME charged or 3M paid any amount for the disposal of hazardous waste.  3M denies the remaining allegations in this paragraph.

14. The Defendant, ACME, charged the Defendant, 3M COMPANY from time to time, other fees associated with the receipt of heavy drums shipped to the Drum Reconditioning Plant from 3.

**ANSWER:**   Denied.

15. The Defendant, ACME, did not record every drum that was received into the Drum Reconditioning Plant from the Defendant, 3M COMPANY.

**ANSWER:**   3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and, on that basis, denies those allegations.

16. The aforementioned unrecorded drums represented additional charge that the Defendant, ACME, levied on 3M COMPANY in exchange for Acme's acceptance and processing of heavy drums in violation of 42 U.S.C. § 6901 et seq., 415 ILCS 5/20 et seq. and applicable Federal and state code regulations.

**ANSWER:**   Denied.

17. The Defendants, ACME and 3M COMPANY, unlawfully conspired to process heavy drums, in violation of 42 U.S.C. § 6901 et seq., 415 ILCS 5/20 et seq. and applicable Federal and state code regulations.

**ANSWER:**   Denied.

18. As a direct and proximate result of the acts described in paragraphs 1-17 above, 3M COMPANY contributed to and/or assisted in the discharge of hazardous pollutants and substances identified in Count I, paragraph 4 into the environment from the Drum Reconditioning Plant.

**ANSWER:**    Denied.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, KEJUAN DICKENS, was diagnosed with Acute Myeloid Leukemia in November of 2002, and died on June 14, 2003.

**ANSWER:**    3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiff's decedent know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count I, paragraph 4, that were discharged from the Drum Reconditioning Plant, could cause or contribute to cause acute myeloid leukemia.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the

Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

23. At no point prior to November of 2002, did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's acute myeloid leukemia was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states

that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and realleges Paragraphs 10 through 12 of Count I of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, RONALD JONES, JR., as Special Administrator For the Estate of KEJUAN DICKENS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

**COUNT CCCVII**
**RONALD JONES as Special Administrator**
**For the Estate of KEJUAN DICKENS, Deceased**

## CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M Company)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCVI as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count II as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, RONALD JONES, JR., as Special Administrator For the Estate of KEJUAN DICKENS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.


## COUNT CCCVIII
### RONALD JONES as Special Administrator
### For the Estate of KEJUAN DICKENS, Deceased
### CIVIL CONSPIRACY
### (ACME and BASF CORPORATION)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


## COUNT CCCIX
### RONALD JONES as Special Administrator
### For the Estate of KEJUAN DICKENS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and BASF CORPORATION)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCX**
**RONALD JONES as Special Administrator**
**For the Estate of KEJUAN DICKENS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXI**
**RONALD JONES as Special Administrator**
**For the Estate of KEJUAN DICKENS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXII**
**RONALD JONES as Special Administrator**
**For the Estate of KEJUAN DICKENS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXIII**
**RONALD JONES as Special Administrator**
**For the Estate of KEJUAN DICKENS, Deceased**

<u>**CIVIL CONSPIRACY/SURVIVAL**</u>
<u>**(ACME and SUN CHEMICAL)**</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>**COUNT CCCXIV**</u>
<u>**RONALD JONES as Special Administrator**</u>
<u>**For the Estate of KEJUAN DICKENS, Deceased**</u>
<u>**CIVIL CONSPIRACY**</u>
<u>**(ACME and EXXON-MOBIL)**</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>**COUNT CCCXV**</u>
<u>**RONALD JONES as Special Administrator**</u>
<u>**For the Estate of KEJUAN DICKENS, Deceased**</u>
<u>**CIVIL CONSPIRACY/SURVIVAL**</u>
<u>**(ACME and EXXON-MOBIL)**</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXVI**
**RONALD JONES as Special Administrator**
**For the Estate of KEJUAN DICKENS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXVII**
**RONALD JONES as Special Administrator**
**For the Estate of KEJUAN DICKENS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXVIII**
**NED JAMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count XVII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraph.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, MAE FRANCES JAMES, developed Multiple Myeloma, and died on April 21, 1997.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff, or Plaintiffs decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff or Plaintiffs decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count XVII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause multiple myeloma.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001 did the Plaintiff or Plaintiffs decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states

that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count XVII of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, NED JAMES, III., as Special Administrator For the Estate of MAE FRANCES JAMES, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCCXIX
### NED JAMES, III as Special Administrator
### For the Estate of MAE FRANCES JAMES, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCXVIII as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count XVIII as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, NED JAMES, III., as Special Administrator For the Estate of MAE FRANCES JAMES, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

**COUNT CCCXX**
**NED JAMMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXI**
**NED JAMMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXII**
**NED JAMMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXIII**
**NED JAMMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXIV**
**NED JAMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXV**
**NED JAMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXVI**
**NED JAMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXVII**
**NED JAMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXVIII**
**NED JAMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXIX**
**NED JAMES, III as Special Administrator**
**For the Estate of MAE FRANCES JAMES, Deceased**

## CIVIL CONSPIRACY/SURVIVAL
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXXX
## ANNIE JACKSON as Special Administratrix
## For the Estate of WILLA MCCARGO, Deceased
## CIVIL CONSPIRACY
## (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count XXXVII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraph.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraph 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, WILLA MCCARGO, developed Multiple Myeloma, and died on November 7, 1991.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent, know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in XXXVII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause multiple myeloma.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001, did the Plaintiff, or Plaintiff's decedent, know or could have known that the Decedent's cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count XXXVII of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, ANNIE JACKSON, as Special Administratrix For the Estate of WILLA MCCARGO, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00). -

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCCXXXI
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCXXX as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count XXXVIII as though fully pleaded paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, ANNIE JACKSON, as Special Administratrix For the Estate of WILLA MCCARGO, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCCXXXII
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXXXIII
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXXXIV
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXXXV
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXXXVI
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXXXVII -
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXXXVIII
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased

**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXXXIX**
**ANNIE JACKSON as Special Administratrix**
**For the Estate of WILLA MCCARGO, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXL**
**ANNIE JACKSON as Special Administratrix**
**For the Estate of WILLA MCCARGO, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXLI
### ANNIE JACKSON as Special Administratrix
### For the Estate of WILLA MCCARGO, Deceased
### CIVIL CONSPIRACY
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCXLII
### CALVIN RATTLER as Special Administrator
### For the Estate of BRENDA RATTLER, Deceased
### CIVIL CONSPIRACY
### (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count LXV of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, BRENDA RATTLER, was diagnosed with Colon Cancer on or about July 20, 2004, and died on December 29, 2004.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**   3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**   3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count LXV, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause colon cancer.

**ANSWER:**   3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to July 20, 2004 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count LXV of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, CALVIN RATTLER, as Special Administrator For the Estate of BRENDA RATTLER, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested relief.

## COUNT CCCXLIII
### CALVIN RATTLER as Special Administrator
### For the Estate of BRENDA RATTLER, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCXLII as though fully pleaded as paragraphs 1 through 23 of this Counts.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count LXVI as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, CALVIN RATTLER, as Special Administrator For the Estate of BRENDA RATTLER, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**   3M denies that Plaintiff is entitled to any of the above requested relief.


### COUNT CCCXLIV
### CALVIN RATTLER as Special Administrator
### For the Estate of BRENDA RATTLER, Deceased
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CCCXLV
### CALVIN RATTLER as Special Administrator
### For the Estate of BRENDA RATTLER, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CCCLVI
### CALVIN RATTLER as Special Administrator
### For the Estate of BRENDA RATTLER, Deceased
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXLVII**
**CALVIN RATTLER as Special Administrator**
**For the Estate of BRENDA RATTLER, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CCCXLVIII**
**CALVIN RATTLER as Special Administrator**
**For the Estate of BRENDA RATTLER, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CCCXLIX**
**CALVIN RATTLER as Special Administrator**
**For the Estate of BRENDA RATTLER, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CCCL**
**CALVIN RATTLER as Special Administrator**
**For the Estate of BRENDA RATTLER, Deceased**

## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLI
## CALVIN RATTLER as Special Administrator
## For the Estate of BRENDA RATTLER, Deceased
## CIVIL CONSPIRACY/SURVIVAL
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLII
## CALVIN RATTLER as Special Administrator
## For the Estate of BRENDA RATTLER, Deceased
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLIII**
**CALVIN RATTLER as Special Administrator**
**For the Estate of BRENDA RATTLER, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CCCLIV**
**CYNTHIA GREEN as Special Administratrix**
**For the Estate of EDDIE GREEN, Deceased**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**1.**     Plaintiff adopts and re-alleges paragraph 1 of Count LXXXI of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:**     3M incorporates its response to paragraph 1 of Count LXXXI.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, EDDIE GREEN, was diagnosed with leukemia in April of 2004, and died on January 13, 2005.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count LXXXI, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause leukemia.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to April of 2004 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count LXXXI of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates is responses to paragraphs 10-12 of Count LXXXI.

WHEREFORE, Plaintiff, CYNTHIA GREEN, as Special Administratrix For the Estate of EDDIE GREEN, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

## COUNT CCCLV
### CYNTHIA GREEN as Special Administratrix
### For the Estate of EDDIE GREEN, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCLIV as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count LXXXII as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, CYNTHIA GREEN, as Special Administratrix For the Estate of EDDIE GREEN, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

## COUNT CCCLVI
## CYNTHIA GREEN as Special Administratrix
## For the Estate of EDDIE GREEN, Deceased
## CIVIL CONSPIRACY
## (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLVII
## CYNTHIA GREEN as Special Administratrix
## For the Estate of EDDIE GREEN, Deceased
## CIVIL CONSPIRACY/SURVIVAL
## (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLVIII
## CYNTHIA GREEN as Special Administratrix
## For the Estate of EDDIE GREEN, Deceased
## CIVIL CONSPIRACY
## (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLIX**
**CYNTHIA GREEN as Special Administratrix**
**For the Estate of EDDIE GREEN, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLX**
**CYNTHIA GREEN as Special Administratrix**
**For the Estate of EDDIE GREEN, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLXI**
**CYNTHIA GREEN as Special Administratrix**
**For the Estate of EDDIE GREEN, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLXII**
**CYNTHIA GREEN as Special Administratrix**
**For the Estate of EDDIE GREEN, Deceased**

281

## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXIII
## CYNTHIA GREEN as Special Administratrix
## For the Estate of EDDIE GREEN, Deceased
## CIVIL CONSPIRACY/SURVIVAL
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXIV
## CYNTHIA GREEN as Special Administratrix
## For the Estate of EDDIE GREEN, Deceased
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLXV**
**CYNTHIA GREEN as Special Administratrix**
**For the Estate of EDDIE GREEN, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLXVI**
**BARBARA GORDON as Special Administratrix**
**For the Estate of CANARY GORDON, Deceased**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count XCIX of this Complaint as though fully pleaded as paragraph I of this Count.

**ANSWER:** 3M incorporates its response to paragraph 1 of Count XCIX.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, CANARY GORDON, was diagnosed with Lung Cancer in March of 1996, and died on April 1, 1999.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count XCIX, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lung cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count XCIX of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, BARBARA GORDON, as Special Administratrix For the Estate of CANARY GORDON, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CCCLXVII
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.**    Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCLXVI as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count C as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, BARBARA GORDON, as Special Administratrix For the Estate of CANARY GORDON, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CCCLXVIII
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased
### CIVIL CONSPIRACY
### ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCLXIX
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCLXX
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCLXXI
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCLXXII
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCLXXIII
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCLXXIV
### BARBARA GORDON as Special Administratrix
### For the Estate of CANARY GORDON, Deceased

**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLXXV**
**BARBARA GORDON as Special Administratrix**
**For the Estate of CANARY GORDON, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLXXVI**
**BARBARA GORDON as Special Administratrix**
**For the Estate of CANARY GORDON, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXXVII
## BARBARA GORDON as Special Administratrix
## For the Estate of CANARY GORDON, Deceased
## CIVIL CONSPIRACY/SURVIVAL
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXXVIII
## JOYCE WILLIAMS as Special Administratrix
## For the Estate of ANTHONY WILLIAMS, Deceased
## CIVIL CONSPIRACY
## (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CXV of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, ANTHONY WILLIAMS, developed pancreatic cancer and died on April 20, 1997.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CXV, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause pancreatic cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count CXV of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratrix For the Estate of ANTHONY WILLIAMS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CCCLXXIX
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCLXXVIII as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count CXVI as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratrix For the Estate of ANTHONY WILLIAMS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested Relief.


### COUNT CCCLXXX -
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CCCLXXXI
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CCCLXXXII
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXXXIII
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXXXIV
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXXXV
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXXXVI
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of ANTHONY WILLIAMS, Deceased

## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCL)(XXVII
## JOYCE WILLIAMS as Special Administratrix
## For the Estate of ANTHONY WILLIAMS, Deceased
## CIVIL CONSPIRACY/SURVIVAL
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CCCLXXXVIII
## JOYCE WILLIAMS as Special Administratrix
## For the Estate of ANTHONY WILLIAMS, Deceased
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCLXXXIX**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of ANTHONY WILLIAMS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXC**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CXXXV of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, SHIRLEY 'WILLIAMS, developed pancreatic cancer and died on September 18, 2001.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CXXXV, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause pancreatic cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by any of the acts described in this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.**  Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count CXXXV of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratrix For the Estate of SHIRLEY WILLIAMS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.


### COUNT CCCXCI
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of SHIRLEY WILLIAMS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.**  Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CCCXC as though fully pleaded as paragraphs I through 23 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**24-26.**  Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count CXXXVI as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, JOYCE WILLIAMS, as Special Administratrix For the Estate of SHIRLEY WILLIAMS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CCCXCII
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of SHIRLEY WILLIAMS, Deceased
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCXCIII
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of SHIRLEY WILLIAMS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CCCXCIV
### JOYCE WILLIAMS as Special Administratrix
### For the Estate of SHIRLEY WILLIAMS, Deceased
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXCV**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXCVI**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXCVII**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXCVIII**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**

**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CCCXCIX**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CD**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDI**
**JOYCE WILLIAMS as Special Administratrix**
**For the Estate of SHIRLEY WILLIAMS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDII**
**HELEN LITTLE as Special Administratrix**
**For the Estate of WILLA LEAKS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, WILLA LEAKS, was diagnosed with ovarian cancer, and died on February 20, 1999.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CLI, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause ovarian cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior May 23, 2001 did the Plaintiff or Plaintiffs decedent know or could have known that the Decedent's cancer was wrongfully caused by any of the negligent acts describe in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states

that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count CLI of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, HELEN LITTLE, as Special Administratrix For the Estate of WILLA LEAKS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.


### COUNT CDIII
### HELEN LITTLE as Special Administratrix
### For the Estate of WILLA LEAKS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CDII as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count CLII as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, HELEN LITTLE, as Special Administratrix For the Estate of WILLA LEAKS, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.


### COUNT CDIV
### HELEN LITTLE as Special Administratrix
### For the Estate of WILLA LEAKS, Deceased
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDV**
**HELEN LITTLE as Special Administratrix**
**For the Estate of WILLA LEAKS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDVI**
**HELEN LITTLE as Special Administratrix**
**For the Estate of WILLA LEAKS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDVII**
**HELEN LITTLE as Special Administratrix**
**For the Estate of WILLA LEAKS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDVIII
### HELEN LITTLE as Special Administratrix
### For the Estate of WILLA LEAKS, Deceased
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDIX
### HELEN LITTLE as Special Administratrix
### For the Estate of WILLA LEAKS, Deceased
### CIVIL CONSPIRACY SURVIVAL
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDX
### HELEN LITTLE as Special Administratrix
### For the Estate of WILLA LEAKS, Deceased
### CIVIL CONSPIRACY
### (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDXI
### HELEN LITTLE as Special Administratrix
### For the Estate of WILLA LEAKS, Deceased

## CIVIL CONSPIRACY/SURVIVAL
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXII
## HELEN LITTLE as Special Administratrix
## For the Estate of WILLA LEAKS, Deceased
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXIII
## HELEN LITTLE as Special Administratrix
## For the Estate of WILLA LEAKS, Deceased
## CIVIL CONSPIRACY/SURVIVAL
## !ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXIV
## FAYE BLAKELY as Special Administratrix
## For the Estate of THOMAS BLAKELY, Deceased
## CIVIL CONSPIRACY
## (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CLXVII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, THOMAS BLAKELY, was diagnosed with lung cancer and died on July 26, 1996.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent worked at the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent worked at the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent worked at the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CLXVII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lung cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the

Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states

that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count CLXVII of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, FAYE BLAKELY, as Special Administratrix For the Estate of THOMAS BLAKELY, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

**COUNT CDXV**
**FAYE BLAKELY as Special Administratrix**
**For the Estate of THOMAS BLAKELY, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and 3M COMPANY)**

**1-23.**   Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CDXIV as though full pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count CLXVIII as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, FAYE BLAKELY, as Special Administratrix For the Estate of THOMAS BLAKELY, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

**COUNT CDXVI**
**FAYE BLAKELY as Special Administratrix**
**For the Estate of THOMAS BLAKELY, Deceased**
**CIVIL CONSPIRACY**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXVII**
**FAYE BLAKELY as Special Administratrix**
**For the Estate of THOMAS BLAKELY, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXVIII**
**FAYE BLAKELY as Special Administratrix**
**For the Estate of THOMAS BLAKELY, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXIX**
**FAYE BLAKELY as Special Administratrix**
**For the Estate of THOMAS BLAKELY, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXX**
**FAYE BLAKELY as Special Administratrix**
**For the Estate of THOMAS BLAKELY, Deceased**

## CIVIL CONSPIRACY
## (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXI
## FAYE BLAKELY as Special Administratrix
## For the Estate of THOMAS BLAKELY, Deceased
## CIVIL CONSPIRACY/SURVIVAL
## (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXII
## FAYE BLAKELY as Special Administratrix
## For the Estate of THOMAS BLAKELY, Deceased
## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXIII
### FAYE BLAKELY as Special Administratrix
### For the Estate of THOMAS BLAKELY, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXIV
### FAYE BLAKELY as Special Administratrix
### For the Estate of THOMAS BLAKELY, Deceased
### CIVIL CONSPIRACY
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXV
### FAYE BLAKELY as Special Administratrix
### For the Estate of THOMAS BLAKELY, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXVI
### DOROTHENE NEWSON as Special Administratrix
### For the Estate of LOUISE COOPER, Deceased

312

<u>**CIVIL CONSPIRACY**</u>
<u>**(ACME and 3M COMPANY)**</u>

**1.**      Plaintiff adopts and re-alleges paragraph 1 of Count CLXXXIII of this Complaint as though fully pleaded as paragraph 1 of this Count.

    **ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

    **ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

24. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, LOUISE COOPER, was diagnosed with ovarian cancer in September of 2003, and died on December 29, 2003.

    **ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

25. At no point during the time period the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

    **ANSWER:**     3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

26. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

    **ANSWER:**     3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

27. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiffs decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CLXXXIII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to ovarian cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

28. At no point prior to September of 2003 did the Plaintiff or Plaintiff's - decedent know or could have known that the Decedent's cancer was wrongfully caused by any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count CLXXXIII of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, DOROTHENE NEWSON, as Special Administratrix For the Estate of LOUISE COOPER, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

**COUNT CDXXVII**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and 3M COMPANY)**

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CDXXVI as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count CLXXXIV as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, DOROTHENE NEWSON, as Special Administratrix For the Estate of LOLTISE COOPER, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.


**COUNT CDXXVIII**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**
**CIVIL CONSPIRACY**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CDXXIX**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXX
### DOROTHENE NEWSON as Special Administratrix
### For the Estate of LOUISE COOPER, Deceased
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXXI
### DOROTHENE NEWSON as Special Administratrix
### For the Estate of LOUISE COOPER, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXXXII
### DOROTHENE NEWSON as Special Administratrix
### For the Estate of LOUISE COOPER, Deceased
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXXXIII**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXXXIV**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**
**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXXXV**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXXXVI**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**

**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXXXVII**
**DOROTHENE NEWSON as Special Administratrix**
**For the Estate of LOUISE COOPER, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXXXVIII**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CXCIX of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

318

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, HORACE GRAHAM, SR., was diagnosed with thyroid, head, and neck cancer in July of 2001 and died on July 23, 2002.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CXCIX, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

23. At no point prior to July of 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in this Count.

**ANSWER:**    3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's

Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states

that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims

asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges Paragraphs 10 through 12 of Count CXCIX of this Complaint as though fully pleaded as Paragraphs 24 through 26 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, WANDA GRAHAM, as Special Administratrix For the Estate of HORACE GRAHAM, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested Relief.

## COUNT CDXXXIX
### WANDA GRAHAM as Special Administratrix
### For the Estate of HORACE GRAHAM, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.**    Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count CDXXXVIII as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:**    3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count CC as though fully pleaded as paragraph 24 through 26 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, WANDA GRAHAM, as Special Administratrix For the Estate of HORACE GRAHAM, Deceased, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.


**COUNT CDXL**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CDXLI**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and BASF)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


**COUNT CDXLII**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXLIII**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXLIV**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXLV**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SUN CHEMICAL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXLVI**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXLVII**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXLVIII**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDXLIX**
**WANDA GRAHAM as Special Administratrix**
**For the Estate of HORACE GRAHAM, Deceased**

<u>**CIVIL CONSPIRACY/SURVIVAL**</u>
<u>**(ACME and DEWITT)**</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>**COUNT CDL-WILLIE MAE GAGE**</u>
<u>**CIVIL CONSPIRACY**</u>
<u>**(ACME and 3M COMPANY)**</u>

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CCXV of this Complaint as though fully pleaded as paragraph I of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, WILLIE MAE GAGE, developed colon cancer in August of 2005 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCXV, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to colon cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to August of 2005 did the Plaintiff know or could have known that her cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, WILLIE MAE GAGE, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested Relief.


### COUNT CDLI-WILLIE MAE GAGE
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CDLII-WILLIE MAE GAGE
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CDLIII-WILLIE MAE GAGE
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLIV-WILLIE MAE GAGE
### CIVIL CONSPIRACY
### (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLV-WILLIE MAE GAGE
### CIVIL CONSPIRACY
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLVI-LAZE THOMAS
### CIVIL CONSPIRACY
### (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CCXXIII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its response to these paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, LAZE THOMAS, developed renal cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCXXIII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to renal cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the act described in this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, LAZE THOMAS, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

<u>COUNT CDLVH-LAZE THOMAS</u>
<u>CIVIL CONSPIRACY</u>
<u>(ACME and BASF)</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

<u>COUNT CDLVIII-LAZE THOMAS</u>
<u>CIVIL CONSPIRACY</u>
<u>(ACME and SHERWIN WILLIAMS)</u>

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLIX-LAZE THOMAS
## CIVIL CONSPIRACY
## (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLX-LAZE THOMAS
## CIVIL CONSPIRACY
## (ACME and SUN EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLXI-LAZE THOMAS
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLXII-DARRYL THOMAS
## CIVIL CONSPIRACY
## (ACME and 3M COMPANY)

1.       Plaintiff adopts and re-alleges paragraph 1 of Count CCXXXI of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, DARRYL THOMAS, developed testicular cancer and has received treatment for his condition and spent time in the hospital and in the process, incurred physical and mental pain and suffering.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous

pollutants and substances identified in Count CCXXXI, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to testicular cancer.

**ANSWER:**     3M denies that it sent any "hazardous pollutants or substances" to the

Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001 did the Plaintiff know or could have known that his cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:**     3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required.  To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in

any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient

information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, DARRYL THOMAS, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CDLXIII-DARRYL THOMAS
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CDLXIV-DARRYL THOMAS
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXV-DARRYL THOMAS
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXVI-DARRYL THOMAS
### CIVIL CONSPIRACY
### (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXVH-DARRYL THOMAS
### CIVIL CONSPIRACY
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

## COUNT CDLXVIII-ARELYS GUZMAN
## CIVIL CONSPIRACY
## (ACME and 3M COMPANY)

**1.**     Plaintiff adopts and re-alleges paragraph 1 of Count CCXXXIX of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, ARELYS GUZMAN, was diagnosed in September of 2001 with Hodgkin's lymphoma when she was twelve years old and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for her condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**     3M denies that any alleged exposure and injuries were caused by 3M, and

denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCXXXIX, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause lymphoma.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to September of 2001 did the Plaintiff know or could have known that her lymphoma was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ARELYS GUZMAN, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CDLXIX-ARELYS GUZMAN
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXX-ARELYS GUZMAN
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXXI-ARELYS GUZMAN
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXXII-ARELYS GUZMAN
### CIVIL CONSPIRACY
### (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXXIII-ARELYS GUZMAN
### CIVIL CONSPIRACY
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXXIV-RICHARD SMITH
### CIVIL CONSPIRACY
### (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CCXLVII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, RICHARD SMITH, developed squamous cell carcinoma of the mouth and neck in December of 2002 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and

denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the

Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCXLVII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause carcinoma.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the

Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M,

and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

23. At no point prior to December of 2002 did the Plaintiff know or could have known that his cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion

to which no response is required. To the extent a response is required, 3M denies all allegations

in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, RICHARD SMITH, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

## COUNT CDLXXV-RICHARD SMITH
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLXXVI-RICHARD SMITH
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLXXVII-RICHARD SMITH
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDLXXVIII-RICHARD SMITH**
**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDLXXIX-RICHARD SMITH**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT CDLXXX-ELIJAH MCGEHEE**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**1.**     Plaintiff adopts and re-alleges paragraph 1 of Count CCLV of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**2-18**.     Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, ELIJAH MCGEHEE, was diagnosed with Hodgkin's lymphoma in October of 2002, and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for

340

his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCLV, paragraph 4 - that were discharged from the Drum Reconditioning Plant could cause or contribute to cause cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to October of 2002 did the Plaintiff know or could have known that his cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:**   3M states that the allegations in this paragraph contain a legal conclusion to which no response is required.  To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ELIJAH MCGEHEE, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**   3M denies that Plaintiff is entitled to any of the above requested Relief.


### COUNT CDLXXXI-ELIJAH MCGEHEE
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.


### COUNT CDDOCXII-ELIJAH MCGEHEE
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXXXIII-ELIJAH MCGEHEE
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXXXIV-ELIJAH MCGEHEE
### CIVIL CONSPIRACY
### (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLX,OCV-ELIJAH MCGEHEE
### CIVIL CONSPIRACY
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDLXXXVI-ELLA SMITH-THOMAS
### CIVIL CONSPIRACY
### (ACME and 3M COMPANY)

1.     Plaintiff adopts and re-alleges paragraph 1 of Count CCLXIII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, ELLA SMITH-THOMAS, developed ovarian cancer and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for her condition, fear, mental anguish, and emotional stress, and failure to attend to her usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous

pollutants and substances identified in Count CCLXIII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to ovarian cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001 did the Plaintiff know or could have known that her cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ELLA SMITH-THOMAS, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

## COUNT CDLXXXVII-ELLA SMITH-THOMAS
## CIVIL CONSPIRACY
## (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLXXXVIII-ELLA SMITH-THOMAS
## CIVIL CONSPIRACY
## (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDLXXXIX-ELLA SMITH-THOMAS
## CIVIL CONSPIRACY
## (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXC-ELLA SMITH-THOMAS
## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT CDXCI-ELLA SMITH-THOMAS
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

## COUNT CDXCII-ALBERT DAVIS
## CIVIL CONSPIRACY
## (ACME and 3M COMPANY)

**1.**     Plaintiff adopts and re-alleges paragraph 1 of Count CCLXXI of this Complaint
as though fully pleaded as paragraph 1 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

**2-18.**  Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as
though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:**     3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous
pollutants and substances, the Decedent, ALBERT DAVIS, developed prostate cancer in
February of 2004 and has suffered from serious pain, suffering and damages, including and not
limited to those related to the expression of and care of treatment for his condition, fear, mental
anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and
occupation.

**ANSWER:**     3M denies that Decedent's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning
Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from
the Drum Reconditioning Plant.

**ANSWER:**     3M denies that any alleged exposure and injuries were caused by 3M, and

denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCLXXI, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause prostate cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to February of 2004 did the Plaintiff know or could have known that his cancer was wrongfully caused by the any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ALBERT DAVIS, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CDXCIII-ALBERT DAVIS
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDXCIV-ALBERT DAVIS
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDXCV-ALBERT DAVIS
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT CDXCVI-ALBERT DAVIS
### CIVIL CONSPIRACY
### (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CDXCVII-ALBERT DAVIS
### CIVIL CONSPIRACY
### (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

### COUNT CDXCVIII-IRA DANTZLER
### CIVIL CONSPIRACY
### (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CCLXXXI of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, IRA DANTZLER, developed prostate cancer in April of 2003 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the

Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M,

and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCLXXXI, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to prostate cancer.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to April of 2003 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, IRA DANTZLER, prays for judgment against the Defendant, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT CDXCIX-IRA DANTZLER
### CIVIL CONSPIRACY
### (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT D-IRA DANTZLER
### CIVIL CONSPIRACY
### (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT DI-IRA DANTZLER
### CIVIL CONSPIRACY
### (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DII-IRA DANTZLER
## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DIII-IRA DANTZLER
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DIV-JIIMIE CANNADY
## CIVIL CONSPIRACY
## (ACME and 3M COMPANY)

**1.** Plaintiff adopts and re-alleges paragraph 1 of Count CCLXXXIX of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**2-18.** Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, JIMMIE CANNADY, developed prostate cancer in December of 2000 and has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:** 3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous" pollutants or substances to the Acme Barrel Facility, denies that Decedent's alleged exposure and injuries were caused by 3M, and denies the other allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCLXXXIX, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to prostate cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

**22. [SIC-THIS IS A DUP OF ABOVE]** At no point during the time that the Plaintiff lived near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCLXXXIX, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to prostate cancer.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001 did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, JIMMIE CANNADY, prays for judgment against the Defendants, ACME and BASF, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**    3M denies that Plaintiff is entitled to any of the above requested Relief.

## COUNT DVI-JIIMIE CANNADY
## CIVIL CONSPIRACY
## (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DVII-JIIMIE CANNADY
## CIVIL CONSPIRACY
## (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DVIII-JIIMIE CANNADY
## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DIX-JIIMIE CANNADY
## CIVIL CONSPIRACY
## (ACME and DEWITT)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

### COUNT DX-ROBERT BACKIS
### CIVIL CONSPIRACY
### (ACME and 3M COMPANY)

**1.**      Plaintiff adopts and re-alleges paragraph 1 of Count CCXCVIII of this Complaint as though fully pleaded as paragraph 1 of this Count.

**ANSWER:**      3M incorporates its responses to the above-mentioned paragraphs.

**2-18.**  Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:**      3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous pollutants and substances, the Decedent, ROBERT BACKIS, was diagnosed with Acute Myeloid Leukemia (AML) on May 2, 2006, and since that date, has suffered from serious pain, suffering and damages, including and not limited to those related to the expression of and care of treatment for his condition, fear, mental anguish, and emotional stress, and failure to attend to his usual and customary affairs, duties, and occupation.

**ANSWER:**      3M denies that Decedent's alleged exposure and injuries were caused by 3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Plaintiff worked near the Drum Reconditioning Plant did the Plaintiff know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**      3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Plaintiff worked near the Drum Reconditioning Plant did the Plaintiff know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Plaintiff worked near the Drum Reconditioning Plant did the Plaintiff know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in Count CCXCVIII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause AML.

**ANSWER:** 3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M. 3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 2, 2006 when he was diagnosed with AML did the Plaintiff know or could have known that his cancer was wrongfully caused by any of the acts described in this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

WHEREFORE, Plaintiff, ROBERT BACKIS, prays for judgment against the Defendants, ACME and 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:**     3M denies that Plaintiff is entitled to any of the above requested Relief.

## COUNT DXI-ROBERT BACKIS
## CIVIL CONSPIRACY
## (ACME and BASF)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DXII-ROBERT BACKIS
## CIVIL CONSPIRACY
## (ACME and SHERWIN WILLIAMS)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DXIII-ROBERT BACKIS
## CIVIL CONSPIRACY
## (ACME and SUN CHEMICAL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

## COUNT DXIV-ROBERT BACKIS
## CIVIL CONSPIRACY
## (ACME and EXXON-MOBIL)

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

**COUNT DXV-ROBERT BACKIS**
**CIVIL CONSPIRACY**
**(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs

constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to

answer these allegations.  To the extent these paragraphs may be construed as relating to 3M, 3M

denies the allegations contained in these paragraphs.

**COUNT DXVI-LONNIE FOSTER, as Special Administrator for**
**The Estate of ELNORA SIMS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and 3M COMPANY)**

**1.**      Plaintiff adopts and re-alleges paragraph 1 of Count LIII as though fully pleaded
as paragraph 1 of this Count.

**ANSWER:**      3M incorporates its responses to the above-mentioned paragraphs.

**2-18.**  Plaintiff adopts and re-alleges paragraphs 2 through 18 of Count CCCVI as
though fully pleaded as paragraphs 2 through 18 of this Count.

**ANSWER:**      3M incorporates its responses to the above-mentioned paragraphs.

19. As a direct and proximate result of being exposed to the aforementioned hazardous
pollutants and substances, the Decedent, ELNORA SIMS, developed kidney cancer, and died on
February 20, 2004.

**ANSWER:**      3M denies that Decedent's alleged exposure and injuries were caused by

3M and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and, on that basis, denies those allegations.

20. At no point during the time period the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent, know that any hazardous pollutants or substances were discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

21. At no point during the time that the Decedent lived near the Drum Reconditioning Plant did the Plaintiff or Plaintiff's decedent know the nature of the hazardous pollutants and substances discharged from the Drum Reconditioning Plant.

**ANSWER:**    3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

22. At no point during the time that the Decedent lived near the Drum Reconditioning Plant, did the Plaintiff, or Plaintiff's decedent, know or have any reason to know that exposure to any of the hazardous pollutants and substances identified in LIII, paragraph 4 that were discharged from the Drum Reconditioning Plant could cause or contribute to cause kidney cancer.

**ANSWER:**    3M denies that it sent any "hazardous pollutants or substances" to the Drum Reconditioning plant, denies that any alleged exposure and injuries were caused by 3M, and denies the remaining allegations in this paragraph to the extent they relate to 3M.  3M lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies those allegations.

23. At no point prior to May 23, 2001 did the Plaintiff or Plaintiff's decedent know or could have known that the Decedent's cancer was wrongfully caused by the any of the negligent acts identified in paragraph 20 of this Count.

**ANSWER:** 3M states that the allegations in this paragraph contain a legal conclusion to which no response is required. To the extent a response is required, 3M denies all allegations in this paragraph to the extent they allege, suggest or imply that Plaintiff and/or Plaintiff's Decedent has or had any injury in any way caused by the conduct of 3M, but 3M further states that Plaintiff and/or Plaintiff's Decedent had sufficient information to be on notice of the claims asserted in the lawsuit before May 23, 2001.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10-12 of Count LIII as though fully pleaded as paragraphs 24-26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, LONNIE FOSTER, as Special Administrator For the Estate of ELNORA SIMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

### COUNT DXVII-LONNIE FOSTER, as Special Administrator for
### The Estate of ELNORA SIMS, Deceased
### CIVIL CONSPIRACY/SURVIVAL
### (ACME and 3M COMPANY)

**1-23.** Plaintiff adopts and re-alleges paragraphs 1 through 23 of Count DXVI as though fully pleaded as paragraphs 1 through 23 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

**24-26.** Plaintiff adopts and re-alleges paragraphs 10 through 12 of Count LIV as though fully pleaded as paragraphs 24 through 26 of this Count.

**ANSWER:** 3M incorporates its responses to the above-mentioned paragraphs.

WHEREFORE, Plaintiff, LONNIE FOSTER, as Special Administrator For the Estate of ELNORA SIMS, Deceased, prays for judgment against the Defendant, 3M COMPANY, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**ANSWER:** 3M denies that Plaintiff is entitled to any of the above requested Relief.

**COUNT DXVIII-LONNIE FOSTER, as Special Administrator for**
**The Estate of ELNORA SIMS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT DXIX-LONNIE FOSTER, as Special Administrator for**
**The Estate of ELNORA SIMS, Deceased**
**CIVIL CONSPIRACY/SURVIVAL**
**(ACME and SHERWIN WILLIAMS)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT DXX-LONNIE FOSTER, as Special Administrator for**
**The Estate of ELNORA SIMS, Deceased**
**CIVIL CONSPIRACY**
**(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT DXXI-LONNIE FOSTER, as Special Administrator for
The Estate of ELNORA SIMS, Deceased
CIVIL CONSPIRACY/SURVIVAL
(ACME and EXXON-MOBIL)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT DXXII-LONNIE FOSTER, as Special Administrator for
The Estate of ELNORA SIMS, Deceased
CIVIL CONSPIRACY
(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**COUNT DXXIII-LONNIE FOSTER, as Special Administrator for
The Estate of ELNORA SIMS, Deceased
CIVIL CONSPIRACY/SURVIVAL
(ACME and DEWITT)**

Pursuant to the Court's Order of September 24, 2008, 3M states that the paragraphs constituting this Count contain no allegations relating to 3M, and 3M is therefore not required to answer these allegations. To the extent these paragraphs may be construed as relating to 3M, 3M denies the allegations contained in these paragraphs.

**AFFIRMATIVE AND OTHER DEFENSES**

3M Company asserts the following affirmative and other defenses to Plaintiffs' claims, without assuming the burden of proof on any defense where the burden would not otherwise be on 3M Company:

1.   Defendant 3M Company operates certain manufacturing facilities in the United States.

2.   The Acme Defendants own and operated a facility that refurbished "empty drums," as defined and permitted by federal regulations, located at 2300 W. 13th Street, Chicago, Illinois.

3.   From its founding in 1894, the Acme Barrel Company provided drum and container refurbishing services to numerous customers.

4.   Customers of Acme Barrel company were just that—customers.  Acme Barrel Company provided the drum and container refurbishing services. Customers merely paid Acme Barrel Company to provide those services.

5.   3M Company was a customer of Acme Barrel Company.  At certain times, various 3M Company manufacturing facilities sent "empty drums," as defined and permitted by federal regulations, to the Acme Barrel facility located at 2300 W. 13th Street, Chicago, Illinois, for refurbishing.

6.   3M Company sold "empty drums" to Acme Barrel Company and purchased refurbished drums.

7.   Any processing or reconditioning that was done on drums sold by 3M was done when they were owned by and under the exclusive control of Acme Barrel Company, not 3M.

8.   At all relevant times, Acme Barrel Company held itself out to 3M Company as compliant with all applicable federal, state and local statutes, laws, regulations and ordinances, including all permit and licensing requirements. 3M Company had no reason to believe this was not true and correct.

9.      At all relevant times, all of the operations of the Acme Barrel facility were under the sole and exclusive control of the Acme Barrel Company. 3M Company did not own, operate, control, oversee, influence, or have any other connection to the Acme Barrel facility or the operations at that facility.

10.     Plaintiffs are aware, and Plaintiffs and their Decedents were aware before Plaintiffs instituted this action, that 3M Company did not own, operate, control, oversee, influence, or have any connection to the Acme Barrel facility other than as a customer of Acme Barrel Company.

11.     Plaintiffs allege that, at various unspecified times, there were emissions and releases of allegedly toxic substances at the Acme Barrel facility.  If true, 3M Company had no knowledge of and no role in any alleged emissions of any allegedly toxic or hazardous substances from the Acme Barrel facility.

12.     3M Company did not introduce, release or allow any contaminants, toxic substances or chemicals to be released into the environment at or around either the Acme Barrel facility or any nearby residences, businesses, or buildings.

13.     3M Company has never been cited by any federal, state or local authority for any violations of federal, state, or local statutes, regulations or law for sending drums and containers to the Acme Barrel facility for refurbishing, nor has it ever been cited for any other activity relating to the Acme Barrel facility.

## **FIRST DEFENSE**

14.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

15.     Plaintiffs' Complaint fails to state a claim against 3M Company upon which relief can be granted.

**SECOND DEFENSE**

16.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

17.     Plaintiffs' claims against 3M Company fail because 3M Company owed no duty to Plaintiffs or Plaintiffs' Decedents.

**THIRD DEFENSE**

18.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

19.     3M Company was merely a customer of Acme Barrel Company.  Plaintiffs' damages, if any, were caused solely by the acts or omissions of others and not by 3M Company.

**FOURTH DEFENSE**

20.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

21.     Plaintiffs allege that the Acme Barrel facility "discharged hazardous substances, irritants, and contaminants into the surrounding neighborhood through the air and grounds"  and that as a result,  "the  DOE [City of Chicago Department of Environment] and ILEPA [Illinois Environmental Protection Agency] "received hundreds of complaints about the Drum Reconditioning Plant over the years from neighborhood residents and workers who complained of black, bluish-gray, and white smoke from the open head drum incinerator stack, strong paint odors from the spray paint booths and baking ovens, and chemical, solvent and noxious odors present throughout the neighborhood."  (Compl. ¶ 55)

22.     Plaintiffs further allege that DOE inspectors "conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, chemical haze just north of the facility, black or white smoke coming from the yard, and drum burner incinerator stacks, bluish-gray smoke coming from vents above the tight-head building, white smoke with bluish tints coming from the open head exhaust vents, process water from the yard flowing offsite and into public sewers, liquid waste spillage throughout the facility, adjacent properties and public ways, strong chemical smells throughout the plan, uncovered drums scattered throughout the plant, unmarked drums, and evidence of long-term storage of unacceptable/heavy drums."  (Compl. ¶ 56)

23.     Plaintiffs also allege that on February 25, 1999, the City of Chicago filed a lawsuit alleging that the Acme Barrel facility operated in such a manner as to constitute a common-law nuisance.  (Compl. ¶ 57)

24.     Plaintiffs allege that Plaintiffs and/or Plaintiffs' Decedents lived and/or worked in the vicinity of the Acme Barrel facility at some time during the period of 1950 through the present.

25.     Plaintiffs' own allegations establish that Plaintiffs and/or Plaintiffs' Decedents "knew or should have known that operational practices at the [Acme Barrel facility] could result in the release of pollutants, hazardous substances, irritants, and contaminants into the air, soil or groundwater."

26.     Plaintiffs' own allegations establish that Plaintiffs and/or Plaintiffs' Decedents "knew or should have known that the persons in the surrounding neighborhood were at risk of

being exposed to discharged pollutants, hazardous substances, irritants and contaminants from" the Acme Barrel facility. (Compl. ¶ 60)

27.     Plaintiffs' own allegations establish that Plaintiffs and/or Plaintiffs' Decedents "knew or should have known" that the "persons in the surrounding neighborhood were at risk of being exposed to the "discharged hazardous pollutants and substances from" the Acme Barrel facility. (Compl. ¶ 60)

28.     To the extent Plaintiffs' allegations are true, which 3M Company denies, Plaintiffs' injuries and Plaintiffs' Decedents' alleged injuries were caused, in whole or in part, by Plaintiffs' and/or Plaintiffs' Decedents' own negligence in failing to take reasonable measures to protect themselves or other action in the face of the alleged risks and hazards claimed by, and known to, Plaintiffs and Plaintiffs' Decedents.

## FIFTH DEFENSE

29.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

30.     Plaintiffs allege that the Acme Barrel facility "discharged hazardous substances, irritants, and contaminants into the surrounding neighborhood through the air and grounds" and that as a result, "the DOE [City of Chicago Department of Environment] and ILEPA [Illinois Environmental Protection Agency] "received hundreds of complaints about the Drum Reconditioning Plant over the years from neighborhood residents and workers who complained of black, bluish-gray, and white smoke from the open head drum incinerator stack, strong paint odors from the spray paint booths and baking ovens, and chemical, solvent and noxious odors present throughout the neighborhood." (Compl. ¶ 55)

31.     Plaintiffs further allege that DOE inspectors "conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, chemical haze just north of the facility, black or white smoke coming from the yard, and drum burner incinerator stacks, bluish-gray smoke coming from vents above the tight-head building, white smoke with bluish tints coming from the open head exhaust vents, process water from the yard flowing offsite and into public sewers, liquid waste spillage throughout the facility, adjacent properties and public ways, strong chemical smells throughout the plan, uncovered drums scattered throughout the plant, unmarked drums, and evidence of long-term storage of unacceptable/heavy drums."  (Compl. ¶ 56)

32.     Plaintiffs also allege that on February 25, 1999, the City of Chicago filed a lawsuit alleging that the Acme Barrel facility operated in such a manner as to constitute a common-law nuisance.  (Compl. ¶ 57)

33.     Plaintiffs' own allegations establish that Plaintiffs and/or Plaintiffs' Decedents "knew or should have known" that the "persons in the surrounding neighborhood were at risk of being exposed to the "discharged hazardous pollutants and substances from" the Acme Barrel facility. (Compl. ¶ 60)

34.     To the extent Plaintiffs' allegations are true, which 3M Company denies, Plaintiffs' alleged injuries and Plaintiffs' Decedents' alleged injuries were caused, in whole or in part, by Plaintiffs' and Plaintiffs' Decedents' voluntary assumption of risks and hazards known by Plaintiffs and Plaintiffs' Decedents.

## SIXTH DEFENSE

35.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

36.     The area surrounding the Acme Barrel facility does, and has in the past, contained a number of business and commercial/industrial operations.

37.     On information and belief, Plaintiffs and/or Plaintiffs' Decedents were exposed to various substances and materials from other industrial/commercial operations.

38.     In addition, Plaintiffs and/or their Decedents are or were unique individuals, with unique personal, family, and medical histories, and could therefore develop a wide variety of conditions, illnesses, and diseases for any of a number of reasons or no reason at all.

39.     Any injuries Plaintiffs claim they and/or their Decedents to have suffered are due solely, or in substantial part, to either conditions, illnesses, diseases and/or other causes, such as exposure to substances and materials from other industrial/commercial operations, which are not related to or connected with any conduct by 3M Company, any products used or distributed by 3M Company, or any barrels or other containers sold by 3M Company to the Acme Barrel facility at any relevant time.

## SEVENTH DEFENSE

40.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

41.     The geographic area in which the Acme Barrel facility was located was and is an industrial area which many industrial facilities have operated over the years.

42.     Businesses or facilities other than the Acme Barrel facility, but located in the same geographic area as the Acme Barrel facility, such as the Cook County Medical Center, have been known to release potentially dangerous chemicals into the environment.

43.    To the extent that Plaintiffs and/or their Decedents claim to suffer or have suffered injuries due to the exposure to toxic or hazardous chemicals, there is no basis to conclude that any such injuries are traceable to any product or action of 3M.

44.    Plaintiffs have failed to join all necessary and indispensable parties whose acts or omissions caused, or contributed to, in whole or part, Plaintiffs' alleged damages.

## EIGHTH DEFENSE

45.    3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

46.    This action was not commenced until April 9, 2007.

47.    Claims against 3M Company for personal injury based on actions, omissions, or other conduct by 3M Company or anyone else prior to April 9, 2005, are barred by the applicable statute(s) of limitations.

48.    Even if the filing of *Tuff v. Acme Barrel Co.* on May 23, 2003, tolled the limitations period for Plaintiffs, and 3M Company denies that it did, Plaintiffs' claims against 3M Company for personal injury based on actions, omissions, or other conduct by 3M Company or anyone else prior to May 23, 2001, are barred by the applicable statute(s) of limitations.

## NINTH DEFENSE

49.    3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

50.    Plaintiffs allege that the Acme Barrel facility "discharged hazardous substances, irritants, and contaminants into the surrounding neighborhood through the air and grounds" and that as a result, "the DOE [City of Chicago Department of Environment] and ILEPA [Illinois Environmental Protection Agency] "received hundreds of complaints about the Drum

Reconditioning Plant over the years from neighborhood residents and workers who complained of black, bluish-gray, and white smoke from the open head drum incinerator stack, strong paint odors from the spray paint booths and baking ovens, and chemical, solvent and noxious odors present throughout the neighborhood." (Compl. ¶ 55)

51.     Plaintiffs further allege that DOE inspectors "conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, chemical haze just north of the facility, black or white smoke coming from the yard, and drum burner incinerator stacks, bluish-gray smoke coming from vents above the tight-head building, white smoke with bluish tints coming from the open head exhaust vents, process water from the yard flowing offsite and into public sewers, liquid waste spillage throughout the facility, adjacent properties and public ways, strong chemical smells throughout the plan, uncovered drums scattered throughout the plant, unmarked drums, and evidence of long-term storage of unacceptable/heavy drums." (Compl. ¶ 56)

52.     Plaintiffs also allege that on February 25, 1999, the City of Chicago filed a lawsuit alleging that the Acme Barrel facility operated in such a manner as to constitute a common-law nuisance. (Compl. ¶ 57)

53.     Plaintiffs' own allegations establish that Plaintiffs and/or their Decedent "knew or should have known" that the "persons in the surrounding neighborhood were at risk of being exposed to the "discharged hazardous pollutants and substances from" the Acme Barrel facility. (Compl. ¶ 60)

54.     Despite this knowledge, Plaintiffs did not commence this action until April 9, 2007.

56.     Plaintiffs' claims against 3M Company are barred by doctrine of laches, waiver, and/or estoppel because Plaintiffs unreasonably delayed bringing this suit and thereby prejudiced 3M Company.

57.     Even if the timeliness of Plaintiff's claims is judged by to the filing of *Tuff v. Acme Barrel Co.* on May 23, 2003, and 3M Company denies that it should be, Plaintiff's claims against 3M Company are barred by doctrine of laches, waiver, and/or estoppel because Plaintiff unreasonably delayed bringing this suit and thereby prejudiced 3M Company.

## TENTH DEFENSE

58.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

59.     Plaintiffs' claims against 3M fail because at all relevant times 3M Company complied with all applicable federal, state and local laws, regulations, and ordinances.

## ELEVENTH DEFENSE

60.     3M Company incorporates the allegations in Paragraphs 1-13 of its Defenses and its responses to the allegations in Plaintiffs' Complaint.

61.     Plaintiffs allege that the Acme Barrel facility "discharged hazardous substances, irritants, and contaminants into the surrounding neighborhood through the air and grounds" and that as a result, "the DOE [City of Chicago Department of Environment] and ILEPA [Illinois Environmental Protection Agency] "received hundreds of complaints about the Drum Reconditioning Plant over the years from neighborhood residents and workers who complained of black, bluish-gray, and white smoke from the open head drum incinerator stack, strong paint odors from the spray paint booths and baking ovens, and chemical, solvent and noxious odors present throughout the neighborhood." (Compl. ¶ 55)

62.    Plaintiffs further allege that DOE inspectors "conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, conducted hundreds of inspections over the years at the Drum Reconditioning Plant and documented, on numerous occasions, chemical haze just north of the facility, black or white smoke coming from the yard, and drum burner incinerator stacks, bluish-gray smoke coming from vents above the tight-head building, white smoke with bluish tints coming from the open head exhaust vents, process water from the yard flowing offsite and into public sewers, liquid waste spillage throughout the facility, adjacent properties and public ways, strong chemical smells throughout the plan, uncovered drums scattered throughout the plant, unmarked drums, and evidence of long-term storage of unacceptable/heavy drums." (Compl. ¶ 56)

63.    Plaintiffs' own allegations establish that Plaintiffs and/or their Decedent "knew or should have known" that the "persons in the surrounding neighborhood were at risk of being exposed to the discharged hazardous pollutants and substances from" the Acme Barrel facility. (Compl. ¶ 60)

64.    Plaintiffs' claims against 3M Company fail, in whole or part, because Plaintiffs and Plaintiffs' Decedents failed to mitigate their damages, if any.

## TWELFTH DEFENSE

65.    To the extent Plaintiffs assert claims on behalf of the estates of persons who have died, those claims are barred because Plaintiffs are not duly appointed special administrators and/or personal representatives and therefore lack standing.

WHEREFORE, Defendant 3M Company prays for judgment as follows:

1.    That Plaintiffs' Complaint be dismissed with prejudice;

2.    That judgment be entered in 3M Company's favor;

3.      That 3M Company be awarded costs and fees incurred in this action; and

4.      For such other and further relief this Court deems just and proper.

## DEFENDANT 3M COMPANY'S CROSS-CLAIM
## AGAINST THE ACME DEFENDANTS

3M Company asserts its cross-claim against defendants CHICAGO DRUM, INC.;

INDUSTRIAL CONTAINER SERVICES, LLC, INDUSTRIAL CONTAINER SERVICES-IL,

LLC; IFCO SYSTEMS NV; IFCO SYSTEMS ILLINOIS, INC.; IFCO SYSTEMS

NORTH AMERICA, INC; DRUM HOLDING COMPANY, INC.; and ESP REALTY

CORP., INC. (collectively, the "Acme Defendants"), and states as follows:

## THE PARTIES

1.      3M Company is a Delaware corporation with its principal place of business in

Minnesota.   3M is authorized to do business in Illinois.

2.      Defendant Chicago Drum, Inc., is alleged to be an Illinois corporation authorized

to do business in Illinois and is alleged to also be known as Acme Barrel Company, IFCO ICS-

Chicago Inc, and IFCO Systems Chicago Inc.

3.      Defendant Industrial Container Services, LLC is alleged to be a Delaware

corporation authorized to do business in Illinois.

4.      Defendant Industrial Container Services-Chicago, LLC is alleged to be a

Delaware corporation authorized to do business in Illinois.

5.      Defendant Industrial Container Services-IL, LLC is alleged to be a Delaware

corporation authorized to do business in Illinois.

6.      Defendant IFCO Systems NV is alleged to be a Netherlands corporation

authorized to do business in Illinois.

7.      Defendant IFCO Systems Illinois, Inc., is alleged to be an Illinois corporation authorized to do business in Illinois and is alleged to be formerly known as IFCO ICS-Illinois, Inc., and McCook Drum & Barrel Co., Inc.

8.      Defendant IFCO Systems North America, Inc. is alleged to be a Delaware corporation authorized to do business in Illinois and is alleged to be formerly known as PalEx, Inc., Silver Oak Acquisition, Inc., and IFCO Systems North-America.

9.      Defendant Drum Holding Company, Inc. is alleged to be a Delaware corporation authorized to do business in Illinois and is alleged to be formerly known as IFCO Systems Holding Company, Inc., IFCO Industrial Container Systems Holding Company, Inc., and Palex Container Systems, Inc.

10.     Defendant ESP Realty Corp., Inc. is alleged to be an Illinois corporation authorized to do business in Illinois.

## JURISDICTION & VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1441.

## FACTUAL ALLEGATIONS

13.     The Acme Defendants owned and operated a facility, which refurbished "empty drums," as defined and permitted by federal regulations, located at 2300 W. 13th Street, Chicago, Illinois.

14.     Since its founding in 1894, the Acme Barrel Company has provided drum and container refurbishing services to numerous customers.

15. Customers of Acme Barrel Company were just that—customers. Acme Barrel Company provided the drum and container refurbishing services. Customers merely paid Acme Barrel Company to provide those services.

16. 3M Company was a customer of Acme Barrel Company. At certain times, various 3M Company manufacturing facilities sent "empty drums," as defined and permitted by federal regulations, to the Acme Barrel facility located at 2300 W. 13th Street, Chicago, Illinois for refurbishing.

17. 3M Company paid Acme Barrel Company to refurbish the "empty drums" it sent to the Acme Barrel facility.

18. At all relevant times, Acme Barrel Company held itself out to 3M Company as compliant with all applicable federal, state and local statutes, laws, regulations and ordinances, including all permit and licensing requirements. 3M Company has no reason to believe this was not true and correct.

19. At all relevant times, all of the operations of the Acme Barrel facility were under the sole and exclusive control of the Acme Barrel Company. 3M Company did not own, operate, control, oversee, influence, or have any other connection to the Acme Barrel facility or the operations at that facility.

20. Plaintiffs allege that, at various unspecified times, there were emissions and releases of allegedly toxic substances at the Acme Barrel facility. 3M Company denies those allegations, but, if true, 3M Company has no knowledge of and no role in any alleged emissions of any allegedly toxic or hazardous substances from the Acme Barrel facility.

21.     3M Company did not introduce, release, or allow any contaminants, toxic substances or chemicals to be released into the environment at or around either the Acme Barrel facility or any nearby residences, businesses, or buildings.

22.     3M Company has never been cited by any federal, state or local authority for any violations of federal, state, or local statutes, regulations, or law for sending drums and containers to the Acme Barrel facility for refurbishing, and has never been cited for any other activity relating to the Acme Barrel facility.

23.     According to Plaintiffs' allegations in Count I, Paragraph 4 of the Complaint, the Acme Barrel facility "discharged hazardous substances, irritants, and contaminants into the surrounding neighborhood through the air and grounds, including, but not limited to, Volatile Organic Compounds (VOC's), Semi Volatile Chemicals (SVOC's), Polycyclic Aromatic Hydrocarbons (PAH7s), Pesticides, Polychlorinated biphenyIs (PCB's) Metals, and Dioxins and Furans. Specific chemicals include, but are not limited to, Benzene, Trichloroethene(TCE), Tetrachloroethene (PCE), Vinyl Chloride, Methyl Ethyl Ketone(MEK), Ethylbenzene, Xylene, - Toluene, Aliphatic Petroleum Distillates, 1,2-dichloroethane, Acenapthalene, Acrylic Acid, Acrylonitrile, AIkyd resins, Aluminum fumes and dusts, Anthracene, Ammonia, Antimony and related compounds, Arsenic, Barium, Benzo(a) anthracene, Benzo(a) fluoranthene, benzo(a)pyrene, dibenzo(a,h) Anthracene, Benzo(b)fluoranthene, Benzo(g,h,I) Perylene, Benzo(k) Fluoranthene, Beryllium, Bis-2-Ethylhexyl Adipate, Bis-2-Ethylhexyl Phthalate, Butyl Benzyl Phthalate, ButyI Acrylate, Butyl Methacrylate-methyl Methacrylate polymers, C.I. Pigments black 2, blue 15, green 7, yellow 34, Cadmium, Carbazole, Carbon Black, Carbon Disulfide, Catechol, Propylene Glycol mono methyl ether(dipropy1ene glycol ethyl ether), Chloroethane, Chloromethane, Chromium and chromium compounds, Hexavalent Chromium,

Chrysene, cis- l,2-dichloroethylene, Cobalt, Copper, Cumene, Cyclohexane, Dibromofluoromethane, Methylene Chloride, Diethylene glycol monobutyl ether acetate, Diisocyanates, Di-n-butyl phthalate, Di-octyI phthalate, Ethylene glycol, Ethylmethacrylate monomers, Fluoranthene, Fluorene, Formaldehyde, Heavy Aromatic solvent naphtha, Indeno(l,2,3-cd)pyrene, Lead and lead compounds, Methyl Isobutyl Ketone, Methyl acrylate, Naphthalene, Nickel and nickel compounds, Cresols, Phenanthrene, Phenol and phenolic compounds, Selenium, Silicone and silicone polymers, Solvent naphthas, Styrene, Tetrachloroethane, Tetrachloro-metaxylene, Zinc, Vinyl Chloride-vinyl acetate monomers, Methyl Propyl Ketone, Isopropanol, Isobutyl Acetate, 1,2,4-Trimethylbenzene, Aromatic naphtha, Triethyl mine, ButanoI, N-hexane, Ethylene Glycol Monobutyl Ether, Methyl N-Amyl Ketone, Dimethylethanolamine, Diethylaminoethanol, Butyl Acetate, Ethyl acrylate, 2-butoxyethanol (Butyl cellosolve), Sec-butyl alcohol, Acetone, Synthetic rubber and resins, Diacetone Alcohol, 1-Butanol, Ethanol, Mercury, Strontium, Asbestos, Crystalline silica, Bisphenol A, DDE, DDT, DDD, Heptachlor, Heptane, Methanol, Tetrahydrofuran, Chlorothalonil, and Toluene Diisocyanates."

24.     According to Plaintiffs' allegations in Paragraph 59 of their Complaint, on or about May 23, 2001, a "major release of hazardous pollutants and substances occurred" at the Acme Barrel facility "causing high concentrations of hazardous pollutants and substances to spread over the area" and "caused a neighborhood building to be evacuated and triggered responses by the Chicago Department of Environment, Chicago Fire Department, and the Chicago Police Department."

25.     According to Plaintiffs' allegations in Paragraph 4 and Count I, Paragraph 3 of their Complaint, the Acme Defendants' acceptance, handling, and processing of steel barrels,

Intermediate Bulk Containers, pails, and other industrial containers was "in violation of 42 U.S.C. § 6901 et seq., 415 ILCS 5/20, et seq., and applicable Federal and State Code Provisions."

26.     According to Plaintiffs' allegations in Counts I-XXVIII of the Complaint, as a result of the activities at the Acme Barrel facility, Plaintiffs and/or their Decedents were exposed to "pollutants, hazardous substances, irritants, and contaminants," incurred pain and suffering, and in the cases of Plaintiffs' Decedents, died.

27.     None of the drums or other containers 3M Company delivered or caused to be delivered to the Acme Barrel facility contained contaminants, toxic or hazardous substances or chemicals that caused or could have caused Plaintiffs and/or Plaintiffs' Decedents' alleged injuries.

28.     At all relevant times, 3M Company did not introduce, release, or allow any contaminants, toxic substances or chemicals into the environment in or around the Acme Barrel facility or the surrounding residences, businesses or buildings.

29.     Plaintiffs have brought claims for wrongful death and survival against 3M Company, other customers of the Acme Barrel facility, and the Acme Defendants.

## COUNT 1 – CONTRIBUTION/INDEMNIFICATION

30.     3M Company restates paragraphs 1-29 of its Counterclaim as if pleaded herein.

31.     To the extent Plaintiffs' allegations in the Complaint about the Acme Defendants' conduct are true, the Acme Defendants were negligent in the handling, storage, maintenance, processing and/or refurbishing of the barrels, drums and containers, including containers sold by 3M Company, as a customer of Acme, to the Acme Defendants. Therefore the Acme Defendants are liable to 3M Company for indemnity for any and all damages awarded to Plaintiffs and

against 3M Company in this action, including its costs and fees in connection therewith, or, in the alternative, for contribution for such part of those damages that are attributable to the negligence of the Acme Defendants.

WHEREFORE, Defendant 3M Company, prays for judgment as follows:

1. That the Acme Defendants indemnify 3M Company for any liability for Plaintiffs' claims in the Complaint;

2. That the Acme Defendants are liable to 3M Company for contribution for any judgment rendered against 3M Company in favor of Plaintiffs;

3. Awarding 3M Company costs and attorneys fees in connection with maintaining this action; and

4. Any other relief that this Honorable Court deems just.

## **JURY DEMAND**

3M demands a trial by jury for its cross-claims.

Dated:  October 21, 2008                  Respectfully submitted,

/s/ Benjamin W. Hulse
Mark S. Lillie, P.C.
James J. Boland
Benjamin W. Hulse
Khara Coleman
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601
(Firm No. 90443)
Phone:  (312) 861-2000
Fax:  (312) 861-2200
*Attorneys for Defendant 3M Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day October, 2008, he electronically filed the foregoing documents with the Clerk of the Court using the CM/ECF system. The undersigned further certifies that a true and correct copy of the foregoing document has also been served by U.S. Mail on certain counsel as indicated below, on October 21, 2008:

Louis C. Cairo
Colin O'Malley
GOLDBERG, WEISMAN & CAIRO, LTD.
One East Wacker Drive, 34th Floor
Chicago, IL 60601
*Attorneys for Plaintiffs*

Francis P. Kasbohm
Michael A. Knobloch
FRATERRIGO, BERANEK, FEIEREISEL &
  KASBOHM
55 West Monroe Street, Suite 3400
Chicago, IL 60603
*Attorney for Plaintiffs*

Thomas A. Andreoli
Stefanie R. Glover
SONNENSCHEIN NATH &
  ROSENTHAL LLP
8000 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
*Attorneys for Sun Chemical Corp.*

Brian J. Masternak
WARNER NORCROSS & JUDD
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
*Attorney for DeWitt Barrels, Inc.*
By U.S. Mail

J. Patrick Herald
Douglas B. Sanders
Michael McCutcheon
BAKER & MCKENZIE LLP
One Prudential Plaza
130 East Randolph Drive
Chicago, IL 60601
*Attorneys for Chicago Drum, Inc., Illinois
Drum, Inc., Drum Holding Company, Inc.,
Elliot Pearlman, IFCO Systems North
America, Inc., Industrial Containers
Systems, LLC, Industrial Container
Systems – IL, LLC*

Michael A. Pope, P.C.
Peter Schutzel
McDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, IL 60606
*Attorneys for BASF and ExxonMobil*

Carol Hogan
Angela M. Muccino
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
*Attorneys for Sherwin-Williams Co*

*/s/ Benjamin W. Hulse*