**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BOBBY GILES, individually, and as Special Administrator of the Estate of JANNIE GILES, Deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 08 C 4654 |
| CHICAGO DRUM, INC., *et al.*, | ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) ) | |
| RONALD JONES JR., Special Administrator for the Estate of KEJUAN DICKENS, Deceased, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 4657 |
| CHICAGO DRUM, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |
| MARY E. TUFF, as Special Administrator for the Estate of Douglas Tuff, Deceased, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 4660 |
| CHICAGO DRUM, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in these cases are 77 Illinois residents who lived or worked near the Acme Barrel Drum Reconditioning Facility on Chicago's near west side. Acme Barrel was engaged in the business of cleaning and reconditioning used industrial containers that had contained hazardous or toxic chemicals or waste products. The cleaning process involved incineration or flushing with

a caustic solution; the drums were then painted and sold to industrial manufacturers for reuse. Plaintiffs in these cases claim that Acme operated as an unlicensed hazardous waste disposal facility in violation of local, state, and federal environmental laws and that Plaintiff suffered harm from the resulting contamination. The Defendants are Acme's owners and operators and the industrial customers.

The cases have been pending in the Circuit Court of Cook County since May 2003, when the first of three cases now consolidated here was filed as a class action. A second class action was filed a month later, and a subset of the plaintiffs in the first complaint filed a third case in April 2007. Then in May 2007, the state court dismissed Plaintiff's class allegations, leaving seventy-seven individual claims for relief.

These claims presumably would have remained in state court were it not for the filing of Plaintiffs' Sixth Amended Complaint on August 1, 2008. In that complaint, Plaintiffs alleged for the first time claims of civil conspiracy. Plaintiffs allege generally that Defendants conspired to unlawfully process hazardous wastes, in violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq*. and the Illinois Environmental Protection Act ("ILEPA"), 415 ILCS 5/20 *et seq*. Two weeks after the filing of the Sixth Amended Complaint, Defendants removed the case to federal court. They contend this court has federal question jurisdiction because the complaint presents a federal conspiracy claim which implicates "significant federal issues" as contemplated in *Grable & Sons Metal Prods., Inc. v. Darue Engineering and Mfg.*, 545 U.S. 308 (2005).

Plaintiffs have moved for an order remanding the case. They cite cases in which citizens have brought state law tort claims against plant operators who released hazardous substances into the soil, air or groundwater. Courts have uniformly held that a reference to federal environmental statutes, including RCRA, in plaintiffs' negligence claims is insufficient to confer federal question jurisdiction. *See Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148 (4th Cir. 1994);

*Polcha v. A T & T Nassau Metals Corp.*, 837 F. Supp. 94 (M.D. Pa. 1993) (remanding state law negligence claim to state court, noting that RCRA creates no private cause of action for damages).

Defendants urge that Plaintiffs' conspiracy allegations, and the Supreme Court's decision in *Grable & Sons,* change the landscape on this issue. In *Grable & Sons*, the Court acknowledged that federal question jurisdiction ordinarily requires a cause of action created by federal law. In addition, however, the Court carved out a narrow class of state law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. For the reasons explained here, the court concludes the rationale of *Grable & Sons* does not support the exercise of federal jurisdiction in the circumstances of these cases, and orders them remanded to state court.

## DISCUSSION

A case arises under federal law if it appears on the face of the plaintiff's complaint either that a federal law creates the cause of action or, that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *See* 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3562 (2d Ed. 1984 & Supp. 2008); citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983); *see also* ERWIN CHEMERINKSY, FEDERAL JURISDICTION § 5.2 (5th Ed.). Removal is appropriate only if the suit could originally have been filed in federal court. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804 (1986). Courts generally disfavor removal, and recognize that the "removal statute should be construed narrowly and against removal." *Illinois v. Kerr-McGee Chem. Corp.*, 677 F.2d 571 (7th Cir. 1982).

**_Grable & Sons_ recognized federal jurisdiction over state quiet title action**.

Because RCRA does not create a private cause of action for conspiracy, Defendants necessarily assert that resolution of Plaintiffs' state conspiracy claim implicates a substantial federal interest. They cite *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). *Grable* held that the appropriate inquiry for determining whether a complaint raises a substantial question of federal law is whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Thus, after *Grable*, federal question jurisdiction over a state action will exist where (1) there is a substantial and disputed federal issue, and (2) the exercise of federal jurisdiction will not upset the balance of labor between state and federal courts.

In *Grable,* the IRS had seized plaintiff's property and given notice of its sale to the defendant only by certified mail. Plaintiff brought a quiet title action in state court, arguing that defendant's title was invalid because federal law requires IRS to give notice by personal service. *Id.* at 310-11. The Court concluded that the case warranted federal jurisdiction in part because the federal statute was not only "actually in dispute" but was also "the only legal or factual issue contested in the case." *Id.* at 315. The court also noted the federal government's interest in vindicating its own administrative action: "The Government has a strong interest in 'prompt and certain collection of delinquent taxes,' and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers . . . to satisfy themselves that the [Internal Revenue] Service has . . . good title." *Id.* at 315 (citations omitted). Finally, the court emphasized the rarity of this kind of case and the ultimately "microscopic effect" the exercise of federal jurisdiction would have on the "federal-state division of labor." *Id.*

Significantly, *Grable* distinguished, but did not overrule, the Court's earlier holding in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). In *Merrell Dow,* consumers had

sued a drug manufacturer in state court, alleging that the drug caused birth defects. The drug manufacturer removed the case to federal court based in part on plaintiffs' allegations that the manufacturer's violation of the federal Food, Drug and Cosmetic Act constituted negligence. The Sixth Circuit concluded that removal was improper. Affirming that conclusion, the Supreme Court noted that Congress declined to create a private right of action for the alleged FDC Act violation; under those circumstances, plaintiffs' allegation of an FDC Act violation as an element of their state tort claim was insufficient to support federal jurisdiction. 478 U.S. 804. Seizing upon this rationale, the plaintiff in *Grable & Sons* noted that federal law also does not provide a right of action for quiet title. The Court was unpersuaded; it noted that the absence of a private cause of action in *Merrell Dow* was important but not determinative of whether a state-law claim could ever trigger federal jurisdiction. Rather, the absence of a federal private cause of action was relevant insofar as granting federal jurisdiction would have resulted in "a potentially enormous shift of traditionally state cases into federal court," an outcome Congress could have sanctioned (but did not) by creating a private right to sue. 545 U.S. at 319. Allowing federal-question jurisdiction with respect to Grable's claims, by contrast, would have comparatively little impact on the federal case load, as state title cases rarely raise actually disputed matters of federal law. *Id.* at 315.

**The *Grable* standard for exercise of federal jurisdiction is stringently applied.**

A year later, the Supreme Court distinguished *Grable* in *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006). In that case, Empire Healthchoice, the health insurer for federal employees, sued to recover health insurance benefits it had paid; the insurance beneficiary had recovered damages for his injuries in a state court tort action, but then refused to reimburse the employer as required by the terms of the insurance agreement. The insurer's claim arose under state contract law, but the insurer noted that the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, and the FEHBA was a necessary element of the insurer's claim. The Court, however, rejected any

5

analogy to *Grable*, emphasizing "the special and small category" to which it belonged. *Id.* at 699. The Court noted, first, that the meaning of the federal tax provision in *Grable* was the only contested issue in that case. Further, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases." *Id.* at 700-01 (quotations and citations omitted). Empire's reimbursement claim, on the other hand, was "fact-bound and situation-specific," with the parties haggling over the existence of overcharges and duplicative charges by the insurer. *Id.* at 701. Also in contrast to *Grable*, the claim in *Empire HealthChoice* was not triggered "by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court." *Id.* at 700. The ultimate issue was not a discrete matter of federal law, but rather the share of the settlement owed to Empire under the insurance contract. *Id.* The Court saw no reason why the state court was not competent to apply whatever federal law was required to resolve the amount of the insurer's reimbursement claim.

Lower courts have been divided in their application of *Grable*, with some construing its holding narrowly in light of *Merrell Dow* and *Empire Healthchoice* and others upholding federal question jurisdiction in circumstances where a federal statute is an element of a state claim but does not itself create a private cause of action. *See* 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3262 nn.75-76 (2d Ed. Supp. 2008). As discussed below, the Seventh Circuit has adopted a narrow interpretation of *Grable*. In fact, not a single case in this Circuit to date has upheld federal-question jurisdiction over a state law claim under the *Grable* rationale.

The only Seventh Circuit case directly addressing *Grable* involved a personal injury action arising from injuries sustained in a plane crash. *Bennett v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007). The defendants–the airline, the aircraft manufacturer, and the City of Chicago–removed the case to federal court on the theory that federal aviation standards governed the

defendants' conduct. Citing *Empire Healthchoice*, the Court of Appeals noted that the case did not involve an actually disputed matter of federal law, but rather "a fact-specific application of rules that come from both federal and state law. . . ." *Id.* at 910. The circumstances of the case were so unique that "a search for a 'uniform federal rule' to govern such a situation would be a hunt for a will-o'-the-wisp." *Id.* at 912. Taking a page from *Merrell Dow*, the court inferred congressional intent to limit federal jurisdiction from on 28 U.S.C. § 1369, which created a federal cause of action where a single air crash results in at least 75 fatalities and there is minimal diversity. These provisions, the Seventh Circuit reasoned, reflected "a conscious legislative choice" not to open the federal courts to every aviation case. *Id.* at 911. True, some of the applicable standards of care were furnished by FAA regulations; but the fact "[t]hat some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law." *Id.* at 912; *see also Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 729-31 (N.D. Ill. 2007) (anticipating *Bennett* in declining to find federal-question jurisdiction in aviation case on grounds that federal law was not disputed, and exercising jurisdiction would upset the "'congressionally approved balance of federal and state judicial responsibilities.'" (quoting *Grable*, 545 U.S. at 314)).

District courts in the Seventh Circuit have been similarly conservative in their application of *Grable*, particularly where federal law is merely the source of a duty under state law. *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1094 (S.D. Ill. 2007) (rejecting federal question jurisdiction where plaintiff's complaint cited a "a lone federal regulation as an element of a state-law tort claim"). In *Atanus v. S&C Elec. Co.*, 454 F. Supp. 2d 753 (N.D. Ill. 2006), plaintiff held two jobs until an investigation of his workers' compensation claim against one employer resulted in a second employer's discovery that he had been leaving work early. Plaintiff brought an action for tortious interference and civil conspiracy against both of his former employers, alleging that the first employer's disclosure of his personnel information to the second employer violated federal regulations. Defendants removed the case to federal court, but the district court remanded it. The

7

court observed that to prove his conspiracy claim, plaintiff must establish an agreement to commit tortious conduct; though identified in the complaint, the violation of a federal regulation was not in itself a tort. Put another way, plaintiffs' claim did not turn on the violation of a federal law, but rather on the existence of some unlawful act in furtherance of the conspiracy—in this case, tortious interference with employment relations. *Id.* at 756-67. The relevant inquiry was whether defendants' conduct in sharing plaintiff's employment records constituted tortious interference. *Id.* That defendants may also have violated a federal regulation prohibiting the disclosure of sensitive information was immaterial to the success of the state conspiracy claim. *See also Lancaster v. Astellas Pharma, Inc.*, No. 08-cv-0133-MJR, 2008 WL 4378441, at *4 (S.D. Ill. Sept. 23, 2008) (noting "the mere fact that a state court may have to reference federal regulations in determining the outcome of a claim is not sufficient by itself to create a substantial federal question under *Grable*"); *Wagner v. Wisconsin Auto Title Loans, Inc.*, 584 F. Supp. 2d 1123, 1125 (E.D. Wis. Sept. 15, 2008) (incorporation of federal regulation though state statute insufficient to create disputed issue of federal law where alleged conduct, if true, would indisputably violate federal statute); *Orbitz, LLC v. Worldspan, L.P.*, 425 F. Supp. 2d 929 (N.D. Ill. 2006) (declining to exercise federal question jurisdiction where plaintiffs' claim under the Illinois Consumer Fraud and Deceptive Business Practices Act alleged violation of federal regulations but resolution of claim turned on showing of deceptive conduct).

District courts have also routinely weighed the importance of the federal-state balance in rejecting federal question jurisdiction. In *Kuntz v. Illinois Central R. Co.*, 469 F. Supp. 2d 586 (S.D. Ill. 2007), an injured motorist filed a state court negligence action against the railroad. The railroad removed the case to federal court, but the court remanded it. The court found no substantial and disputed federal issue, and noted that the Federal Railroad Safety Act (FRSA) did not provide a private right of action, the claims arose under state law, and no claims required interpretation of the FRSA. Recognizing federal jurisdiction in these circumstances would, in the court's view, be "highly

disruptive of the proper division of labor between federal courts and state courts," given the interrelatedness of state safety regulations and the FRSA. *Id.* at 598. Other cases analyzing *Grable* have come to similar conclusions regarding the balance of federal and state interests. *Homecomings Financial, LLC v. Patterson*, No. 08-cv-0455-DFH-WTL, 2008 WL 2003092, at *2 (S.D. Ind. July 21, 2008) (noting that recognizing federal-question jurisdiction on the basis of a federal Truth in Lending Act defense "would pose an even more serious risk of upsetting the federal-state balance than was posed by *Empire Healthchoice, Bennett,* or *Merrell Dow*"); *McCormick v. Excel Corp.*, 413 F. Supp. 2d 967, 969-70 (E.D. Wis. 2006) (in state tort claims brought by consumers of contaminated meat, violation of a standard in the Federal Meat Inspection Act did not present an "overriding federal interest" where Congress did not create a federal cause of action and where the claimed "substantial" issue–the meaning of "adulterated" under the Act—had already been resolved by the state appellate court at an earlier stage of the litigation.)

Even those courts faced with a disputed issue of federal law have concluded that the issue is not so substantial as to warrant the exercise of federal jurisdiction, or that such exercise would disrupt the federal-state division of labor. In *Samuel Trading, LLC v. The Diversified Group, Inc.*, 420 F. Supp. 2d 885 (N.D. Ill. 2006), where plaintiff businesses brought state claims against their tax advisors, the court acknowledged that plaintiffs' allegation that "defendants incorrectly interpreted the [federal] tax law" presented an actually disputed issue of federal law. *Id.* at 889-90. The issue was not substantial, however, because "it appear[ed] only in an alternate argument for relief." *Id.* "If a claim can be supported independently by both state and federal law theories, 'federal question jurisdiction does not attach because federal law is not a necessary element of the claim.'" *Id.* at 891 (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)). Because each of plaintiffs' claims presented at least one theory for relief that did not require interpretation of federal law, the court remanded the case to state court. *Id.*; *see also Collins v. Pontikes*, 447 F. Supp. 2d 895, 899-902 (N.D. Ill. 2006) (remand appropriate where plaintiffs' ability to prevail did not

9

rest solely on disputed issue of federal law); *cf. Blankenship v. Bridgestone Americas Holding, Inc.*, 467 F. Supp. 2d 886 (C.D. Ill. 2006) (no federal-question jurisdiction where interpretation of federal law pertaining to alleged violations of OSHA standards and to rights conferred by collective bargaining agreements, though relevant, was not necessary to resolve plaintiffs' state tort claims against their employer for fraudulent concealment, intentional misrepresentation, and battery).

In *State of Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815, 822 (W.D. Wis. 2005), the court found both a disputed and substantial issue of federal law where plaintiffs' state law claims for unjust enrichment, antitrust, fraud, and false advertising were all founded on the defendants' alleged overstatement of wholesale drug prices. The meaning of "average wholesale price" in the Medicare statute was disputed and essential to the resolution of plaintiffs' claim. *Id.* at 823. Nonetheless, the court held that plaintiffs' claim failed the second prong of the *Grable* test: The federal interest did not predominate because the disputed issue was of equal significance to both state and federal governments. Although Medicare is a federal program, "states play the primary role in apportioning Medicaid benefits within the broad parameters set by federal law." *Id.* at 823. Additionally, the court found significant the absence of a private right of action under the Medicare statute to recover for overpayments as well as Congress's decision not to preempt "the states' use of consumer protection statutes to police medical billing practices." *Id.* Second, the court observed that the case was "one of many that have been filed by states across the country" asserting similar violations, and shifting all these actions to federal court "would work a significant disruption in the division of labor between federal and state courts." *Id.* at 823-24.

**The *Grable* rationale does not support the exercise of federal jurisdiction in this case.**

These precedents counsel against the exercise of federal jurisdiction over Plaintiffs' state law conspiracy claim. In order to establish such a claim under Illinois law, a plaintiff must allege "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of

which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill.2d 302, 317, 807 N.E.2d 461, 470 (2004). Plaintiffs here allege that Defendants 3M Company and Acme, a company that refurbishes industrial drums, conspired to process heavy drums containing hazardous waste in violation of RCRA and the Illinois Environmental Protection Act (ILEPA), 415 ILCS 5/20, *et seq*, and that the negligent handling of these drums caused Plaintiffs' injuries. Defendant 3M Company was one of several companies that shipped drums containing hazardous waste to Acme for processing. Acme allegedly was not licensed to accept or process these drums, as required by RCRA and ILEPA. Further, Acme allegedly accepted drums from 3M Company without appropriate records and without charging 3M Company for processing, again in violation of RCRA and ILEPA. (Count XVII §§ 1-17, Pl. Giles's 2d Amd. Compl. at 89.) A federal law, the RCRA, is thus an element of Plaintiffs' state conspiracy claims.

At first blush, it appears from the face of the complaint that Plaintiffs have stated an alternative basis for the resolution of their claim—conspiracy to violate provisions of ILEPA. As noted, some authority concludes that remand is appropriate where plaintiff makes an alternative argument for relief that does not require the interpretation of a federal statute. *See Samuel Trading,* 420 F. Supp. 2d 885. As Defendant 3M Company notes, however, ILEPA was not in effect for at least part of the period covered by Plaintiffs' conspiracy claims. (Def.'s Opp. at 8.)[1] Thus, the court will presume that concerted action in violation of RCRA is the only basis for Plaintiffs' conspiracy claims before January 30, 1986.[2]

---

[1] Plaintiffs claim that the alleged conspiracy began in the early 1970s and continued until 2002 (Count XVII § 2, Pl. Giles's 2d Amd. Compl. at 87), but the EPA did not approve Illinois' state environmental program until January 31, 1986. 40 C.F.R. Part 271, 51 Fed. Reg. 3778 (Jan. 30, 1986).

[2] 3M Company further argues that even after becoming effective, the ILEPA, because approved by the EPA and subject to certain minimally restrictive requirements, has "the legal effect of federal law." (Def.'s Opp. at 8.) The cases Defendant cites in support of this argument, however, involve granting state-approved programs the same legal effect as RCRA for the purpose of
(continued...)

Defendant 3M Company contends, therefore, that Plaintiffs' case necessarily turns on the interpretation of a federal law. (Def.'s Opp. at 6-7.) In Illinois, a claim for civil conspiracy must allege at a minimum an agreement to engage in an unlawful act (or lawful act in an unlawful manner), and an act that both furthers the agreement and which is itself a tort. *See Scott v. Aldi, Inc.*, 301 Ill. App. 3d 459, 462, 703 N.E.2d 526, 529 (1st Dist. 1998) ("Once a defendant knowingly agrees with another to commit an unlawful act or a lawful act in an unlawful manner, that defendant may be held liable for any tortious act committed in furtherance of the conspiracy, whether such tortious act is intentional or negligent in nature." (citing *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 64, 645 N.E.2d 888, 894 (1994)).

As *Scott* and *Adcock* make clear, the act in furtherance of the conspiracy may be intentional or, as alleged here, negligent, but defendants cannot conspire to be negligent. Plaintiffs have alleged that Defendants in this case agreed to engage in processing hazardous waste, with customer Defendants shipping waste to Defendant Acme for processing. Citing only RCRA's policy of reducing "the present and future threat to human health and the environment," 42 U.S.C. § 6902(b), Plaintiffs urge that the processing of this waste violated provisions of both RCRA and ILEPA, provisions that, like the statutes in *Scott*, are "public safety statute[s], the violation of which is evidence of negligence." *Id.* at 463, 530. In other words, under Plaintiffs' theory, the processing of hazardous waste constitutes both the allegedly agreed-to unlawful conduct and the tortious act in furtherance of the agreement. It may, thus, indeed be necessary to resort to RCRA in deciding Plaintiffs' conspiracy claim.

The court nevertheless concludes that resolution of Plaintiffs' conspiracy claims does not

---

²(...continued)
bringing suit *in federal court*. In other words, these cases hold that provisions of state programs approved by the EPA are recognized at federal law, for example, for the purpose of bringing a citizen suit under the RCRA for violations of analogous provisions of a state program. They do not, as Defendant urges, make "[f]ederal case law the only basis for interpreting or applying [EPA-approved] rules." (Def.'s Opp. at 9.)

require the interpretation of a substantial issue of federal law. The meaning of certain RCRA terms governing the lawfulness of Defendants' conduct–such terms as "hazardous waste," "empty" containers, and "disposal," for example–may well be hotly contested; but the application of these provisions to Defendants' conduct differs little from the kind of "fact-specific application of rules" that *Empire Healthchoice* and *Bennett* found not to merit federal question jurisdiction. 547 U.S. at 701; 484 F.3d at 910. Plaintiffs' claims do not hinge on the interpretation of a single federal statute, as in *Grable*, but rather involve fact-bound issues such as when and how the customer Defendants shipped waste materials to Acme, how Acme handled these materials, the levels of exposure experienced by individual Plaintiffs, and causation of their alleged injuries. In short, the conduct at issue in this case does not present the kind of "pure issue of law" present in *Grable* "that could be settled once and for all" with a decision by this court. *Empire Healthchoice*, 546 U.S. at 701. It does not belong to the "special and small" category of cases contemplated by *Grable*.

Further, as in *Abbott Labs.*, even if the meaning of the federal statute at issue were both disputed and essential to Plaintiffs' claims, the court would conclude that the federal interest here is minimal. *Abbott Labs.,* 390 F. Supp. 2d at 822 (meaning of "average wholesale price" in Medicare statute was disputed issue of federal law). First, while RCRA grants a private right of action to enforce its provisions, it does not contain a private right to recover damages for personal injuries. 42 U.S.C. § 6972(a). As recognized in *Grable* and *Bennett*, the absence of a private right of action is not dispositive, but its absence is significant, particularly where recognizing the availability of federal-question jurisdiction would shift a significant number of cases into federal court. Congress's decision to grant a private right of enforcement and its silence with respect to any other private cause of action allows for the inference that it intended to keep RCRA-based state law claims for conspiracy and negligence out of federal court. *See Bennett*, 484 F.3d at 911; *Abbott Labs.,* 390 F. Supp. 2d at 823. In contrast to the situation in *Grable*, there is in this case no administrative agency action at issue. Finally, exercising "arising-under" jurisdiction in this case

would open the federal courts to an entire category of cases that Congress chose to exclude by omitting a private cause of action for personal injury under RCRA.

## **CONCLUSION**

Plaintiffs' motion for remand (36) [08 c 4660] is granted. All pending motions (66, 95, 96, 97 in 08 C 4654; 82, 111, 112, 113 in 08 C 4657; 79,112, 113, 114 in 08 C 4660) are terminated without prejudice. These cases are remanded to the Circuit Court of Cook County.

ENTER:

Dated: April 22, 2009

_____
REBECCA R. PALLMEYER
United States District Judge